Loretta E. Lynch (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
lelynch@paulweiss.com
Telephone: (212) 373-3000
Facsimile: (212) 373-3990

Patricia Brown Holmes (*pro hac vice*)
Amy Andrews (*pro hac vice*)
Shalem Massey (SBN 143281)
Jennifer Steeve (SBN 308082)
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Drive, Ste 440
Irvine, CA  92618
smassey@rshc-law.com
jsteeve@rshc-law.com
Telephone:   (949) 359-5515
Facsimile:   (949) 359-5501

*Attorneys for Defendant McDonald's Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation; WEATHER GROUP, LLC, a Delaware limited liability company,<br><br>            Plaintiffs,<br><br>      v.<br><br>McDONALD'S CORPORATION, a Delaware corporation,<br><br>            Defendant. | **CASE NO. 2:21-cv-04972-FMO-MAA**<br>**Assigned to the Honorable Fernando M. Olguin for all purposes.**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**Date: August 26, 2021**<br>**Time: 10:00 a.m.**<br>**Ctrm: 6D**<br>**Judge: Hon. Fernando M. Olguin** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ......................................................................... 6

II. BACKGROUND ............................................................................ 7

III. ARGUMENT ................................................................................ 10

  A. Plaintiffs Fail to State a Discrimination Claim Under § 1981 ............. 11

    1. Plaintiffs Do Not Identify an Impairment of Their Right to Contract. ........................................................ 11

    2. Plaintiffs Do Not Adequately Allege an Intent to Discriminate ................................................................. 13

    3. Plaintiffs Do Not Adequately Allege But-For Causation .......... 18

    4. Plaintiffs' Attack on McDonald's "Contracting Process" Is Meritless ......................................................... 20

  B. Plaintiffs Fail to State a Racial Discrimination Claim Under the Unruh Act ....................................................... 22

  C. Alternatively, Plaintiffs' Claims Should Be Dismissed as Time-Barred to the Extent They Are Based on Conduct Predating May 20, 2019 ............................................................... 24

IV. CONCLUSION ............................................................................ 26

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alcorn v. Anbro Eng'g, Inc.*,
468 P.2d 216 (Cal. 1970).................................................................................22

*Anderson v. Yolo Cty.*,
No. 2:16-CV-2466, 2017 WL 590246 (E.D. Cal. Feb. 14, 2017).......................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................10, 13, 14

*Astre v. McQuaid*,
804 F. App'x 665 (9th Cir. 2020)......................................................15, 16, 18, 19

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, No. 10-CV-2580, 2011
WL 13214300 (C.D. Cal. Mar. 29, 2011)  .................................................13, 17

*Banks v. American Airlines Group, Inc.*,
No. 2:20-CV-5495, 2021 WL 2119502 (C.D. Cal. Apr. 21, 2021) ...................11

*Banuelos v. Martinez*,
No. 1:15-CV-10, 2015 WL 3660261 (E.D. Cal. June 11, 2015) ......................11

*Bongiovanni v. State Farm Mut. Auto. Ins. Co.*,
No. CV-20-9197, 2020 WL 7861973 (C.D. Cal. Nov. 16, 2020).....................22

*Brown* v. *Contra Costa Cty.*,
No. 12-CV-1923, 2014 WL 1347680 (N.D. Cal. Apr. 3, 2014) ........................13

*Brown v. Philip Morris Inc.*,
250 F.3d 789 (3d Cir. 2001) ...........................................................................20

*Byrd v. McDonald's USA, LLC*,
No. 20-C-6447, 2021 WL 2329369 (N.D. Ill. June 8, 2021) ......................14, 18

*Comcast Corp. v. National Ass'n of African American-Owned Media*,
140 S. Ct. 1009 (2020) ..............................................................................11, 18

*Dallas & Lashmi, Inc.* v. *7-Eleven, Inc.*,
112 F. Supp. 3d 1048 (C.D. Cal. 2015)..................................................16, 17, 18

*Doe v. Pasadena Hosp. Ass'n, Ltd.*,
    No. 2:18-CV-9648, 2020 WL 1529313 (C.D. Cal. Mar. 31, 2020)...................25

*Domino v. Ky. Fried Chicken*,
    No. 19-CV-08449, 2020 WL 5847306 (N.D. Cal. Oct. 1, 2020)......................19

*Duronslet v. Cty. of Los Angeles*,
    266 F. Supp. 3d 1213 (C.D. Cal. 2017)..............................................................24

*Dyer v. McCormick & Schmick's Seafood Rests., Inc.*,
    264 F. Supp. 3d 208 (D.D.C. 2017) ...................................................................18

*Ekweani v. Ameriprise Fin., Inc.*,
    444 F. App'x 968 (9th Cir. 2011).......................................................................24

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988)...................................................................23

*Grant v. Starbucks Corp.*,
    No. CV-2:18-8927, 2019 WL 8112465 (C.D. Cal. Sept. 24, 2019) ..................22

*Hunter v. Tarantino*,
    No. CV-10-3387, 2010 WL 11579019 (C.D. Cal. July 15, 2010).....................25

*Jackson v. Farmers Ins. Exch.*,
    No. 2:12-CV-1020, 2012 WL 5337076 (E.D. Cal. Oct. 26, 2012)....................13

*Johnson v. HI Point Apts, LLC*,
    No. 16-CV-3236, 2017 WL 5634609 (C.D. Cal. Sept. 29, 2017),
    *report and recommendation adopted*, 2017 WL 5634100 (C.D. Cal.
    Nov. 20, 2017) ....................................................................................................12

*Kasick v. City of Hemet*,
    No. 09-CV-1849, 2009 WL 10673957 (C.D. Cal. Oct. 28, 2009).....................21

*Lenk v. Sacks, Ricketts, & Case LLP*,
    No. 19-CV-3791, 2020 WL 2793480 (N.D. Cal. May 29, 2020) .......................11

*Lukovsky v. City & Cty. of San Francisco*,
    535 F.3d 1044 (9th Cir. 2008) ...........................................................................25

*Marshall v. Meadows*,
    No. CIV S-10-1286, 2011 WL 976620 (E.D. Cal. Mar. 16, 2011)....................11

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 2:21-CV-04972-FMO-MAA

*Martin v. AAA of N. Cal., Nevada & Utah*,
No. 2:15-CV-2496, 2016 WL 3267119 (E.D. Cal. June 15, 2016),
*report and recommendation adopted*, 2016 WL 3960238 (E.D. Cal.
July 22, 2016) .................................................................................................. 12

*McCarthy v. Johannesson*,
No. CV-12-2099, 2012 WL 12887540 (C.D. Cal. Dec. 11, 2012) ..................... 26

