# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation; WEATHER GROUP, LLC, a Delaware limited liability company,

Plaintiffs,

vs.

McDONALD'S USA, LLC, a Delaware limited liability company,

Defendant.

Case No. 2:21-cv-04972-FMO-MAA

The individual and 30(b)(6) deposition of McDONALD'S CORPORATION by JENNIFER FELDMAN, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before YVETTE BIJARRO-RODRIGUEZ, CSR No. 084-003734, within and for the County of Cook and State of Illinois, and a Certified Shorthand Reporter of said state, at 70 West Madison Street, Suite 2900, Chicago, Illinois, on the 26th day of August, 2022, at 9:39 a.m.

REPORTED BY: YVETTE BIJARRO-RODRIGUEZ, CSR
LICENSE NO.: 084-003734

APPEARANCES:

MILLER BARONDESS, LLP
1999 Avenue of the Stars
Suite 1000
Los Angeles, California 90067
BY: MR. DAVID W. SCHECTER
- AND -
MS. MARGRET L. FLODEEN
(310) 552-4400
dschecter@millerbarondess.com
mflodeen@millerbarondess.com

On behalf of the Plaintiff;

RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street
Suite 2900
Chicago, Illinois 60602
BY: MS. AMY C. ANDREWS
- AND -
MR. ROBERT P. FOLEY
(312) 471-8700
aandrews@rshc-law.com
rfoley@rshc-law.com

On behalf of the Defendant.

ALSO PRESENT:

MS. MONICA MOSBY, SENIOR COUNSEL
McDONALD'S CORPORATION

MR. ROSS COLBY, VERITEXT
LEGAL SOLUTIONS, VIDEOGRAPHER

APPEARING REMOTELY VIA ZOOM:

MR. JEFF MAYES
MR. TOM O'BRIEN
MR. BYRON ALLEN
MS. JANICE AROUH
MR. DARREN GALATT
MR. ERIC GOULD

* * * *

Q. Do you know -- did you ever speak with Mr. Easterbrook as the chief executive officer about opposed upfront spending?

A. I never spoke with Mr. Easterbrook about proposed media spending.

Q. Did you speak with Mr. Easterbrook at all?

A. No.

Q. Did you speak with Mr. Kempczinski while he was president of McDonald's USA?

A. Ever?

Q. Ever.

A. Potentially, yes.

Q. About what?

A. Hallway conversation, hello.

Q. But nothing as part of your duties and responsibilities?

A. Not specific, no, to media investments.

Q. Is it -- are you just saying office chitchat?

A. Potentially, yes.

Q. Anything other than office chitchat?

A. Not that I recall.

Q. Do you know if the chief marketing

officer presented proposed upfront spending to the CEO?

A. I can't speak for what the CMO presented to the CEO.

Q. Do you know if the chief executive officer had the power to request that changes be made to the proposed upfront spending?

A. Can you clarify your question?

Q. Yeah. Just do you know if the CEO from 2015 to 2019 had the power to request changes to be made in a proposed upfront budget?

A. If you're asking me could they or did they?

Q. Could they?

A. I suppose they could ask any question to be changed.

Q. You would suppose that the CEO could request the changes be made to the upfront budget?

MS. ANDREWS: Objection, form, foundation.

BY THE WITNESS:

A. I don't know what they could or could not do. I suppose they could in a leadership position.

BY MR. SCHECTER:

Q. Can you ever think of an instance where the CEO requested that changes be made to the proposed upfront budget?

A. No.

[redacted]

Q. The text message -- Mr. Kempczinski said, he called both deaths tragic but then said in each case the parents failed those kids which I

know is something you can't say. Even harder to fix.

Do you agree with that statement?

MS. ANDREWS: Object to form.

BY THE WITNESS:

A. I don't know the context so I can't agree with what you're saying.

BY MR. SCHECTER:

Q. So you have no opinion one way or the other?

MS. ANDREWS: Object to the form.

BY THE WITNESS:

A. An opinion on the text or the context of the text?

BY MR. SCHECTER:

Q. The text message whether you agree with the statements or disagree?

MS. ANDREWS: Object to the form.

BY THE WITNESS:

A. I can't -- I don't know the context so I can't disagree or agree with them. I don't know what -- I don't know the specifics.

Q. Did you discuss the text message with any of your colleagues at work?

A. We didn't discuss the text message specifically.

[redacted]

Q. Did anyone express opinions about the text message?

A. Yes.

Q. Who?

A. Who?

Q. Who expressed opinions about it?

A. People had just expressed a general opinion in conversation.

Q. Was there a consensus in terms of the opinions expressed?

A. Not from my vantage point.

[redacted]



Q. Did you -- did any employees demand an apology?

A. I can't speak to who demanded an apology.

Q. To the best of your recollection, nobody demanded an apology?

MS. ANDREWS: Object to the form.

BY THE WITNESS:

A. I can't say if other people demanded an

apology.

[redacted]

Page 202

Veritext Legal Solutions
866 299-5127

EXHIBIT H - Page 68

[redacted]

Q. Are you aware that McDonald's shareholders made a shareholder proposal to require that McDonald's undergo a civil rights audit from a third-party firm?

A. I'm not familiar with that.

Q. So have you heard anything about that?

A. I do not know what you're talking about.

Q. Have you been contacted by any audit firm as part of the civil rights audit?

A. No.

[redacted]

Q. Are you familiar with former McDonald's African-American executives filing a racial discrimination, age discrimination lawsuit against McDonald's?

A. Only from what was shared in that complaint.

Q. I'm going to refer to that as the Guster-Hines lawsuit. Did you know either of those executives?

A. I don't know anything about that complaint.

Q. Did you work with those women at McDonald's?

A. I don't know who they are.

Q. Those executives allege that Mr. Kempczinski told them when talking about diversity that the numbers of African-Americans don't matter.

Have you ever heard Mr. Kempczinski say something like that?

MS. ANDREWS: Object to the form.

BY THE WITNESS:

A. I have not.

[redacted]

Q. Have you heard of Herb Washington?
A. No.
Q. Do you know anything about his case?
A. I do not.

[redacted]

REPORTER'S CERTIFICATE

I, Yvette Bijarro-Rodriguez, a Certified Shorthand Reporter, do hereby certify that on August 26, 2022, the deposition of the witness, JENNIFER FELDMAN, called by the Plaintiffs, was taken before me, reported stenographically and was thereafter reduced to typewriting through computer-aided transcription.

The said witness, JENNIFER FELDMAN, was first duly sworn to tell the truth, the whole truth, and nothing but the truth, and was then examined upon oral interrogatories.

I further certify that the foregoing is a true, accurate and complete record of the questions asked of and answers made by the said witness, at the time and place hereinabove referred to.

The signature of the witness was not waived by agreement.

Pursuant to Rule 207(a) of the Rules of the Supreme Court of Illinois if deponent fails to read and sign this deposition transcript within 28

days or make other arrangements for reading and signing thereof, this deposition transcript may be used as fully as though signed, and the instant certificate will then evidence such failure to read and sign this deposition transcript as the reason for signature being waived.

The undersigned is not interested in the within case, nor of kin or counsel to any of the parties.

Witness my official signature on this 29th day of August, 2022.

Yvette Bijarro-Rodriguez, CSR
One North Franklin Street
30th Floor
Chicago, Illinois 60606

License No. 084-003734