*McCue v. S. Fork Union Sch. Dist.*,
No. CV-F-10-233, 2010 WL 2089524 (E.D. Cal. May 21, 2010) ...................... 24

*Mir v. Greines, Martin, Stein & Richland*,
No. 2:14-cv-4132, 2015 WL 12746231 (C.D. Cal. Feb. 19, 2015),
*aff'd*, 676 F. App'x 699 (9th Cir. 2017) ............................................................ 13

*Newman v. Google LLC*, No. 20-CV-4011, 2021 WL 2633423 (N.D.
Cal. June 25, 2021) ......................................................................................... 13

*Norton v. Arpaio*,
No. 15-CV-87, 2015 WL 13759956 (D. Ariz. Nov. 20, 2015) .......................... 12

*Our Peculiar Fam. v. Inspire Charter Sch.*,
No. 2:20-CV-0331, 2020 WL 3440562 (C.D. Cal. June 23, 2020) ................... 23

*Portfolio Invs., LLC v. First Sav. Bank*,
No. C12-104, 2013 WL 1187622 (W.D. Wash. Mar. 20, 2013),
*aff'd*, 583 F. App'x 814 (9th Cir. 2014) ...................................................... 16, 17

*Renteria v. City of Maywood*,
No. CV 09-4639, 2009 WL 3297152 (C.D. Cal. Oct. 9, 2009) ......................... 25

*Richardson Const., Inc. v. Clark Cty. Sch. Dist.*,
223 F. App'x 731 (9th Cir. 2007) ..................................................................... 25

*Roe v. Rialto Unified Sch. Dist.*,
No. 19-CV-863, 2020 WL 2790008 (C.D. Cal. Feb. 26, 2020) ........................ 23

*Sharifi Takieh v. Banner Health*,
No. CV-19-05878, 2021 WL 268808 (D. Ariz. Jan. 27, 2021) ......................... 19

*Spann v. Colonial Vill., Inc.*,
899 F.2d 24 (D.C. Cir. 1990) ............................................................................ 20

*Estate of Stern v. Tuscan Retreat, Inc.*,
   725 F. App'x 518 (9th Cir. 2018)........................................................................24

*Strother v. S. Cal. Permanente Med. Grp*, 79 F.3d 859 (9th Cir. 1996) ..................23

*White v. Harris*,
   No. 2:13-CV-6171, 2015 WL 1250015 (C.D. Cal. Mar. 16, 2015)....................26

*Yi Tai Shao v. McManis Faulkner, LLP*,
   No. 14-CV-1137, 2014 WL 4773981 (N.D. Cal. Sept. 22, 2014),
   *aff'd*, 670 F. App'x 575 (9th Cir. 2016) ............................................................24

### STATUTES

42 U.S.C. § 1981................................................................................................passim

Unruh Civil Rights Act, Cal. Civ. Code § 51.5..................................................passim

### OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ...............................................................................6, 10, 17

## I.     **INTRODUCTION**

Plaintiffs, media businesses owned by Byron Allen Folks ("Allen"), filed this lawsuit on May 20, 2021 alleging that Defendant McDonald's Corporation ("McDonald's") has recently refused to advertise on Plaintiffs' television channels on the basis of Allen's race.  McDonald's then moved to dismiss the original complaint in its entirely on June 25, 2021, explaining that Plaintiffs failed to allege the basic elements of their claims and relied on conclusory and inflammatory discrimination allegations.  In response, Plaintiffs filed an Amended Complaint (ECF No. 20) that is nearly identical to the original complaint, fails to remedy the pleading deficiencies clearly set out by McDonald's prior motion to dismiss, and rests on a number of factual distortions and errors.  And like the original complaint, the Amended Complaint is about revenue, not race.  Plaintiffs' groundless demands ignore McDonald's legitimate business reasons for not investing more on their channels.

Even on the face of the pleadings, Plaintiffs' alleged facts fail to state a discrimination claim that can survive Federal Rule of Civil Procedure 12(b)(6). Advertisers routinely buy time on certain channels and not others based on a number of factors—none of which have anything to do with the channel owner's race—such as the size and demographics of each channel's audience, the content of the programming, and the purchase price demanded for the advertisement's placement. Plaintiffs' Amended Complaint offers no well-pleaded facts suggesting that McDonald's advertising decisions—in the past or now—were based on anything other than legitimate business reasons, much less that those decisions were based on Allen's race.  Indeed, Plaintiffs themselves admit that McDonald's **has** advertised on Black-owned media outlets and channels.

***First***, Plaintiffs do not adequately allege three required elements of their 42 U.S.C. § 1981 claim:  (1) impairment of their right to contract, (2) an intent to discriminate, and (3) but-for causation.  Plaintiffs do not identify what contract they

offered McDonald's, when it was offered, or who rejected it. Instead, Plaintiffs' claim appears to be that McDonald's failed to solicit unspecified bids from Plaintiffs at unspecified times. Similarly, Plaintiffs' conclusory allegations of intent and causation are unsupported by well-pleaded facts and, thus, do not state a claim. And to the extent Plaintiffs challenge McDonald's overall "contracting process," their assertions lack merit and do not state a discrimination claim under § 1981.

*Second*, Plaintiffs' claim under California's Unruh Civil Rights Act should also be dismissed. The Amended Complaint does nothing to salvage this claim. As a threshold matter, the relationship between media networks and McDonald's is nothing like a customer-proprietor relationship, which is a necessary condition for the Unruh Act to apply. Moreover, a claim for racial discrimination under the Unruh Act requires an intent to discriminate and causation, which Plaintiffs do not adequately plead.

*Finally*, even if the Amended Complaint could survive a motion to dismiss, Plaintiffs' claims should be dismissed as time-barred to the extent they are based on any acts that occurred before May 20, 2019.

## II.   **BACKGROUND**

Plaintiffs are two media businesses owned by Allen, who began his entertainment career as a comedian and now runs a "global media company." (Am. Compl. ¶¶ 28–30.) Plaintiff Entertainment Studios Networks, Inc. ("Entertainment Studios") was founded by Allen in 1993 and initially focused on producing syndicated television programs, some of which were targeted toward Black audiences. (*Id.* ¶¶ 11, 28, 31.) In 2009 and 2012, Entertainment Studios launched seven "lifestyle" channels that offer a variety of programming on diverse topics such as comedy, cooking, animals, cars, and the courts: Comedy.TV, Recipe.TV, MyDestination.TV, ES.TV, Pets.TV, Cars.TV, and JusticeCentral.TV. (*Id.* ¶ 35.) Plaintiff The Weather Group, LLC ("Weather Group") owns The Weather Channel, which, as its name suggests, focuses on programming related to meteorology. (*Id.*

1   ¶¶ 39, 40.)  Allen acquired Weather Group in 2018.  (*Id.* ¶ 39.)

2   McDonald's, the world's most popular and successful restaurant business,

3   spends substantial amounts on advertising each year.  (*Id.* ¶¶ 41–42.)   As the

4   Amended Complaint acknowledges, McDonald's advertising is purchased through

5   external third-party agencies, although Plaintiffs allege that these agencies serve as

6   "mere[] intermediaries."  (*Id.* ¶ 43.)   Plaintiffs allege that McDonald's devotes the

7   bulk of its advertising budget to a "general market," while setting aside some of its

8   budget to target Black audiences.  (*Id.* ¶¶ 8, 9, 43–46.)   They further allege that

9   McDonald's general-market budget is spent on advertising purchased from large

10   media companies that are "publicly-owned," "white-owned," and "non-African-

11   American-owned" (terms the Amended Complaint uses interchangeably).  (*Id.* ¶¶ 8,

12   9, 44.)    Plaintiffs also allege that advertising time on general-market media

13   commands a higher price.  (*Id.* ¶ 47.)

14   According to Plaintiffs, both Entertainment Studios' channels and The

15   Weather Channel should be classified as "general market" channels because they

16   offer "general market lifestyle programming" that is not aimed at a Black audience.

17   (*Id.* ¶ 13.)   Nonetheless, according to Plaintiffs, McDonald's has "pigeonholed" and

18   "stereotyped" their channels on the basis of Allen's race, falsely assuming that,

19   because he is Black, his channels therefore cater to a Black audience.  (*Id.* ¶¶ 8–16,

20   49–55.)   Plaintiffs do not allege who at McDonald's made the supposed decision to

21   "pigeonhole" their channels in this way.  Nor do Plaintiffs clearly allege when that

22   decision was made—although they do suggest it was over a decade ago.  (*Id.* ¶¶ 49-

23   50.)    At that time, before Entertainment Studios launched its seven "lifestyle"

24   networks and before Allen acquired Weather Group, Plaintiffs admit that

25   McDonald's advertised on syndicated television programming that Entertainment

26   Studios produced for Black audiences.  (*See id.* ¶¶ 11, 49.)

27   Plaintiffs allege that the decision to "pigeonhole" Entertainment Studios'

28   channels subsequently led to Entertainment Studios being "shut out of the general

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 2:21-cv-04972-FMO-MAA

market tier and forced to bid for advertising in the less favorable African American tier." [1]   (*Id.* ¶ 49.)   In this way, according to Plaintiffs, McDonald's treated Entertainment Studios' channels worse than "similarly situated, white-owned networks, including, but not limited to, Animal Planet, Cooking Channel, Comedy Central, CNN, Destination America, E!, Food Network, HLN, Motor Trend, Travel Channel, and many others," on which McDonald's allegedly does buy advertising. (*Id.* ¶ 59.)   Plaintiffs allege that some of these other channels have similar programming to Entertainment Studios' channels and "target similar audiences": Entertainment Studios channel Recipe.TV, like Cooking Channel and Food Network, offers "cooking shows," and Entertainment Studios channel MyDestination.TV, like Travel Channel and Destination America, offers "travel-related content." (*Id.* ¶ 62.) Plaintiffs also baselessly allege that Entertainment Studios has increased the "distribution" of its channels (*i.e.*, the number of cable subscribers who are able to watch those channels), but that McDonald's still refuses to advertise on Entertainment Studios' channels "while at the same time contracting with white-owned networks that have smaller distribution." (*Id.* ¶ 63.)

Plaintiffs assert that McDonald's has also discriminated against Weather Group.  They complain that, while Weather Group has "pitched" advertising on The Weather Channel to McDonald's agency twice per year since Allen acquired Weather Group in 2018, McDonald's did not purchase advertising after these pitches. (*Id.* ¶¶ 52–57.)  Significantly, however, Plaintiffs do not allege that McDonald's bought advertising on The Weather Channel ***before*** 2018.  (*See id.*)  Plaintiffs also offer two conflicting narratives about McDonald's alleged refusal to contract.  At times, Plaintiffs allege that McDonald's has offered no explanation for its refusal to purchase advertising on The Weather Channel. (*Id.* ¶ 56.)  At other times, Plaintiffs allege that McDonald's agency did offer an explanation, specifically, that

---

[1] While the Complaint refers to these advertising markets as "tiers" (*See, e.g.*, Am. Compl. ¶¶ 8–9), Plaintiffs do not allege that McDonald's itself uses that term.

advertisements on The Weather Channel are less desirable because it "skews towards an older audience." (*Id.* ¶ 61.) Plaintiffs allege that McDonald's does buy advertising on two other "older-skewing networks," Destination America and HLN. (*Id.*)

Finally, Plaintiffs make a number of unrelated allegations about McDonald's "corporate culture," alleging that McDonald's has comparatively few Black executives and pointing to two recent lawsuits by employees and former McDonald's franchisees. (*Id.* ¶¶ 64–69.) Plaintiffs do not, however, allege facts that tie these lawsuits or the purported "corporate culture" to the actions challenged here.

On the basis of these allegations, Plaintiffs assert claims under 42 U.S.C. § 1981 and the Unruh Civil Rights Act, Cal. Civ. Code § 51.5. (Am. Compl. ¶¶ 70–84.) Plaintiffs filed their case in Los Angeles County Superior Court on May 20, 2021, and Defendants timely removed the case to this Court on June 18, 2021.

## III.   **ARGUMENT**

Plaintiffs' claims of discrimination should be dismissed because they are not supported by well-pleaded facts. Although the Court must accept as true all well-pleaded allegations on a motion to dismiss under Rule 12(b)(6), it need not credit conclusory assertions or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has made clear that bare legal conclusions cannot support a claim of racial discrimination. *See id.* Rather, such claims must be supported by concrete facts sufficient to raise a plausible inference of discriminatory intent. *See id.* at 681–83. Plaintiffs failed to meet this pleading standard in their original complaint and have again failed to do so in their Amended Complaint. Indeed, their Amended Complaint, far from assuaging the concerns raised in the first motion to dismiss filed by McDonald's, merely adds a few conclusory paragraphs that do not amount to the well-pleaded facts required under 12(b)(6). The Amended Complaint should thus be dismissed.

### A.   Plaintiffs Fail to State a Discrimination Claim Under § 1981.

As in their original complaint, Plaintiffs fail to plead the necessary elements of a § 1981 claim.  To make out such a claim, a plaintiff must plead and prove: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Lenk v. Sacks, Ricketts, & Case LLP*, No. 19-CV-3791, 2020 WL 2793480, at *4 (N.D. Cal. May 29, 2020).  In addition, the Supreme Court recently clarified that, to state a viable claim, a § 1981 plaintiff must adequately plead under the *Iqbal-Twombly* standard that he would not have suffered his injury "but for" his race.  *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014, 1019 (2020).

The Amended Complaint, even with its handful of additional allegations, does not come close to meeting this standard:  it does not adequately allege discrimination concerning the right to make and enforce contracts, that McDonald's acted with an intent to discriminate, or that McDonald's would have purchased advertising on Plaintiffs' current channels but for Allen's race.  In addition, Plaintiff's more general attack on McDonald's "contracting process" is meritless.  For each of these reasons, the § 1981 claim should be dismissed.

### 1.   Plaintiffs Do Not Identify an Impairment of Their Right to Contract.

"A claim brought under § 1981 . . . must initially identify an impaired contractual relationship under which the plaintiff has rights." *Banuelos v. Martinez*, No. 1:15-CV-10, 2015 WL 3660261, at *3 (E.D. Cal. June 11, 2015) (quotation marks omitted).  California federal courts have repeatedly dismissed § 1981 claims that do not identify the contractual relationship at issue.  *See, e.g.*, *Banks v. American Airlines Group, Inc.*, No. 2:20-CV-5495, 2021 WL 2119502, at *2 (C.D. Cal. Apr. 21, 2021); *Marshall v. Meadows*, No. CIV S-10-1286, 2011 WL 976620, at *7 (E.D.

Cal. Mar. 16, 2011).  Similarly, courts dismiss § 1981 claims that fail to identify "any act or omission on [defendant's] part that infringed plaintiff's rights to make or enforce a contract."  *Johnson v. HI Point Apts, LLC*, No. 16-CV-3236, 2017 WL 5634609, at *7 (C.D. Cal. Sept. 29, 2017), *report and recommendation adopted*, 2017 WL 5634100 (C.D. Cal. Nov. 20, 2017); *see also Martin v. AAA of N. Cal., Nevada & Utah*, No. 2:15-CV-2496, 2016 WL 3267119, at *3 (E.D. Cal. June 15, 2016), *report and recommendation adopted*, 2016 WL 3960238 (E.D. Cal. July 22, 2016).

Even after McDonald's prior motion to dismiss alerted them to this requirement, Plaintiffs still have "not identified a specific contract, nor identified how Defendant[] blocked the formation of the contract."  *Norton v. Arpaio*, No. 15-CV-87, 2015 WL 13759956, at *5 (D. Ariz. Nov. 20, 2015).  With respect to Entertainment Studios' "lifestyle" networks, Plaintiffs' Amended Complaint again makes only the conclusory allegation that they "attempted many times over the years to contract with McDonald's for advertising on the ESN Lifestyle Networks . . . , but McDonald's refused," but they do not allege what type of contract was offered to McDonald's, the details of that contract, who at McDonald's rejected the contract, what was said or done to convey that the rejection was based on Allen's race, or when any of this supposedly occurred.  (Am. Compl. ¶ 73.)  Given Entertainment Studios' failure to resolve this deficiency, its § 1981 claim should be dismissed with prejudice.

With respect to The Weather Channel, Plaintiffs now allege that they "pitched The Weather Channel to McDonald's ad agency" twice per year and that McDonald's nonetheless "refused" to make a purchase.  (*Id.* ¶¶ 55–56.)  But this new allegation is insufficient because Plaintiffs still fail to allege the details of the contract that Weather Group "pitched" or who at McDonald's rejected that contract.  Moreover, Plaintiffs' allegations are inconsistent.  At one point, Plaintiffs allege that McDonald's "did not give an explanation for its refusal to contract" with Weather Group.  (*Id.* ¶ 56.)  At another point, Plaintiffs allege that "McDonald's ad agency told Weather Group that McDonald's did not purchase advertising on The Weather

Channel because the network skews towards an older audience." (*Id.* ¶ 61.) These inconsistent allegations necessarily cannot support a viable claim, because "allegations are not well pleaded if they are contradicted by other information in the same complaint." *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, No. 10-CV-2580, 2011 WL 13214300, at *13 n.81 (C.D. Cal. Mar. 29, 2011).

In sum, Plaintiffs' failure to identify any failed contractual relationship or infringement of Plaintiffs' contracting rights dooms their § 1981 claim, which should therefore be dismissed with prejudice.

## 2. Plaintiffs Do Not Adequately Allege an Intent to Discriminate.

Plaintiffs must also allege facts making it not merely possible, but plausible, that McDonald's intentionally discriminated against them on the basis of Allen's race. *Iqbal*, 556 U.S. at 678. A § 1981 plaintiff must allege a "pattern of discrimination, actions indicating bias, or other facts that would support an inference that any defendant intentionally discriminated against plaintiff on the basis of his race." *Mir v. Greines, Martin, Stein & Richland*, No. 2:14-cv-4132, 2015 WL 12746231, at *9 (C.D. Cal. Feb. 19, 2015), *aff'd*, 676 F. App'x 699 (9th Cir. 2017). Thus, courts routinely dismiss § 1981 claims where the plaintiff only "speculates" that race motivated the defendant's actions. *Id.*[2] Here too, Plaintiffs have failed to

---

[2] *See also, e.g.*, *Newman v. Google LLC*, No. 20-CV-4011, 2021 WL 2633423, at *6 (N.D. Cal. June 25, 2021) (dismissing claims resting on "personal belief of discrimination, without any factual support" (citations omitted)). *Brown v. Contra Costa Cty.*, No. 12-CV-1923, 2014 WL 1347680, at *5 (N.D. Cal. Apr. 3, 2014) (dismissing claim where the only basis for an intent to discriminate was a conclusory "repeated allegation that [plaintiff] was treated differently than non-African-American attorneys or non-African-American employees"); *Jackson v. Farmers Ins. Exch.*, No. 2:12-CV-1020, 2012 WL 5337076, at *3 (E.D. Cal. Oct. 26, 2012) (dismissing claim resting on "vague assertions that [defendant's] official policies were 'rooted in an entrenched posture of deliberate indifference' and 'condone[d] race-based discrimination'").

1  allege sufficient facts to support a plausible inference of discrimination even after

2  McDonald's identified this deficiency, warranting dismissal of the § 1981 claim with

3  prejudice.

4       As in the original complaint, Plaintiffs' theory is that their channels were

5  improperly "pigeonholed" based on Allen's race. (Am. Compl. ¶¶ 11, 14.) However,

6  Plaintiffs continue not to provide even the most basic details needed to support a §

7  1981 discrimination claim based on this theory.  They still do not allege who at

8  McDonald's rejected their proposed advertising contract or when that occurred, nor

9  do they allege who at McDonald's supposedly "pigeonholed" their channels or

10 precisely when that decision occurred (they merely suggest it was over a decade ago

11 (*see id.* ¶¶ 49–50)).    Moreover, while Plaintiffs acknowledge McDonald's

12 advertising is purchased through external third-party agencies, there is no allegation

13 that anyone at the agencies was motivated by an intent to discriminate based on race.

14 (*See id.* ¶¶ 43–46.)  In response to this argument, raised in McDonald's initial motion

15 to dismiss, Plaintiffs now allege that the agencies are "merely intermediaries"

16 because McDonald's makes the final decisions over its advertisements.  (*Id.* ¶ 43.)

17 But Plaintiffs fail to explain what role the agencies *did* play, leaving open the

18 "obvious alternative explanation" that McDonald's simply followed the agencies'

19 recommendations (not alleged to be anything other than race neutral).  *Iqbal*, 556

20 U.S. at 682.  Plaintiffs had the opportunity to add these basic factual allegations in

21 their Amended Complaint, but failed to do so.  The absence of such facts is telling.

22      Such threadbare allegations cannot support a claim of intentional

23 discrimination.  *See Byrd v. McDonald's USA, LLC*, No. 20-C-6447, 2021 WL

24 2329369, at *4 (N.D. Ill. June 8, 2021) (concluding that, even under a minimal

25 pleading standard, discrimination claim failed where plaintiffs did not allege the

26 "three W's":   what, who, and when).   Further, even if Plaintiffs' conclusory

27 allegations that McDonald's made a mistaken assumption about their programming

28 were true, they fail to show how it led to discrimination based on race given their

concession that McDonald's does advertise with Black-owned media channels, including Plaintiff Entertainment Studios.  (Am. Compl. ¶ 6.)  This fact alone suggests a more plausible explanation:  that business reasons, not race, are the basis for business decisions regarding McDonald's advertising. *See Astre v. McQuaid,* 804 F. App'x 665, 666–67 (9th Cir. 2020) (holding § 1981 claim implausible where "complaint identifies independent non-discriminatory reasons for the alleged impairment" (quotation marks omitted)).

Additionally, Plaintiffs' claim continues to find no support in their allegation that McDonald's did business with "similarly situated, white-owned networks," namely "Animal Planet, Cooking Channel, Comedy Central, CNN, Destination America, E!, Food Network, HLN, Motor Trend, Travel Channel, and many [unspecified] others." (Am. Compl. ¶ 59.)  As in their original complaint, Plaintiffs' claim that these other, better-known channels are "similarly situated" to Entertainment Studios' "lifestyle" channels rests solely on their allegation that the channels offer "general market lifestyle programming."  (*Id.* ¶ 13.)  Indeed, the Amended Complaint doubles down on these similarities in content, adding allegations that Entertainment Studios' channels also offer "cooking shows" and "travel-related content."  (*Id.* ¶ 62.)  But such general similarities in content in no way suggest that McDonald's advertising decisions are based on the race of those channels' respective owners.  When making buying decisions, advertisers obviously look at not just programming content, but also many other factors, including ratings, audience demographics, and expected return on investment.  Plaintiffs fare no better in alleging that Entertainment Studios' channels now have broader "distribution" than they used to, because distribution—unlike ratings—refers to how many viewers ***could*** watch the channels, not how many actually do.  (*Id.* ¶ 63.)  Similarly, while Plaintiffs allege that some of the Entertainment Studios channels "***target*** similar audiences" as these other channels (*id.* ¶ 62 (emphasis added)), they do not allege that the Entertainment Studios channels are equally successful in attracting viewers

1  from those target audiences.

2  Plaintiffs' failure to allege that the channels at issue have similar ratings and

3  attract similar audiences—despite the opportunity to add such allegations in response

4  to McDonald's initial motion—is fatal.   To support a plausible inference of

5  discrimination, a comparator must be similar "in all material respects." *Portfolio*

6  *Invs., LLC v. First Sav. Bank*, No. C12-104, 2013 WL 1187622, at *6 (W.D. Wash.

7  Mar. 20, 2013), *aff'd*, 583 F. App'x 814 (9th Cir. 2014).   A superficial similarity is

8  insufficient.   *See id.* (mere fact that proposed comparators had originally obtained

9  loans from same lender did not make them similarly situated to plaintiff).   Here, one

10  cannot infer that McDonald's discriminated based on race simply because—like any

11  other advertiser—it bought advertising on some channels and not others, when these

12  channels were not at all similar with respect to the characteristics that matter most to

13  advertisers.

14  Plaintiffs' allegations regarding The Weather Channel are equally deficient.

15  Plaintiffs allege that McDonald's "has refused to contract with Weather Group" since

16  Allen acquired it in 2018.   (Am. Compl. ¶ 16.)   But Plaintiffs' own allegations

17  affirmatively undermine any inference that McDonald's decision not to advertise on

18  The Weather Channel was based on Allen's race.   As McDonald's original motion to

19  dismiss pointed out, Plaintiffs conspicuously fail to allege that McDonald's bought

20  advertising on The Weather Channel ***before*** Allen acquired it.   (*See id.* ¶¶ 52–57.)

21  The Amended Complaint contains the same omission.   That leaves only one plausible

22  inference:  the reason McDonald's did not buy advertising on The Weather Channel

23  has nothing to do with Allen's race, and everything to do with the fact that other

24  channels with different audiences were a better fit for McDonald's marketing

25  strategy.   *See Astre*, 804 F. App'x at 667 (affirming dismissal of § 1981 claim in light

26  of "independent non-discriminatory reasons for the alleged impairment" (quotation

27  marks omitted)); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc*., 112 F. Supp. 3d 1048, 1063

28  (C.D. Cal. 2015) (same).

Here too, Plaintiffs try to support their claims related to The Weather Channel with defective allegations about supposed comparator channels.  Plaintiffs allege that The Weather Channel is similar to, and in fact has better ratings than, two other channels on which McDonald's allegedly buys advertising:  HLN and Destination America.  (*Id.* ¶ 61.)  In support, Plaintiffs claim that, while McDonald's agency explained that The Weather Channel "skews towards an older audience," HLN and Destination America are also "older-skewing networks."  (*Id.*)  But elsewhere, Plaintiffs allege that McDonald's did not give ***any*** explanation for the decision not to advertise on The Weather Channel.  (*Id.* ¶ 56.)  Again, these inconsistent allegations cannot state a claim. *Babadjanian*, 2011 WL 13214300, at *13 n.81.  Moreover, the Amended Complaint itself demonstrates that The Weather Channel is different from the alleged comparator channels:  with respect to content—the very factor on which Plaintiffs rely to support their allegations of similarity for other competitors—The Weather Channel offers weather programming, whereas HLN is a news network and Destination America offers "travel-related content" (id. ¶ 62).  Such utterly distinct television channels are far from being similar in "all material respects." *See Portfolio Invs., LLC*, 2013 WL 1187622, at *6.

Such inadequately pleaded § 1981 claims (and related Unruh Act claims) are properly dismissed under Rule 12(b)(6).  In another case in this District, the plaintiffs alleged that "Defendant's pattern of behavior involving churning or re-selling franchises owned by South Asian Franchise owners" was intentionally discriminatory. *Dallas*, 112 F. Supp. 3d at 1063 (internal quotations omitted).  The court in *Dallas* found that, "other than the initial charging allegation where Plaintiffs identify themselves as persons of South Asian descent," the plaintiffs "failed to allege facts indicating that Defendant's conduct with regard to their franchise arose from Defendant's pattern of churning South Asian franchises rather than Plaintiffs' failure to pay their mortgage." *Id.* (internal quotations omitted).  Similarly here, even after having the opportunity to bolster their allegations, Plaintiffs still offer no reason to

infer that McDonald's advertising decisions were based on race as opposed to the obvious differences that exist among television channels.

Finally, Plaintiffs continue to make irrelevant allegations about McDonald's "corporate culture," relying largely on two recent lawsuits that have been filed against McDonald's.  (Am. Compl. ¶¶ 64–69.)  These allegations offer no support for Plaintiffs' claims.  Courts have routinely declined to find plausibility based on allegations drawn from other lawsuits.  *See* , *e.g.*, *Dyer v. McCormick & Schmick's Seafood Rests., Inc.*, 264 F. Supp. 3d 208, 233 (D.D.C. 2017) (prior lawsuits gave "no indication that the cases have any bearing on the specific factual issues in this case, apart from the fact that the relevant defendant is a large, multi-state employer"); *Dallas*, 112 F. Supp. 3d at 1062 (rejecting attempt to ground claim in "allegations copied from a separate lawsuit filed against Defendant").  Indeed, the allegations in these other lawsuits—which are brought by former employees and franchisees, not media outlets—in no way suggest that McDonald's discriminates against Black-owned media companies.  We also note that a similar lawsuit was recently dismissed based on the plaintiffs' failure to plead intentional discrimination in violation of § 1981.  *Byrd*, 2021 WL 2329369.

For these reasons, Plaintiffs still do not adequately plead an intent to discriminate, and that warrants dismissal of their § 1981 claim with prejudice.

### 3.    <u>Plaintiffs Do Not Adequately Allege But-For Causation</u>.

In addition, Plaintiffs do not adequately allege that McDonald's would have bought advertising on their channels but for Allen's race.  In *Comcast*, the Supreme Court established but-for causation as an indispensable element of a § 1981 claim that must be pleaded under the *Iqbal-Twombly* standard.  *See* 140 S. Ct. at 1014, 1019; *see also Astre*, 804 F. App'x at 667. Plaintiffs have now twice failed to plausibly allege this element, warranting dismissal with prejudice.

Despite McDonald's earlier motion to dismiss raising this very issue, nothing in the Amended Complaint suggests that, but for Allen's race, McDonald's would

have advertised on Plaintiffs' channels.  This pleading failure is especially stark for The Weather Channel.  As McDonald's initial motion to dismiss pointed out, Plaintiffs do not allege that McDonald's bought advertising on The Weather Channel before Allen acquired Weather Group in 2018.  The Amended Complaint does not address this glaring deficiency.  (*See* Am. Compl. ¶¶ 53–55.)   The fact that McDonald's has not advertised on The Weather Channel regardless of its owner's race undermines any inference that, but for racial discrimination, McDonald's would purchase advertising on Plaintiffs' networks.  *See, e.g.*, *Astre*, 804 F. App'x at 666–67 (but-for causation not pleaded in light of non-discriminatory reasons for termination); *Sharifi Takieh v. Banner Health*, No. CV-19-05878, 2021 WL 268808, at *6 (D. Ariz. Jan. 27, 2021) (holding allegations at the pleading stage "do not give rise to a plausible inference that racial animus was the but-for cause" when there are "independent, non-discriminatory reasons for the alleged impairments"); *Domino v. Ky. Fried Chicken,* No. 19-CV-08449, 2020 WL 5847306, at *2 (N.D. Cal. Oct. 1, 2020) (similar).

Plaintiffs' allegations concerning Entertainment Studios also remain deficient.  As in the original complaint, Plaintiffs allege only that McDonald's has advertised on other channels with similar "general market lifestyle programming" (Am. Compl. ¶ 13), such as "cooking shows" and "travel-related content" (*id.* ¶ 62).  But that vague allegation does not even remotely suggest that the ratings and audience demographics for Plaintiffs' channels fit within the marketing strategy for the McDonald's brand.  Plaintiffs do not allege that their own channels offer equally appealing ratings or audience demographics as those offered by their comparator channels—which include popular cable channels like Comedy Central and E! (*see id.*).   As the Amended Complaint does not address the obvious, non-discriminatory explanations for McDonald's advertising decisions, it cannot support an inference of but-for causation.

Finally, Plaintiffs' theory of causation is incoherent.   They assert that

McDonald's, after wrongly "pigeonholing" their channels as limited to a Black audience, refused to deal with them.  But Plaintiffs do not allege that McDonald's refuses to do business with Black-targeted media outlets.  Indeed, Plaintiffs concede that McDonald's advertised with Entertainment Studios in the past on shows targeted toward Black audiences.  (*Id.* ¶ 11.)  Even though McDonald's raised this very argument in its initial motion to dismiss, Plaintiffs still have no explanation for how their "pigeonholing" theory led McDonald's not to contract with them, especially when McDonald's allegedly chose to contract with Plaintiffs in the past precisely because of their ability to reach Black consumers.

### 4.   Plaintiffs' Attack on McDonald's "Contracting Process" Is Meritless.

Finally, in addition to alleging discrimination against Plaintiffs individually, Plaintiffs continue to make scattered claims that McDonald's entire "contracting process" is discriminatory.  (Am. Compl. ¶ 76.)  These claims appear to rest on the allegation that McDonald's devotes the bulk of its advertising budget to a "general market" (which, as the name suggests, aims to reach consumers across all racial backgrounds), and directs a smaller portion of its budget specifically to reaching Black consumers.  (*See* Am. Compl. ¶¶ 8–9.)  These allegations—which remain unchanged since the first complaint—add nothing to Plaintiffs' claims of discrimination.

First, there is nothing illegal or even unusual about making efforts to advertise to minority consumers.  Advertisers commonly target various demographic groups based on age, sex, race, and other factors such as geography.  Similarly, many media outlets (including, according to the Amended Complaint, some of Plaintiffs' own media properties) are aimed toward specialized audiences.  Consistent with common sense, it is well established that § 1981 prohibits only discriminatory contracting, not advertising directed toward specific audiences.  *See, e.g.*, *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796–800 (3d Cir. 2001); *Spann v. Colonial Vill., Inc.*, 899 F.2d

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 2:21-CV-04972-FMO-MAA

24, 35 (D.C. Cir. 1990).  Plaintiffs do not allege that McDonald's discriminates against its Black customers; rather, they concede that McDonald's does extensive business with Black consumers.  (*See* Am. Compl. ¶ 5.)  Plaintiffs even admit that McDonald's previously advertised on some of their own syndicated programming targeted toward Black audiences.  (*Id.* ¶ 11.)

The Amended Complaint insinuates that McDonald's efforts to reach Black consumers somehow amounted to discrimination against Black-owned media companies (*see, e.g.*, *id.* ¶ 10), but Plaintiffs' own allegations belie that counterintuitive suggestion.  As Plaintiffs correctly note, a media company's target demographic is not the same as the race of its owner:  for example, Plaintiffs' channels allegedly target a general audience even though Allen is Black, whereas Black Entertainment Television targets a Black audience even though it is publicly owned.  (*See id.* ¶ 36.)  Because audience and ownership are different, an advertiser does not discriminate against Black-owned media companies merely by having a separate budget dedicated to advertising to Black consumers.  Certainly, the Amended Complaint contains no facts to support a conclusion that McDonald's, by making efforts to attract Black customers, has intentionally discriminated against Black-owned media companies.

Similarly, Plaintiffs do not state a claim of racial discrimination by alleging that McDonald's general-market advertising is placed with "large, publicly-owned media companies" as opposed to smaller, wholly Black-owned businesses.  (Am. Compl. ¶ 8.)  Buying advertising from large businesses instead of smaller businesses—which, even if true, would hardly be surprising given the level of concentration in the media industry—is not racial discrimination.  *See Anderson v. Yolo Cty.*, No. 2:16-CV-2466, 2017 WL 590246, at *4 (E.D. Cal. Feb. 14, 2017) (dismissing § 1981 claim where it was "entirely possible" that defendant's conduct was based on factors other than race); *Kasick v. City of Hemet*, No. 09-CV-1849, 2009 WL 10673957, at *2 (C.D. Cal. Oct. 28, 2009) (explaining that § 1981 "only

1  prohibits racial discrimination," not "other forms of discrimination" (quotation marks

2  omitted)).   Moreover, while Plaintiffs repeatedly conflate "publicly-owned" with

3  "white-owned" and "non-African-American-owned," publicly-owned companies by

4  definition have numerous shareholders of many different races.

5      In short, Plaintiffs' attacks on McDonald's "contracting process" are wholly

6  lacking in merit and cannot save Plaintiffs' deficient claims of discrimination.

7                          *              *              *

8      For all these reasons, Plaintiffs' claim under § 1981 should be dismissed.

9  **B.    Plaintiffs Fail to State a Racial Discrimination Claim Under the**

10  **Unruh Act.**

11     Plaintiffs' allegations also fail to state a claim under the Unruh Act, which

12  prohibits discrimination by "business establishments."  Cal. Civ. Code § 51.  The

13  elements of an Unruh Act claim are "(1) [that the defendant] denied Plaintiff full and

14  equal accommodations, (2) that a substantial reason for [defendant's conduct] was

15  because of Plaintiff's race, (3) [that the] Plaintiff was harmed, and (4) [that the

16  defendant's] actions were a substantial factor in causing Plaintiff's harms."  *Grant v.*

17  *Starbucks Corp.*, No. CV-2:18-8927, 2019 WL 8112465, at *6 (C.D. Cal. Sept. 24,

18  2019) (citing Cal. Civil Jury Instructions No. 3060).

19     As a threshold matter, the Unruh Act does not apply to the claims in the

20  Amended Complaint.  As courts in the Ninth Circuit have explained, a plaintiff

21  bringing an Unruh Act claim must "demonstrate that his relationship with the

22  offending organization was similar to that of the customer in the customer-proprietor

23  relationship." *Bongiovanni v. State Farm Mut. Auto. Ins. Co*., No. CV-20-9197, 2020

24  WL 7861973, at *2 (C.D. Cal. Nov. 16, 2020) (quoting *Johnson v. Riverside*

25  *Healthcare Sys., LP*, 534 F.3d 1116, 1126 (9th Cir. 2008)); *see also Alcorn v. Anbro*

26  *Eng'g, Inc.*, 468 P.2d 216, 220 (Cal. 1970) ("[T]here is no indication that the

27  Legislature intended to broaden the scope of section 51 to include discriminations

28  other than those made by a 'business establishment' in the course of furnishing goods,

services or facilities to its clients, patrons or customers."); *Roe v. Rialto Unified Sch. Dist.*, No. 19-CV-863, 2020 WL 2790008, at *5 (C.D. Cal. Feb. 26, 2020) ("[T]he Unruh Act applies to owners and operators of a specific place, rather than providers of a service.").  Significantly, courts have dismissed Unruh Act claims brought by service providers alleging they were "denied the ability to enter into a services contract" with potential buyers. *Our Peculiar Fam. v. Inspire Charter Sch.*, No. 2:20-CV-0331, 2020 WL 3440562, at *5 (C.D. Cal. June 23, 2020); *see also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1073 (N.D. Cal. 1988).  Here, McDonald's is not "furnishing goods, services or facilities to" Plaintiffs and other media companies at all.  Rather, Plaintiffs allege that McDonald's is a buyer deciding which television channels represent the best places for it to spend its advertising dollars.  In other words, if there is a "business establishment" in this case, it is Plaintiffs' business, whereas McDonald's is the consumer.  The Unruh Act simply does not apply to McDonald's conduct in that relationship.

       In an apparent attempt to address this pleading deficiency, the Amended Complaint adds references to § 51.5 of the Unruh Act, which provides that a "business establishment" may not "refuse to buy from, contract with, sell to, or trade with any person" on account of certain protected characteristics.  Cal. Civ. Code § 51.5.  But courts have repeatedly rejected arguments that § 51.5 somehow expands the scope of the Unruh Act beyond customer-proprietor relationships.  For example, in *Our Peculiar Family*, the court examined § 51.5 and found "no indication that the Legislature intended to broaden the scope of [the Unruh Act] to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers."  2020 WL 3440562, at *4–5; *see also Strother v. S. Cal. Permanente Med. Grp*, 79 F.3d 859, 875 (9th Cir. 1996) (holding that, "[o]n its face, § 51.5, like § 51, appears to be aimed only at discrimination in relationships similar to the proprietor/customer relationship").

In any event, Plaintiffs' Unruh Act claim fails for the same reasons as their § 1981 claim does.  First, race-discrimination claims under the Unruh Act require allegations of intentional discrimination, which must be pleaded in accordance with the *Iqbal-Twombly* standard.  *Duronslet v. Cty. of Los Angeles*, 266 F. Supp. 3d 1213, 1217 (C.D. Cal. 2017).  For the same reasons set forth above in Section III.A.2 and incorporated here, Plaintiffs have not plausibly alleged intentional discrimination.  Second, an Unruh Act claim alleging actual damages must show causation.  *See McCue v. S. Fork Union Sch. Dist.*, No. CV-F-10-233, 2010 WL 2089524, at *22 (E.D. Cal. May 21, 2010).  As explained above in Section III.A.3 and incorporated here, Plaintiffs have not articulated how any discrimination—even if properly alleged—was a causal factor in any decision by McDonald's not to contract with them.  Here too, Plaintiffs had the opportunity to cure these defects in their Amended Complaint but failed to do so.

C.   **Alternatively, Plaintiffs' Claims Should Be Dismissed as Time-Barred to the Extent They Are Based on Conduct Predating May 20, 2019.**

Even if Plaintiffs could overcome the arguments set forth above, any remaining claims should be dismissed to the extent they are based on acts allegedly committed by McDonald's outside the applicable statute of limitations.

Both claims in the Amended Complaint are subject to a two-year statute of limitations.  Where a § 1981 claim concerns contract formation or a refusal to contract, it is governed by the forum state's statute of limitations for personal injury actions.  *See Ekweani v. Ameriprise Fin., Inc.*, 444 F. App'x 968, 970 (9th Cir. 2011); *Yi Tai Shao v. McManis Faulkner, LLP*, No. 14-CV-1137, 2014 WL 4773981, at *3–4 (N.D. Cal. Sept. 22, 2014), *aff'd*, 670 F. App'x 575 (9th Cir. 2016).  In California, that limitations period is two years.  *See Yi Tai Shao*, 2014 WL 4773981, at *4 (citing Cal. Civ. Code § 335.1).  The same limitations period governs Plaintiffs' Unruh Act claims.  *See Estate of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 525 (9th Cir.

2018); *Doe v. Pasadena Hosp. Ass'n, Ltd.*, No. 2:18-CV-9648, 2020 WL 1529313, at *3 n.2 (C.D. Cal. Mar. 31, 2020).

This two-year statute of limitations bars any claims based on alleged acts of discrimination occurring before May 20, 2019.  Discrimination claims under § 1981 accrue when "plaintiffs knew they had been injured and by whom, even if at that point in time the plaintiffs did not know of the legal injury, i.e., that there was an allegedly discriminatory motive." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (citation omitted).  That generally occurs when the defendant commits the alleged acts of discrimination.  *See, e.g.*, *Richardson Const., Inc. v. Clark Cty. Sch. Dist.*, 223 F. App'x 731, 733 (9th Cir. 2007); *Hunter v. Tarantino*, No. CV-10-3387, 2010 WL 11579019, at *3 (C.D. Cal. July 15, 2010).  Similarly, "an Unruh Act claim generally accrues on the date the allegedly wrongful act takes place." *Renteria v. City of Maywood*, No. CV 09-4639, 2009 WL 3297152, at *3 (C.D. Cal. Oct. 9, 2009).

In the Amended Complaint, Plaintiffs now claim that McDonald's alleged "refusals to contract occurred within the past two years." (Am. Compl. ¶ 73.)  To the extent that Plaintiffs have now limited their claims to alleged acts of discrimination occurring since May 20, 2019, dismissal is not required on this basis.  However, the Amended Complaint continues to refer to older conduct as well.  In particular, Plaintiffs allege that McDonald's began "stereotyp[ing]" their channels when its advertising first appeared on Entertainment Studios' syndicated programming over a decade ago, which would be long before the limitations period. (*See id.* ¶¶ 49–50.)  And Plaintiffs' outsized demand for $10 billion in damages (*id.* ¶¶ 22, 77, 84) continues to suggest they are seeking a recovery for conduct that occurred a long time ago.[3]  Thus, it is appropriate at the pleading stage for the Court to clarify that

---

[3] To be clear, this amount has no conceivable basis as a measure of Plaintiffs' damages regardless of the time period at issue:  $10 billion represents several times

Plaintiffs' claims, if any, are limited to those that accrued on or after May 20, 2019, and dismiss any claims based on acts before that date. *See, e.g.*, *White v. Harris*, No. 2:13-CV-6171, 2015 WL 1250015, at *14 (C.D. Cal. Mar. 16, 2015) (dismissing "as time-barred plaintiff's claims based on conduct predating" applicable limitations period); *McCarthy v. Johannesson*, No. CV-12-2099, 2012 WL 12887540, at *6 (C.D. Cal. Dec. 11, 2012) (granting motion to dismiss "to the extent it seeks damages incurred more than three years prior to the date [plaintiff] filed suit").

In short, even if Plaintiffs were found to plausibly allege acts of discrimination, any claims based on alleged acts that occurred before May 20, 2019, should be dismissed.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, McDonald's respectfully requests that the Amended Complaint be dismissed with prejudice.

---

the entire value of Plaintiffs' business, and it is impossible to infer that Plaintiffs would somehow multiply in value if McDonald's chose to advertise with them.

1

Dated:        July 29, 2021                    By: _____ */s/ Jennifer Steeve* _____

2

3                                              Shalem Massey (# 143281)
                                               Jennifer Steeve (# 308082)
4                                              RILEY SAFER HOLMES & CANCILA
                                               LLP
5                                              100 Spectrum Center Drive, Ste 440
                                               Irvine, CA  92618
6                                              smassey@rshc-law.com
                                               jsteeve@rshc-law.com
7                                              Telephone:  (949) 359-5515
                                               Facsimile:   (949) 359-5501
8

9

10                                             Patricia Brown Holmes (*pro hac vice*)
                                               Amy Andrews (*pro hac vice*)
11                                             RILEY SAFER HOLMES & CANCILA
                                               LLP
12                                             70 W. Madison Street, Ste 2900
                                               Chicago, IL 60602
13                                             pholmes@rshc-law.com
                                               aandrews@rshc-law.com
14                                             Telephone:  (312) 471-8745
                                               Facsimile:   (312) 471-8701
15

16

17                                             Loretta E. Lynch (*pro hac vice*)
                                               PAUL, WEISS, RIFKIND, WHARTON &
18                                             GARRISON LLP
                                               1285 Avenue of the Americas
19                                             New York, New York 10019-6064
                                               lelynch@paulweiss.com
20                                             Telephone: (212) 373-3000
                                               Facsimile: (212) 373-3990
21

22

23                                             *Attorneys for Defendant McDonald's*
                                               *Corporation*
24

25

26

27

28

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. 2:21-CV-04972-FMO-MAA