1    LOUIS R. MILLER (State Bar No. 54141)
     smiller@millerbarondess.com
2    DAVID W. SCHECTER (State Bar No. 296251)
     dschecter@millerbarondess.com
3    MURAD SALIM (State Bar No. 342747)
     msalim@millerbarondess.com
4    MILLER BARONDESS, LLP
     2121 Avenue of the Stars, Suite 2600
5    Los Angeles, California 90067
     Telephone:    (310) 552-4400
6    Facsimile:    (310) 552-8400

7    *Attorneys for PLAINTIFFS*

8    Patricia Brown Holmes (*pro hac vice*)        Loretta E. Lynch (*pro hac vice*)
     Amy Andrews (*pro hac vice*)                  PAUL, WEISS, RIFKIND,
9    Shalem Massey (SBN 143281)                    WHARTON & GARRISON LLP
     Jennifer Steeve (SBN 308082)                  1285 Avenue of the Americas
10   RILEY SAFER HOLMES & CANCILA LLP              New York, New York 10019-6064
     100 Spectrum Center Drive, Suite 440          lelynch@paulweiss.com
11   Irvine, CA  92618
     smassey@rshc-law.com                          John C. Hueston (SBN 164921)
12   jsteeve@rshc-law.com                          Moez M. Kaba (SBN 257456)
                                                   HUESTON HENNIGAN LLP
13                                                 523 West 6th Street, Suite 400
                                                   Los Angeles, CA 90014
14                                                 jhueston@hueston.com
                                                   mkaba@hueston.com
15

16              *Attorneys for Defendant McDonald's USA, LLC*

17

18          **UNITED STATES DISTRICT COURT**
            **CENTRAL DISTRICT OF CALIFORNIA**

19

| | |
|---|---|
| 20  ENTERTAINMENT STUDIOS NETWORKS, INC., a California corporation; WEATHER GROUP, LLC, a Delaware limited liability company, | Case No. 2:21-cv-04972-FMO-MAA |
| 21 | **JOINT STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT** |
| 22           Plaintiffs, | |
| 23      v. | Assigned to the: Hon. Fernando M. Olguin |
| 24  McDONALD'S USA, LLC, a Delaware limited liability company, | |
| 25           Defendant. | Date:      October 19, 2023 Time:     10:00 a.m. Location: Courtroom 690 |
| 26 | |
| 27 | |
| 28 | |

## I.    JOINT STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| P1. Entertainment Studios[1] is an African American-owned media company.<br><br>*Evidence*: Appendix of Evidence ("AOE") Ex. I (Allen Depo.) at 14:19-22, 41:2-14; Ex. F (Galatt Depo.) at 88:24-89:20, 91:8-92:13, 174:3-12; Ex. H (Kelly Depo.) at 13:9-14:8. | P1. Disputed.<br><br>*Evidence*:<br>Ex. O(1) (org chart showing no singular company called, "Entertainment Studios": there is Plaintiff Entertainment Studios Networks, Inc. ("ESN") and nonparty CF Entertainment, Inc., d/b/a Entertainment Studios, Inc. ("ES");<br><br>Ex. O(6) - ESN0041498(508,511) (AMH 2017/18 Consolidated Financial Statements);<br><br>Ex. O(7) at ¶¶27-28 (Plaintiffs' Nielsen Complaint brought by both separate entities) |
| P1. Moving Party's Response<br><br>McDonald's does not raise a *material* factual dispute.  McDonald's does not dispute that both companies are owned by Byron Allen, an African American, as set forth in McDonald's Response to footnote 1.  Rather, McDonald's disputes the use of the term "Entertainment Studios" to refer to Plaintiff Entertainment Studios Networks, Inc. ("ESN") and CF Entertainment, Inc. ("CFE").  How these two entities are referred to is not a material fact.  Because McDonald's does not dispute that both companies are African American-owned, as confirmed by the deposition testimony of Darren Galatt, Cindy Kelly, and Byron Allen, there is no material dispute of fact. | |
| P2.  Entertainment Studios content—including tv networks and broadcast syndicated programming—features courtroom drama, comedy, entertainment, cooking, travel, pets and automotive content that is targeted to general | P2. Disputed.<br><br>*Evidence*:<br>Ex. O(1) (org chart showing no singular company called, "Entertainment Studios": |

---

[1] "Entertainment Studios" refers to Entertainment Studios Networks, Inc. and CF Entertainment, Inc., which are affiliated companies that are 100% owned by African American media entrepreneur, Byron Allen. **McDONALD'S RESPONSE**: Defendant McDonald's USA, LLC ("McDonald's") does not dispute that Plaintiff Entertainment Studios Networks, Inc. ("ESN") and non-party CF Entertainment, Inc. ("ES") are both affiliated with Allen Media Group ("AMG") and are both owned by Byron Allen, an African American. McDonald's does dispute, however, that these companies are properly characterized as one company for purposes of either their individual businesses or this lawsuit. (*See* Ex. O(7) at ¶¶27-28 (Plaintiffs' Nielsen Complaint brought by both separate entities); Ex. O(1) (org chart); Ex. O(6) - ESN0041498(508,511); SMF at ¶¶D4, D12-D13.)

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| audiences.<br><br>*Evidence*: AOE Ex. F (Galatt Depo.) at 11:4-24, 88:24-89:20, 91:8-92:13, 179:5-180:8, 184:13-185:6, 268:13-19; Ex. H (Kelly Depo.) at 12:6-13:8, 23:16-20; Ex. A (Mason Depo.) at 97:4-13; Ex. M (Hodge Depo.) at 53:1-54:24.); Ex. L (Calabrese Depo.) at 53:14-54:14 | there is Plaintiff Entertainment Studios Networks, Inc. ("ESN") and nonparty CF Entertainment, Inc., d/b/a Entertainment Studios, Inc. ("ES");<br><br>Ex. O(6) - ESN0041498(508,511) (AMH 2017/18 Consolidated Financial Statements);<br><br>Ex. O(7) at ¶¶27-28 (Plaintiffs' Nielsen Complaint brought by both separate entities) |

| P2. Moving Party's Response<br><br>McDonald's does not raise a *material* factual dispute. As with P1, McDonald's disputes the use of the term "Entertainment Studios" to refer to ESN, and its affiliated company, CFE. It does not submit evidence to dispute the nature of Entertainment Studios' content or that such content is targeted to general audiences. As set forth by the deposition testimony of Darren Galatt and Cindy Kelly, based on their personal knowledge of Entertainment Studios' content, the content—including tv networks and broadcast syndicated programming—features courtroom drama, comedy, entertainment, cooking, travel, pets and automotive content that is targeted to general audiences. This was corroborated by McDonald's 30(b)(6) witness, Alycia Mason, and representatives of its African American ad agency, Burrell Communications, Inc. ("Burrell"), and its former general market ad agency, OMD Worldwide, Inc. ("OMD"). ||

| P3. Entertainment Studios' content is not African American targeted.<br><br>*Evidence*: AOE Ex. F (Galatt Depo.) at 11:4-24, 88:24-89:20, 91:8-92:13, 179:5-180:8, 268:13-19; Ex. H (Kelly Depo.) at 12:6-13:8; Ex. A (Mason Depo.) at 97:4-13; Ex. M (Hodge Depo.) at 53:1-54:24; Ex. L (Calabrese Depo.) at 53:14-54:14 | P3. Disputed.<br><br>*Evidence*:<br>Ex. O(26) - ESN0019635 (2015 ES - McDonald's slide deck touting that McDonald's could "reach more African-American Consumers with Entertainment Studios");<br><br>Ex. O(27) - ESN0022135(22151) (ES 2018 slide deck showcasing number of African American viewers that watch the ES Court Combo);<br><br>Ex. O(28) - ESN0002841 (self-describing ES as "highly African-American targeted and owned media");<br><br>Ex. O(29) - ESN0012078(94-95) (ES/Weather |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Group National Sales Conference slide deck, noting ES syndicated programming "reaches" and "attracts" "African-American Consumers"); |
| | Ex. O(83) - ESN0002571(2578) (ES Upfront 2021 slide deck discussing the ES Court Combo's reach with African American households); |
| | Ex. I – Allen Tr. 56:2-20; 57:4-9; 76:12-18 (Same programming produced for and run in broadcast syndication by ES is then "rerun" by ESN on the ESN Lifestyle Networks); |
| | Ex. V(2) – ESN0004248(256, 267) (showing ES Court Combo AA HH ratings and same shows run on ESN Lifestyle Network, Justice Central.TV); |
| | Ex. V(1) – ESN0020665(671, 675, 679, 688, 690) (presentation showing syndicated shows' AA household ratings and same shows played on ESN Lifestyle Networks); |
| | Ex. K - Restivo Tr. 45:20-46:15 ("[T]here's no way for someone on the outside to know who someone on the inside is targeting"). |

**P3. Moving Party's Response**

McDonald's does not raise a *genuine* dispute of material fact. Representatives from McDonald's ad agencies, Plaintiffs' executives, and McDonald's own 30(b)(6) witness, Alycia Mason, testified under oath that Plaintiffs' content is targeted to the General Consumer Market ("GCM"), not the African American Consumer Market ("AACM"). In an attempt to raise a genuine issue of fact, McDonald's relies on documents where Entertainment Studios tried to get ad revenue from McDonald's African American Consumer Market ("AACM") budget because McDonald's relegated Entertainment Studios to McDonald's African American ad agency and would only spend out of McDonald's AACM budget. (AOE Ex. F (Galatt Depo.) at 100:7-15, 179:5-21, 180:19-20.) Entertainment Studios' efforts to get ad revenue through McDonald's racially segregated process does not raise a genuine dispute of material fact as to the content of the programming given the admissions by all parties and the third-party agencies. *Tobin v. City & County of San Francisco*, 2016 WL 5791224, at *5 n.5 (N.D. Cal. Oct. 4, 2016), *aff'd*, 747 F. App'x 584 (9th Cir. 2019) (concluding that a memorandum of understanding does not create a genuine dispute of material fact where the proponent "fails to lay adequate foundation for the application of the MOU" to the instant case).

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| P4. McDonald's uses ad agencies to buy ad time on media to promote its products.<br><br>*Evidence*: AOE Ex. Ex. B (Hamilton Depo.) at 9:1-22; Ex. D (Carroll Depo) at 19:6-20:2, 20:15-21:12, 30:25-31:13, 48:23-49:16, 69:24-69:9; Ex. M (Hodge Depo.) at 27:14-28:10, 29:5-10; Ex. L (Calabrese Depo.) at 10:16-11:4, 15:15-22. | P4. Undisputed. |
| P5. OMD served as McDonald's general market ad agency from 2006 to 2021.<br><br>*Evidence*: AOE Ex. L (Calabrese Depo.) at 12:8-21, 13:11-16, 15:15-22; Ex. M (Hodge Depo.) at 9:17-10:10; Ex. A (Mason Depo.) at 98:8-15, 100:13-15; Ex. D (Carroll Depo.) at 19:12-19; Ex. C (Feldman Depo. at 10:10-14). | P5. Disputed.<br><br>*Evidence*:<br>Ex. P(2) - McD_ESN00023162(176) (5/4/2021 OMD/McDonald's Statement of Work, providing that OMD was responsible for executing video (linear TV and online video (or "OLV")), audio, programmatic, paid social and paid search media in accordance with set principles and operating processes for the General Consumer Market ("GCM") and the Hispanic Consumer Market ("HCM"), and additionally for purchasing and managing the Asian Consumer Market ("ACM") and African-American Consumer Market ("AACM") media "in specific instances as agreed upon with McDonald's and IAT partners," and for "[d]evelop[ing] and maintain[ing] strategic and tactical media plans for GCM and serv[ing] as media IAT lead/connection point for multicultural planning."); *id*. at 183 (McDonald's agencies were to work as an IAT to "[i]nstill integrated and collaborative processes and deliverables with partner agencies," "[i]dentify and implement efficiencies to workflow and document collaboration," and "[d]ocument process and workflow across partner agencies to define roles & responsibilities and key points of integration."). |
| P5. Moving Party's Response<br><br>McDonald's evidence does not create a genuine dispute of fact. Three of McDonald's 30(b)(6) witnesses, and representatives of both Burrell and OMD, confirmed that OMD served as | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| McDonald's general market agency from 2006 to 2021. McDonald's attempts to dispute these admissions by citing a statement of work from McDonald's contract with OMD from May 2021 without any testimony from any witness laying a foundation for what this statement of work means and how it relates to OMD's status as McDonald's general market agency. This statement of work does not create a genuine dispute of material fact. *Tobin*, 2016 WL 5791224, at *5 n.5 (concluding that a memorandum of understanding does not create a genuine dispute of material fact where the proponent "fails to lay adequate foundation for the application of the MOU" to the instant case). This statement of work also confirms that OMD was McDonald's general market agency. McDonald's does not submit any evidence that there was some other agency who served as the general market agency, in whole or in part, during this period. ||
| P6. Burrell Communications ("Burrell") served as McDonald's African American ad agency from at least 2012 to the present.<br><br>*Evidence*: AOE Ex. A (Mason Depo.) at 72:13-25, 73:20-25, 105:5-7, 112:13-15; Ex. M (Hodge Depo.) at 12:1-12, 38:5-19; Ex. D (Carroll Depo.) at 19:20-20:2, Ex. C (Feldman Depo.) at 168:15-169:7, 171:9-10. | P6. Disputed.<br><br>*Evidence*:<br>Ex. C - Feldman Tr. 168:15-19 (Burrell is an agency of record that is focused on reaching the African-American **consumer market**) (emphasis added);<br><br>Ex. E - Flatley Tr. 15:24 – 16:14, 55:8 – 16 (Burrell's role included making recommendations "over and above" the general consumer market buys "to ensure we are reaching our African American consumer base");<br><br>Ex. M - Burrell 30(b)(6) Tr. 38:5-8 (the work Burrell does for McDonald's is to help McDonald's specifically target an African American audience);<br><br>Ex. P(3) - McD_ESN00023113 (Burrell/McDonald's Amended and Restated Advertising Agency Agreement);<br><br>Ex. P(2) - McD_ESN00023162(183) (5/4/2021 OMD/McDonald's Statement of Work, providing that McDonald's agencies were to work as an IAT to "[i]nstill integrated and collaborative processes and deliverables with partner agencies," "[i]dentify and implement efficiencies to workflow and document collaboration," and "[d]ocument process and workflow across partner agencies to define roles & responsibilities and key points of integration.") |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| **P6. Moving Party's Response**<br><br>McDonald's does not create a genuine dispute of fact. Three of McDonald's 30(b)(6) witnesses, and Burrell's own representative, confirmed that Burrell served as McDonald's African American ad agency from 2012 to the present. McDonald's submits testimony from its witness, Jennifer Feldman, that Burrell was its African American consumer market agency. Whether Burrell is referred to as McDonald's "African American ad agency" or its "African American consumer market agency" is not a dispute of material fact. Moreover, Donna Hodge admitted that Burrell is responsible for evaluating both African American-targeted and African American-owned media for McDonald's. (Ex. M (Hodge Depo.) at 12:1-12.)<br><br>McDonald's also again cites to the May 4, 2021 Statement of Work from after it was on notice of Plaintiffs' claims, in which it generally describes its Inter-Agency Team. No evidence is presented that this purported Inter-Agency Team ever performed any evaluation or other work with respect to Plaintiffs' content and proposals for ad contracts. This statement of work does not create a genuine dispute of material fact. *Tobin*, 2016 WL 5791224, at *5 n.5 (concluding that a memorandum of understanding does not create a genuine dispute of material fact where the proponent "fails to lay adequate foundation for the application of the MOU" to the instant case). | |
| **P7.** OMD was responsible for evaluating general market media for advertising opportunities for McDonald's.<br><br>*Evidence*: AOE Ex. L (Calabrese Depo.) at 12:8-21, 13:11-16, 15:15-22; Ex. M (Hodge Depo.) at 9:17-10:10; Ex. A (Mason Depo.) at 98:8-15, 100:13-15; Ex. D (Carroll Depo.) at 19:12-19; Ex. C (Feldman Depo.) at 10:10-14. | **P7.** Disputed.<br><br>*Evidence*:<br>Ex. P(2) - McD_ESN00023162(176-183) (5/4/2021 OMD/McDonald's Statement of Work, providing that OMD was responsible, among other things, for executing video (linear TV and online video (or "OLV")), audio, programmatic, paid social and paid search media in accordance with set principles and operating processes for the General Consumer Market ("GCM") and the Hispanic Consumer Market ("HCM"), and additionally for purchasing and managing the Asian Consumer Market ("ACM") and African-American Consumer Market ("AACM") media "in specific instances as agreed upon with McDonald's and IAT partners."); *id*. at 183 (McDonald's agencies were to work as an IAT to "[i]nstill integrated and collaborative processes and deliverables with partner agencies," "[i]dentify and implement efficiencies to workflow and document collaboration," and "[d]ocument process and workflow across partner agencies to define roles & responsibilities and key points of integration.") |
| **P7. Moving Party's Response** | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| McDonald's does not create a genuine dispute of material fact. Three of McDonald's 30(b)(6) witnesses, and representatives of both Burrell and OMD, confirmed that OMD general market media for advertising opportunities for McDonald's from 2006 to 2021. McDonald's submits a document dated May 4, 2021 that discusses the possibility that OMD would assist with certain discrete tasks outside of the GCM. This does not create a genuine dispute of material fact, in light of the admissions of OMD and McDonald's 30(b)(6) witnesses. *Tobin*, 2016 WL 5791224, at *5 n.5 (concluding that a memorandum of understanding does not create a genuine dispute of material fact where the proponent "fails to lay adequate foundation for the application of the MOU" to the instant case). | |
| P8. Burrell was responsible for evaluating African American-targeted media for advertising opportunities for McDonald's.<br><br>*Evidence*: AOE Ex. A (Mason Depo.) at 72:13-25, 73:20-25, 105:5-7, 112:13-15; Ex. M (Hodge Depo.) at 12:1-12, 38:5-19; Ex. D (Carroll Depo.) at 19:20-20:2;, Ex. C (Feldman Depo.) at 168:15-169:7, 171:9-10. | P8. Undisputed. |
| P9. Burrell was also responsible for evaluating African American-owned media for advertising opportunities for McDonald's regardless of the content.<br><br>*Evidence*: AOE Ex. M (Hodge Depo.) at 12:1-12; Ex. N (Bibbens Depo.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15-69:14, 74:16-75:21, 77:7-14. | P9. Disputed.<br><br>*Evidence*:<br>Ex. M - Burrell 30(b)(6) Tr. 38:11-15 (Burrell **tracks** how much of the AACM budget is being spent with Black-owned media companies) (emphasis added)<br><br>Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (Burrell provides McDonald's with breakdowns of its spending with Black-owned media companies, and it combines that work with OMD/Starcom)<br><br>Ex. M - Burrell 30(b)(6) Tr. 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the GCM agency has)<br><br>Ex. M - Burrell 30(b)(6) Tr. 53:4-21 (the GCM agency evaluating ESN was not a new development)<br><br>Ex. C - Feldman Tr. 105:6-106:1 (both Burrell and OMD would track and report to McDonald's the level of advertising spend on Black-owned media companies); 173:4-13 (media companies are not "assigned" to |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor.") |
| | Ex. A - Mason Tr. 98:10-15; 100:10-25; 112:13-17 ("Burrell is 100 percent responsible for planning the media buy that is targeted to African Americans. OMD and Burrell shared responsibilities on who would place the buy based on pricing and other things."); Mason Tr. 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD") |
| | Ex. M - Burrell 30(b)(6) Tr. 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the general market agency has) |
| | Ex. M. - Burrell 30(b)(6) Tr. 53:4-21 (the GCM agency evaluating ESN was not a new development); |
| | Ex. D - Carroll Tr. 161:8-24; 163:21-164:5; 164:13-14 (single agency relationship preferred when there are common points of leverage with entities that sell both GCM and AACM properties, like Viacom and |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | ESPN/Disney, to maximize leverage and maintain "clean lines of accountability"). |
| | Ex. L - OMD 30(b)(6) Tr. 53:14-25 and Ex. O(24) - Burrell_0008781 (confirming OMD would buy both GCM and AACM buys from Plaintiffs in 2021); |
| | Ex. S(2) - Lynch Rebuttal Report ¶14 ("It is industry standard for a given AOR to be the primary point of contact for the media partners whose media properties can effectively reach that AOR's target audience (in the case of Burrell, the AACM).") |
| | Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); |
| | Ex. P(10) - McD_ESN00018473 (AACM - AA owned 2018-2020 tab, reflecting McDonald's order of AMG property via OMD); |
| | Ex. P(11) - McD_ESN00012884 (OMD and Burrell collaborating on buying black owned media offerings); |
| | Ex. N - Bibbens Tr. 85:4-8 (the 2022 media buy for Black-owned Reach TV was placed through Starcom, not Burrell) |
| | Ex. P(12) - McD_ESN00000660 (OMD buying Black-owned Related Media); |
| | Ex. U - Innes Declaration; |
| | Ex. T - Geraci Declaration |

P9. Moving Party's Response

McDonald's does not create a genuine dispute of material fact. Burrell's Donna Hodge, who is responsible for the McDonald's account, testified that she is responsible for evaluating African American-targeted and African American-owned media for advertising opportunities for McDonald's. (Ex. M (Hodge Depo.) at 12:1-12, 15:12-17.) Lynnwood Bibbens, an African American entrepreneur, confirmed this. Mr. Bibbens acquired the CNN Airport News Network, which features general market-targeted content, from CNN, and upon his acquisition,

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

McDonald's made Burrell his agency of record.  (Ex. N (Bibbens Depo.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15-69:14, 74:16-75:21, 77:7-14.)

McDonald's submits Ex. M (Donna Hodge Depo.) at 38:11-15, which is simply testimony from Ms. Hodge that McDonald's used Burrell to target the African American audience.  It does not contradict her testimony that she also evaluates African American-owned media for McDonald's, regardless of its content.

Ex. M (Donna Hodge Depo.) at 44:22-45:13 states that from December 2021 to the present, Burrell provided McDonald's with breakdowns of its spend with Black-owned media, and that Burrell combined its work with OMD and Starcomm.  This does not contradict Ms. Hodge's testimony that she evaluates African American-owned media for McDonald's, regardless of its content.  As to Burrell combining work with OMD and Starcomm, Ms. Hodge was only testifying as to the time period of December 2021 (which is after this lawsuit was filed) to the present.  Ex. M (Donna Hodge Depo.) at 44:22-25.)

McDonald's also cites testimony from OMD's Geoff Calabrese regarding the placement of an ad buy with Plaintiffs in 2021.  Ex. L (Calabrese Depo.) at 53:14-25.  Mr. Calabrese "never worked on [McDonald's] account directly" and only oversaw the account starting in 2021.  Ex. L (Calabrese Depo.) at 9:19-10:3.  McDonald's cites documents relating to the same 2021 ad buys with Plaintiffs.  These purchases all occurred after the filing of this lawsuit or when the lawsuit was imminent – including a purchase designed to "calm Byron Allen down."  (AOE Ex. CC at AOE3760.)  These 2021 purchases do not create a genuine dispute as to whether Burrell evaluated African American-owned media on behalf of McDonald's, regardless of its content.  They only show that a purchase with Plaintiffs was ultimately made through OMD – after the filing of this lawsuit.

McDonald's cites the rebuttal expert report of Adriana Lynch, who opines about "standard practices" with respect to using agencies of record.  Ms. Lynch's general opinions concerning the use of agencies of record in the industry broadly do not create a genuine dispute of material fact as to whether Burrell evaluated African American-owned media on behalf of McDonald's, regardless of its content.

McDonald's testimony from its own witnesses, Alycia Mason, Jennifer Feldman, and Anja Carroll broadly describes the relationship between McDonald's and Plaintiffs.  Aside from referring to a single ad buy McDonald's placed with Plaintiffs through OMD after McDonald's was put on notice of Plaintiffs' claim, McDonald's witnesses do not offer any testimony to dispute whether Burrell evaluated African American-owned media on behalf of McDonald's regardless of its content.

McDonald's cites to testimony from Lynnwood Bibbens that McDonald's ultimately placed an ad buy in 2022 on his network through OMD/Starcomm. This buy, which occurred after this lawsuit was filed, does not create a dispute of material fact as to whether Burrell evaluated African American-owned media on behalf of McDonald's, regardless of its content.

McDonald's cites a document showing that it purportedly made an ad buy with Related Media, a purportedly Black-owned entity, through OMD.  McDonald's presents *no admissible evidence* that Related Media is Black-owned.  There is no testimony from anyone with personal knowledge of the ownership of Related Media.  The only evidence McDonald's submits is a spreadsheet it produced in this litigation.  There is no testimony from the person(s) who prepared or received this document in the ordinary course of business and no testimony from anyone who

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| can attest to the accuracy of the information in the report. The report is inadmissible hearsay. McDonald's custodian declaration (AOE Ex. P (Strom Decl.) ¶¶ 2, 13, AOE2203-04) does not lay any foundation for the document and fails to address the elements of the business record exception under Federal Rule of Evidence 803(6).<br><br>McDonald's cites declarations from former OMD executives Debbie Innes and Chris Geraci, in which they claim that McDonald's was directing Entertainment to an "additional opportunity" with Burrell, rather than relegating them to Burrell. But McDonald's 30(b)(6) witness Anja Carroll conceded McDonald's made the decision to make Burrell Entertainment Studios' agency of record. Ex. D (Carroll Depo.) at 164:6-14. Moreover, Ms. Innes and Mr. Geraci's self-serving declarations contradict their own prior emails, in which they confirmed Entertainment Studios was relegated to Burrell. Ex. BBB(1) (email confirming Burrell was Entertainment Studios' agency of record); Ex. T(1) (email stating "McDonald's will consider [advertising], but not through OMD."). | |
| P10.  OMD was responsible for deploying the vast majority of McDonald's national ad budget.<br><br>*Evidence*: AOE Ex. C (Feldman Depo.) at 174:4 – 175:1; Ex. A (Mason Depo.) at 109:6-9; Ex. ZZ(1) (Mason Depo. Tr. Ex. 2). | P10.    Undisputed. |
| P11. Burrell was responsible for deploying less than 5% of McDonald's national ad budget.<br><br>*Evidence*: AOE Ex. C (Feldman Depo.) at 177:4-11; Ex. M (Hodge Depo.) at 38:5-19; Ex. ZZ(1) (Mason Depo. Tr. Ex. 2). | P11.    Disputed.<br><br>*Evidence*:<br>Ex. M - Burrell 30(b)(6) Tr. 46:12-16; 18:14; 19:2-18 (McDonald's 2022 total media spend approximately $700M, $56M of which is devoted to the AACM, the entirety of which Burrell is responsible for making recommendations regarding where its spent).<br><br>ESN's Ex. 11 (Mason Depo. Tr. Ex 2) (indicating the total Burrell spend in 2020 was more than 5%) |
| P11. Moving Party's Response<br><br>McDonald's does not create a genuine dispute of *material* fact. McDonald's does not submit evidence disputing that Burrell was responsible for less than 5% of its national advertising budget through 2019. As to 2020, McDonald's presents a spreadsheet showing Burrell's spend was $23 million out of a national ad budget of $451 million – 5.099%. The difference between "less than 5%" and 5.099% is not a genuine dispute as to a *material* fact.<br><br>With respect to 2022, after this lawsuit was filed, Plaintiffs agree that Donna Hodge's testimony indicated the amount McDonald's spent through Burrell exceeded 5%. | |
| P12. McDonald's relegated Entertainment Studios to Burrell. | P12.    Disputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: AOE Ex. F (Galatt Depo.) at 100:7-15, 179:5-21, 180:19-20; Ex. D (Carroll Depo.) at 164:6-14, 171:4-8; Ex. C (Feldman Depo.) at 172:2-22; Ex. ZZ(2) (Mason Depo Tr. Ex. 9); Ex. ZZ(3) (Mason Depo. Tr. Ex. 10). | *Evidence*:<br>Ex. U - Innes Declaration;<br><br>Ex. T - Geraci Declaration;<br><br>Ex. M - Burrell 30(b)(6) Tr. 38:11-15 (Burrell tracks how much of the AACM budget is being spend with Black-owned media companies)<br><br>Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (Burrell provides McDonald's with breakdowns of its spending with Black-owned media companies, and it combines that work with OMD/Starcom)<br><br>Ex. M - Burrell 30(b)(6) Tr. 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the GCM agency has)<br><br>Ex. M - Burrell 30(b)(6) Tr. 53:4-21 (at least since Burrell 30(b)(6) came to Burrell, the GCM agency evaluating ESN was not a new development)<br><br>Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | negotiate with that vendor.")<br><br>Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD").<br><br>Ex. E - Flatley Tr. 56:16-57:3; 60:17-21 (McDonald's was not was not "intentionally placing media partners and relegating them to different groups"; that "was not at all the practices that we had in place at McDonald's at all")<br><br>Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation.")<br><br>Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); |
| | Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); |
| | Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); |
| | Ex. O(21) - ESN0022535 (December 2019 meeting); |
| | Ex. O(38) - ESN00016403 (March 2020) (presented Weather and ES properties to OMD); |
| | Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); |
| | Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); |
| | Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); |
| | Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); |
| | Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); |
| | Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); |
| | Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); |
| | Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); |
| | Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); |
| | Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing ESN owned theGrio added as a "DEI partner"); |
| | Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); |
| | Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); |
| | Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now) |
| | Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) |

P12. Moving Party's Response

McDonald's evidence does not create a genuine dispute of material fact.  Plaintiffs submit testimony from Darren Galatt, who was responsible for Ad Sales for Entertainment Studios, that he made annual pleas to be allowed to pitch to McDonald's through OMD, but was funneled to

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

Burrell.  Ex. F (Galatt Depo.) at 100:7-15, 179:5-21, 180:19-20.  Plaintiffs submit testimony from McDonald's 30(b)(6) witness, Anja Carroll, that McDonald's made the decision to make Burrell Entertainment Studios' agency of record for McDonald's. Ex. D (Carroll Depo.) at 164:6-14, 171:4-8.  And Plaintiffs submit an email from Debbie Innes at OMD reminding Entertainment Studios "that Burrell is the agency of record for McDonald's and Entertainment Studios."  Ex. BBB(1).

Much of the evidence McDonald's cites to attempt to dispute this fact is the same as cited in its response to P9.  For the reasons discussed in Plaintiffs' Response as to P9, that evidence does not create a genuine dispute of material fact as to the relegation of Entertainment Studios to Burrell. Any testimony from Burrell's Donna Hodge as to McDonald's dealings with Entertainment Studios is necessarily limited to the time period of December 2021 through the present.  Ex. M (Hodge Depo.) at 15:12-17, 44:22-25.  Any testimony from OMD's Geoff Calabrese is not based on personal knowledge because he never worked directly on the McDonald's account and only began overseeing it in 2021.  Ex. L (Calabrese Depo.) at 9:19-10:3.  The documents cited by McDonald's showing that McDonald's resumed spending with Plaintiffs in 2021–after Plaintiffs put McDonald's on notice of their claims–do not create a genuine dispute of material fact that Entertainment Studios was relegated to Burrell.  This spending was minimal and designed to "calm Byron Allen down."  (AOE Ex. CC at AOE3760.)

McDonald's cites the rebuttal expert report of Adriana Lynch, who opines about "standard practices" with respect to using agencies of record.  Ms. Lynch's general opinions concerning the use of agencies of record in the industry broadly do not create a genuine dispute of material fact as to whether Burrell evaluated African American-owned media on behalf of McDonald's, regardless of its content.

McDonald's cites testimony from its own witnesses, Alycia Mason, Jennifer Feldman, and Anja Carroll, but the cited testimony merely describes the relationship between McDonald's and Plaintiffs at a general level.  Aside from referring to a single ad buy McDonald's placed with Plaintiffs through OMD, McDonald's witnesses do not offer any specifics.  Similarly, the testimony from Morgan Flatley of McDonald's does not relate to Plaintiffs, at all, but describes general practices at McDonald's.  None of the testimony cited creates a dispute of material fact as to whether Burrell evaluated African American-owned media on behalf of McDonald's, regardless of its content.

McDonald's cites declarations from former OMD executives Debbie Innes and Chris Geraci, in which they claim that McDonald's was directing Entertainment Studios to an "additional opportunity" with Burrell, rather than relegating them to Burrell.  But McDonald's 30(b)(6) witness Anja Carroll conceded McDonald's made the decision to make Burrell Entertainment Studios' agency of record.  Ex. D (Carroll Depo.) at 164:6-14.  Moreover, Ms. Innes and Mr. Geraci's self-serving declarations contradict their own prior emails, in which they confirmed Entertainment Studios was relegated to Burrell.  Ex. BBB(1) (email confirming Burrell was Entertainment Studios' agency of record); Ex. T(1) (email stating "McDonald's will consider [advertising], but not through OMD.").

McDonald's also cites documents showing Plaintiffs had some sporadic meetings with OMD, including some that occurred after Allen Media Group acquired Weather Group, LLC.  But as Darren Galatt testified, McDonald's continued to relegate Entertainment Studios to Burrell during this period.  Ex. F (Galatt Tr.) at 314:12-20.

| P13. McDonald's relegated Entertainment Studios to Burrell because Entertainment | P13.    Disputed. |
|---|---|

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Studies is African American-owned.<br><br>*Evidence*: AOE Ex. F (Galatt Depo.) at 100:7-15, 179:5-21, 180:19-20; Ex. D (Carroll Depo.) at 164:6-14, 171:4-8; Ex. C (Feldman Depo.) at 172:2-22; Ex. ZZ(2) (Mason Depo Tr. Ex. 9); Ex. ZZ(3) (Mason Depo. Tr. Ex. 10); Ex. M (Hodge Depo.) at 12:1-12; Ex. N (Bibbens Depo.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15-69:14, 74:16-75:21, 77:7-14. | *Evidence*:<br>Ex. U - Innes Declaration;<br><br>Ex. T - Geraci Declaration;<br><br>Ex. M - Burrell 30(b)(6) Tr. 38:11-15 (Burrell tracks how much of the AACM budget is being spend with Black-owned media companies);<br><br>Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (Burrell provides McDonald's with breakdowns of its spending with Black-owned media that work with OMD/Starcom);<br><br>Ex. M - Burrell 30(b)(6) Tr. 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the GCM agency has);<br><br>Ex. M - Burrell 30(b)(6) Tr. 53:4-21 (the GCM agency evaluating ESN was not a new development);<br><br>Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); |
| | Ex. E - Flatley Tr. 56:16-57:3; 60:17-21 (McDonald's was not "intentionally placing media partners and relegating them to different groups"; that "was not at all the practices that we had in place at McDonald's at all"); |
| | Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); |
| | Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); |
| | Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Chris Geraci and others at OMD); |
| | Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); |
| | Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); |
| | Ex. O(21) - ESN0022535 (December 2019 meeting); |
| | Ex. O(38) - ESN00016403 (March 2020) (presented Weather and ES properties to OMD); |
| | Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); |
| | Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); |
| | Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); |
| | Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); |
| | Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | push the envelope on what is possible"). |
| | Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); |
| | Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); |
| | Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); |
| | Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); |
| | Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); |
| | Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); |
| | Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); |
| | Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); |
| | Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) |

P13. Moving Party's Response

McDonald's evidence does not create a genuine dispute of material fact.  On the fact that Entertainment Studios was relegated to Burrell, Plaintiffs submit the same evidence as in P12, and McDonald's submits the same responsive evidence.

As to the fact that such relegation was because Entertainment Studios is African American-

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| owned, Plaintiffs submit testimony from Burrell's Donna Hodge that she evaluates African American-targeted and African American-owned media for McDonald's to advertise on.  Ex. M (Hodge Depo.) at 12:1-12.  And Plaintiffs submit the testimony of Lynnwood Bibbens, another African American media entrepreneur, who confirmed that as soon as he purchased the general market-targeted Airport News Network from CNN, McDonald's made him work through Burrell, even though – when the network was owned by CNN – it worked with the GCM agency.  (Ex. N (Bibbens Depo.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15-69:14, 74:16-75:21, 77:7-14.

On this point, McDonald's submits no competent evidence to dispute that it relegated Entertainment Studios to Burrell because it is African American-owned.  It submits the same evidence it submitted to dispute relegation, but as discussed in P12, that evidence does not create a genuine dispute of material fact. | |
| P14. Entertainment Studios continued to seek access to McDonald's general market budget through OMD after 2016 but was forced to deal with Burrell.

*Evidence*: AOE Ex. A (Schecter Decl.), Ex. F (Galatt Depo.) at 179:5-21, 184:13-185:6. | P14.      Disputed.

*Evidence*:
Ex. U - Innes Declaration;

Ex. T - Geraci Declaration;

Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit' on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation.");

Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); |
| | Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); |
| | Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); |
| | Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); |
| | Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); |
| | Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | networks"); |
| | Ex. O(21) - ESN0022535 (December 2019 meeting); |
| | O(38) - ESN00016403 (March 2020) (presented Weather and ES properties to OMD); |
| | Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020) |
| | Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); |
| | Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD") |
| | Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); |
| | Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); |
| | Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Ex. O(70) - ESN0010119(10121,10125 (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); |
| | Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); |
| | Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); |
| | Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); |
| | Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); |
| | Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); |
| | Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); |
| | Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) |

**P14. Moving Party's Response**

McDonald's evidence does not create a genuine dispute of material fact. Plaintiffs present the testimony of Darren Galatt regarding how he made annual pleas throughout the relevant time period to work with OMD, but was funneled to Burrell. Ex. F (Galatt Depo.) at 179:5-21, 184:13-185:6. McDonald's presents the same evidence as it presents in P9 and P12-13. For the reasons outlined in P9 and P12-13, this evidence does not create a genuine dispute of material fact that Plaintiffs continued to seek access to McDonald's GCM ad budget through OMD, but were relegated to Burrell instead.

## II.   JOINT STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF McDONALD'S MOTION FOR SUMMARY JUDGMENT

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D1. Byron Allen ("Allen") is the sole member of Allen Media Holdings II, LLC, which is the sole member of Allen Media Holdings, LLC (together, "AMH"). *Evidence*: Ex. O(1) (Org chart); Ex. O(2) (AMG Preliminary Bond Offering Memorandum dated July 21, 2021 ("AMG Bond Offering"), at v, 1, 8, 13) | Undisputed. |
| D2. AMH "functions as a holding company for Allen Media LLC ('AM') and its subsidiaries." *Evidence*: Ex. O(1) (org chart); Ex. O(2) (AMG Bond Offering at 13); Ex. O(3) - ESN0041976(985) (AMH 2020/21 Consolidated Financial Statements); Ex. O(4) - ESN0041590(599) (AMH 2018/19 Consolidated Financial Statements) | Undisputed. |
| D3. AMH, AM, and its operating subsidiary entities are sometimes collectively referred to publicly as Allen Media Group ("AMG"). *Evidence*: Ex. O(3) - ESN0041976(985) (AMH 2020/21 Consolidated Financial Statements); Ex. O(4) - ESN0041590(599) (AMH 2018/19 Consolidated Financial Statements); Ex. O(3) - ESN0041976 (AMH 2020/21 Consolidated Financial Statements); https://allenmedia.tv/ir/ (AMG's investor relations web page); Ex. O(2) (AMG Bond Offering at iv, 13); Ex. O(5) at ¶4 (Declaration of Mark DeVitre) | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D4. Plaintiff Entertainment Studios Networks, Inc. ("ESN") is an AMG affiliated property and subsidiary of AMH formed on May 12, 2008.<br><br>*Evidence*:<br>Ex. O(1) (org chart);<br><br>Ex. O(6) - ESN0041498(508,511) (AMH 2017/18 Consolidated Financial Statements, identifying ESN as operating entity of Allen Media LLC which is owned "either directly or through wholly owned subsidiaries, by the current member of AMH");<br><br>Ex. O(4) - ESN0041590(599) (AMH 2018/19 Consolidated Financial Statements);<br><br>Ex. O(7) at ¶28 (Plaintiffs' Nielsen Complaint) | Disputed. ESN is not an "AMG property." ESN is a California corporation that owns and operates lifestyle cable networks.<br><br>*Evidence:*<br>AOE Ex. J (11/15/22 Karras Tr.) at 32:12-33:16.). |
| D4. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. ESN is a subsidiary of AMG, owned and controlled by Byron Allen. *See* Ex. O(2) (AMG Bond Offering at 4, 77) (noting that "we own and operate a variety of networks distributed across cable, theatrical distribution and digital media through our Entertainment Studios business," which includes ESN's Lifestyle Networks); Ex. O(1) (org chart). | |
| D5. Nonparty Justice Central Networks, Inc. is an AMG affiliated property and subsidiary of AMH.<br><br>*Evidence*:<br>Ex. HHH – DeVitre Tr. 16:25-17:5; 20:15-20. | Disputed. Justice Central Networks, Inc. ("JCN") is not an "AMG property." It is a California corporation that owns and operates JusticeCentral.TV.<br><br>*Evidence:*<br><br>AOE Ex. HHH (DeVitre Depo.) at 20:15-21:5.) |
| D5. Moving Party's Response.<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Mark DeVitre, in-house counsel for AMG, testified that Justice Central Networks Inc. is an AMG affiliated entity. Ex. HHH – DeVitre Tr. 49:9-15; 20:15-21:5. | |
| D6. As of December 31, 2018 and 2017, ESN operated and managed the following seven networks, collectively referred to herein as the "ESN Lifestyle Networks": Comedy.TV, Justice Central.TV, Recipe.TV, Pets.TV, ES.TV, Cars.TV, and MyDestination.TV. | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. O(6) - ESN0041498(511) (AMH 2017/18 Consolidated Financial Statements); <br><br> Ex. J - Karras Tr. 33:9-16; 67:9-13; 34:17-22 | |
| D7. Justice Central.TV is owned by nonparty Justice Central Networks, Inc. <br><br> *Evidence*: Ex. HHH – DeVitre Tr. 20:15-20. | Undisputed. |
| D8. AMG acquired Plaintiff Weather Group, LLC ("Weather Group") in 2018. <br><br> *Evidence*: Ex. F – Galatt Tr. 18:17-20; <br><br> Ex. O(3) – ESN0041976(985) (AMH 2020/21 Consolidated Financial Statements); <br><br> Ex. O(4) – ESN0041590(599) (AMH 2018/19 Consolidated Financial Statements); <br><br> Ex. O(6) – ESN0041498(508) (AMH 2017/18 Consolidated Financial Statements) | Undisputed. |
| D9. Weather Group is a subsidiary of AMH. <br><br> *Evidence*: Ex. O(1) (org chart); <br><br> Ex. O(6) – ESN0041498(508) (AMH 2017/18 Consolidated Financial Statements); <br><br> Ex. O(3) – ESN0041976(985) (AMH 2020/21 Consolidated Financial Statements); <br><br> Ex. O(4) – ESN0041590(599) (AMH 2018/19 Consolidated Financial Statements) | Undisputed. |
| D10. Weather Group operates The Weather Channel ("TWC") cable network. <br><br> *Evidence*: Ex. O(6) – ESN0041498(509) (AMH 2017/18 Consolidated | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Financial Statements); <br><br> Ex. O(3) – ESN0041976(985) (AMH 2020/21 Consolidated Financial Statements); <br><br> Ex. O(4) – ESN0041590(599) (AMH 2018/19 Consolidated Financial Statements) | |
| D11. Prior to AMG's acquisition of Weather Group in 2018, neither Weather Group nor TWC were majority owned by an African American owner. <br><br> *Evidence*: <br> Ex. G – Bekkedahl Tr. 34:18-35:12 | Undisputed. |
| D12. Nonparty CF Entertainment, Inc., d/b/a Entertainment Studios, Inc. ("ES") is a subsidiary of AMH. <br><br> *Evidence*: <br> Ex. O(6) – ESN0041498(508) (AMH 2017/18 Consolidated Financial Statements); <br><br> Ex. O(1) (org chart) | Undisputed. |
| D13. ES is a different corporate entity than ESN. <br><br> Ex. J – Karras Tr. 36:24-37:2; 54:12-18; <br><br> Ex. O(3) – ESN0041976(985) (AMH 2020/21 Consolidated Financial Statements); <br><br> Ex. O(6) – ESN0041498(508) (AMH 2017/18 Consolidated Financial Statements); <br><br> Ex. O(1) (org chart); <br><br> Ex. O(7) at ¶¶27-28 (Plaintiffs' Nielsen Complaint). | Disputed.  McDonald's presents this fact as a basis to support its Article III standing argument.  ESN and CFE are both owned, operated and controlled by the same person, and their businesses are interconnected.  ESN gets its content from CFE for free, which is unique for cable networks.  ESN would not have free content to run on its networks if Mr. Allen did not wholly own, operate and control both companies.  Revenue that CFE receives improves content which increases revenue opportunities for ESN. <br><br> *Evidence*: <br> AOE Ex.  Y (5/15/23 Karras Tr.) at 17:6-21, 18:24-19:19, 28:14-17, 70:1-13, 83:13-18, 164:9-12, 174:16-24, 176:25-179:11, 220:5-11); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. J (11/15/22 Karras Tr.) at 37:3-11, 39:24 – 40:13, 98:2-13;<br><br>AOE Ex. H (Kelly Tr.) at 32:9-22, 76:2-11;<br><br>Ex. F (Galatt Tr.) at 92:4-19. |
| **D13. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Mark DeVitre, in-house counsel for AMG, testified that although ESN and ES are "affiliated businesses" that "work hand in hand together," they are "separate corporations." Ex. HHH – DeVitre Tr. 10:4-14. *See also* Ex. O(7) at ¶¶27-28 (pleading ES and ESN as separate entities each individually suing The Nielsen Company). *See also* Ex. J – Karras Tr. 39:24-41:1; 66:21-67:4; 83:7-11 (indicating that the ESN financial statements show intercompany payments for use of ES's syndicated programming); Ex. O(17) (ESN financials 2018-2021, line item for "Brand License Fees" refers to "intercompany payments" made from ESN to CF Entertainment "for use of the syndicated content") | |
| **D14.** Justice Central Networks, Inc. is a separate corporate entity from ES and ESN.<br><br>*Evidence:*<br>Ex. HHH – DeVitre Tr. 16:25-17:5; 20:15-20. | Disputed.  McDonald's cites this as well for its Article III standing argument.  JCN and ESN are both owned, operated and controlled by the same person and their businesses are interconnected.<br><br>*Evidence*:<br><br>AOE Ex. HHH (DeVitre Depo.) at 16:5-17:5, 20:15-21:5, 28:8-30:10, 49:5-50:1, |
| **D14. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Mark DeVitre, in-house counsel for AMG, testified that Justice Central Networks, Inc. is "a separate company as well." Ex. HHH – DeVitre Tr. 17:1-2. | |
| **D15.** At all relevant times, AMG operated its syndication business through ES.<br><br>*Evidence*:<br>Ex. J – Karras Tr. 36:9-37:11; | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. O(6) – ESN0041498(508) (AMH 2017/18 Consolidated Financial Statements). | |
| D16. At all relevant times, ES licensed certain of AMG's syndicated programming to ESN for broadcast on ESN's Lifestyle Networks.<br><br>*Evidence*:<br>Ex. J – Karras Tr. 39:24-40:14; 66:21-25; 83:7-11;<br><br>Ex. O(17) (ESN financials 2018-2021);<br><br>Ex. O(6) – ESN0041498(511) (AMH 2017/18 Consolidated Financial Statements) | Undisputed. |
| D17. At all relevant times, ES licensed certain of AMG's syndicated properties to Weather Group for broadcast on TWC.<br><br>*Evidence*:<br>Ex. J – Karras Tr. 39:24-41:1; 66:21-67:4; 83:7-11 (indicated that the ESN financial statements show intercompany payments for use of ES's syndicated programming);<br><br>Ex. O(18) (Weather Group financials 2018-2021, line item for "Brand License Fees" refers to "intercompany payments" made from Weather Group to CF Entertainment "for use of the syndicated content") | Disputed. ES licensed programming to Weather Group and other entities within Allen Media Group.<br><br>*Evidence:*<br>AOE Ex. Y (5/15/23 Karras Tr.) at 174:16-24, 220:5-11;<br><br>AOE Ex. J (11/15/22 Karras Tr.) at 37:3-11, 39:24-40:13;<br><br>AOE Ex. H (Kelly Tr.) at 32:9-22, 76:2-11;<br><br>AOE Ex. F (Galatt Tr.) at 92:4-19. |
| D17. Moving Party's Response.<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support the claim that the fact asserted by McDonald's in D17 (or the evidence cited in support) is, in fact, disputed. | |
| D18. Byron Allen did not authorize an assignment of claims between ES and ESN.<br><br>*Evidence*: Ex. HHH - DeVitre Tr 68:6-68:11; 53:5-9; 40:5-14; 43:6-44:6; 50:23-51:4; 41:4-42:14 | Disputed. Mr. Allen authorized the assignment of claims.<br><br>*Evidence:*<br>AOE Ex. DDD (Declaration of Mark DeVitre) at Ex. 1 (Assignment of Claims Agreement) |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. HHH (DeVitre Tr.) at 37:3-13, 38:22 – 39:10, 41:4-24, 42:2-14, 49:16 – 50:22. |

D18. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' cited assignment of claims does not support Plaintiffs' assertion. The referenced written assignment was supposedly executed on May 15, 2023, two years after this litigation was filed. *See* Ex. DDD (Declaration of Mark DeVitre) at ¶2. Further, Plaintiffs' cited deposition testimony of Mark DeVitre does not support Plaintiffs' assertion that "Mr. Allen authorized the assignment of claims," but instead establishes that Allen *did not, in fact,* "authorize[] the assignment of claims." *See* Ex. HHH – DeVitre Tr. 37:3-13 (testifying only that "ES Networks represents the claims of Entertainment Studios"); 38:22-39:10 (testifying "I do not recall any overt statement made to that effect. Only that Entertainment Studios's claims are going to get litigated in this case."); 21:4-24 (testifying to his belief that the supposed assignment of claims "was *implicit* at the outset that ESN was representing all of the claims of Entertainment Studios" and further "that was always the ***assumption*** at the outset of – in other words, that there wouldn't be other Entertainment Studios claims against McDonald's through some other Entertainment Studios entity. It would all – it was being represented by this lawsuit.") (emphasis added); 42:2-14 (the assignment of claims "was always an ***assumption***" based only "[o]n Byron's instructions that Entertainment Studios should sue McDonald's and that all of our claims should be brought to bear here.") (emphasis added); 49:16-50:22 (testifying that though Allen gave the "spoken intention" that "Entertainment Studios and Byron's brands" were going to sue McDonald's, "the technicalities of who would be the plaintiff in that lawsuit was not a conversation" and further that "there was never a conversation where Mr. Allen said I want this company and this company, CF Entertainment and Justice Networks, to assign its claims to this third company, Entertainment Studios Networks" because "[h]e wouldn't have to. He just told us that he wants the claims in this lawsuit.").

| D19. An assignment of claims between ES and ESN could only occur if Byron Allen authorized such an assignment.<br><br>*Evidence*: Ex. HHH - DeVitre Tr 68:6-68:11; 53:5-9; 40:5-14; 43:6-44:6; 50:23-51:4 | Undisputed. |
| D20. Independent McDonald's restaurant owner-operators fund McDonald's USA, LLC's ("McDonald's") national annual advertising budget through a voluntary cooperative called the Operator's National Advertising Fund, or OPNAD.<br><br>*Evidence*:<br>Ex. A - Mason Tr. 113:5-24 | Undisputed. |
| D21. OPNAD is an independent, separate corporate entity from McDonald's USA, LLC.<br><br>*Evidence*: | Objection. The evidence submitted is speculative and lacks foundation. Fed. R. Evid. 602. Disputed. McDonald's has not presented |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. A - Mason Tr. 13:11-15;<br><br>Ex. D - Carroll Tr. 20:19-20 | competent evidence to established this fact. The evidence cited in support by McDonald's does not establish this fact. There is no evidence that OPNAD is a "corporate entity." |

D21. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. OPNAD is an Illinois not-for-profit corporation. *See* https://apps.ilsos.gov/businessentitysearch/ (file number 47235111):



| D22. OPNAD has the sole authority to make final approval over McDonald's annual national advertising budget, advertising plan, and advertising investment strategy.<br><br>*Evidence*:<br>Ex. M - Burrell 30(b)(6) Tr. 24:18-22 ("once that budget is approved by McDonald's corporate, it has to go to OPNAD approval");<br><br>Ex. D - Carroll Tr. 20:13-22:11 ("everything is governed by the marketing co-op, which is called OPNAD"; 44:11-17 ("the full body of OPNAD must approve" the proposed media plans") | Disputed. OPNAD acts on recommendations and approvals from McDonald's, and McDonald's witnesses admitted that OPNAD does not contradict advertising opportunities recommended by McDonald's.<br><br>*Evidence*:<br>AOE Ex. D (Carroll Tr.) at 68:14-23; |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. A (Mason Tr.) at 135:14-22. |
| **D22. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. The cited testimony does not support that "McDonald's witnesses admitted that OPNAD does not contradict advertising opportunities recommended by McDonald's." *See* Ex. D – Carroll Tr. at 68:14-23 (testifying only that she could not then recall when OPNAD did not approve an endorsement from the OPNAD Media and Budget Subcommittee "off the top of my head."); Ex. A – Mason Tr. at 135:14-136:3 (testifying that she was "not aware" of an instance where OPNAD disagreed with video spending approved by McDonald's, but further testifying that "as I said, I don't attend every committee budget approval meeting. So there could be a time that a recommendation did not get approved by the operators – because there are times that do not – things don't get approved and we go back and rework the plan…"). | |
| **D23.** McDonald's internal media team hires outside advertising agencies to assist in developing and executing OPNAD's national advertising strategy, which includes media planning, determining media mixes, developing and implementing an investment strategy, and negotiating with potential media partners to purchase national advertising on those partners' media properties.<br><br>*Evidence*:<br>Ex. D - Carroll Tr. at 21:5-12;<br><br>Ex. A - Mason Tr. 133:25-134:21;<br><br>Ex. P(2) - McD_ESN00023162(176-183) (5/4/2021 OMD/McDonald's Statement of Work) | Undisputed. |
| **D24.** At all relevant times, McDonald's engaged advertising agencies OMD Worldwide Holdings, Inc. ("OMD") and Burrell Communications Group, LLC ("Burrell").<br><br>*Evidence*:<br>Ex. P(3) - McD_ESN00023113 (Burrell/McDonald's Amended and Restated Advertising Agency Agreement);<br><br>Ex. P(2) - McD_ESN00023162 (5/4/2021 OMD/McDonald's Statement of Work);<br><br>Ex. P(4) - McD_ESN00023295 (9/4/2020 OMD/McDonald's Statement of Work);<br><br>Ex. P(5) - McD_ESN00023210 (OMD/McDonald's Second Amended and Restated Global Master Media Services Agreement) | Disputed.  McDonald's fired OMD in 2021 and hired Starcom to replace it as McDonald's general market agency.<br><br>*Evidence:*<br>AOE Ex. L (Calabrese Tr.) at 11:2-12:1;<br><br>AOE Ex. B (Hamilton Tr.) at 61:15-62:15, 72:9-12. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| **D24. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. McDonald's replaced OMD with Starcom at the end of 2021/beginning of 2022, after this litigation was filed. *See* Ex. B – Hamilton Tr. 72:9-12. | |
| **D25.** McDonald's advertising agencies – including OMD and Burrell – work together as part of an interagency team, or "IAT," to make recommendations about and align on an overall media planning and execution strategy on behalf of McDonald's.<br><br>*Evidence*:<br>Ex. A - Mason Tr. 134:3-21 (media agencies work as "an interagency team" to "bring back a collective POV on how to spend" OPNAD advertising money); 137:16-140:3 (the interagency team will submit "a combined deck" which has "all the agencies information…");<br><br>Ex. M - Burrell 30(b)(6) Tr. 30:13 – 31:3 (explaining that for individual campaigns, McDonald's media team will liaise with individual teams and the interagency team); 44:22-45:13 (Burrell works with OMD/Starcom, the general market agency, "to report to McDonald's its spending with Black-owned media");<br><br>Ex. O(19) - Burrell_0008646 (presentation combining recommendations for all market segments);<br><br>Ex. P(2) - McD_ESN00023162(176-183) (5/4/2021 OMD/McDonald's Statement of Work, noting OMD's duties includes providing "strategic oversight of the interagency model" and serving "as media IAT lead/connection point for multicultural planning");<br><br>Ex. S(1) (Lynch Expert Report ¶¶ 52 – 54) (explaining that "[g]eneral and multicultural agencies…work together, in a complementary fashion, as part of one cohesive strategy by the advertiser to reach as many potential consumers as efficiently as possible.") | Disputed.  McDonald's has not presented sufficient evidence to establish this fact. Further, Donna Hodge of Burrell admitted that she has no role in evaluating general market content.  Darren Galatt of Entertainment Studios testified that McDonald's consistently rebuffed Entertainment Studios' annual pleas to pitch McDonald's general market agency.<br><br>*Evidence:*<br>AOE Ex. M (Hodge Tr.) at 12:1-8, 53:4-54:24.<br><br>AOE Ex. F (Darren Galatt Depo.) at 179:5-21, 184:13-185:6;<br><br>AOE Ex. BBB(2) (ESN0025450);<br><br>AOE Ex. BBB(3) (ESN0025826);<br><br>AOE Ex. BBB(4) (ESN0033683);<br><br>AOE Ex. BBB(5) (ESN0033686);<br><br>AOE Ex. BBB(6) (ESN0033816). |
| **D25. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D25 (or the evidence cited in support) is, in fact, disputed. *See also* Ex. M – Burrell 30(b)(6) Tr. 125:16-126 (Hodge testifying to the general market media criteria used by McDonald's and how TWC "would not align with the [McDonald's] audience, target audience."). | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D26. At all relevant times, on behalf of McDonald's, OMD was responsible for, among other things, executing video (linear TV and online video (or "OLV")), audio, programmatic, paid social and paid search media in accordance with set principles and operating processes for the General Consumer Market ("GCM") and the Hispanic Consumer Market ("HCM"), and additionally for purchasing and managing the Asian Consumer Market ("ACM") and African-American Consumer Market ("AACM") media "in specific instances as agreed upon with McDonald's and IAT partners." <br><br> *Evidence*: <br> Ex. P(2) - McD_ESN00023162(176) (5/4/2021) OMD/McDonald's Statement of Work) | Objection. Lacks foundation and inadmissible hearsay. Fed. R. Evid. 602, 802. Disputed. McDonald's IAT did not evaluate Entertainment Studios' content. <br><br> *Evidence:* <br> AOE Ex. M (Hodge Tr.) at 12:1-8, 53:4-54:24. <br><br> AOE Ex. F (Darren Galatt Depo.) at 179:5-21, 184:13-185:6; <br><br> AOE Ex. L (Calabrese Tr.) at 66:13-17. |

D26. Moving Party's Response.

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D26 (or the evidence cited in support) is, in fact, disputed. Further, Plaintiffs' assertion that "McDonald's IAT did not evaluate Entertainment Studios' content" is not supported by the referenced testimony and contradicted by record evidence. *See, e.g.*, Ex. U - Innes Declaration; Ex. T - Geraci Declaration; Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| OMD from analyzing that as a property and making a recommendation. It is more would negotiate with that vendor."); Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's; Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); Ex. O(21) - ESN0022535 (December 2019 meeting); O(38) - ESN0016403 (March 2020) (presented Weather and ES properties to OMD); Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) | |
| D27. At all relevant times, on behalf of McDonald's, Burrell was responsible for, among other things, planning McDonald's media buys that are targeted at the AACM.<br><br>*Evidence*:<br>Ex. E - Flatley Tr. 15:24-16:14; 55:8-16;<br><br>Ex. P(3) - McD_ESN00023113 (Burrell/McDonald's Amended and Restated Advertising Agency Agreement);<br><br>Ex. P(2) - McD_ESN00023162(176) (5/4/2021 OMD/McDonald's Statement of Work);<br><br>Ex. A - Mason Tr. 112:3-17; | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. S(1) (Lynch Expert Report ¶ 54) | |
| D28. McDonald's advertising agencies use a standardized evaluation process to determine whether potential media partners should be recommended for and included in McDonald's annual national media plan.<br><br>*Evidence*:<br>Ex. P(6) - McD_ESN00021595(21599) (2021 cable advertising allocations including objective rating);<br><br>Ex. O(19) - Burrell_0008646(8675) (2021-2022 Upfront Recommendation explaining "approach to allocations," which considered the following five nondiscriminatory factors: effectiveness, reach/frequency, cost, service & reliability, and diverse ownership);<br><br>Ex. L - OMD 30(b)(6) Tr. 17:4-18:9 (explaining use of same five nondiscriminatory factors);<br><br>Ex. M - Burrell 30(b)(6) Tr. 70:25-71:23; 103:21-104:14; 105:18-24 (same);<br><br>Ex. R(1) (Hanssens Expert Report ¶31) (explaining use of objective criteria in buying advertising);<br><br>Ex. S(1) (Lynch Expert Report ¶35(ii)) (same) | Disputed. McDonald's advertising spending decisions reveal that it relies on qualitative or "human factors" in making purchasing decisions.<br><br>*Evidence:*<br>AOE Ex. B (Hamilton Tr.) at 114:20-117:9,<br><br>AOE Ex. FFF (Nunan Decl.) at ¶ 29 & Ex. 2. |
| D28. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D28 (or the evidence cited in support) is, in fact, disputed. *See cited* Ex. B – Hamilton Tr. 114:20-117:9 (no discussion of "qualitative or 'human factors'" but instead discussing two-day media partner summit hosted by McDonald's fall 2020 and noting that Entertainment Studios was "on [McDonald's] radar that they could deliver some relevant audience or some relevant entertainment property"). | |
| D29. McDonald's buying requirements include assessing the potential reach of an advertisement, as measured by Nielsen ratings; audience demographic skew; cost of advertising; and projected return on investment.<br><br>*Evidence*:<br>Ex. P(6) - McD_ESN00021595(21599) (2021 cable advertising allocations including scorecard rating);<br><br>Ex. O(19) - Burrell_0008646(8675) (2021-2022 Upfront | Objection: vague, conclusory and compound. Disputed. McDonald's does not have hard and fast "requirements." McDonald's is relying on hearsay documents without competent testimony from witnesses with personal knowledge of what these "requirements" are. Fed. R. Evid. 802. McDonald's |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Recommendation explaining "approach to allocations," which considered the following five nondiscriminatory factors: effectiveness, reach/frequency, cost, service & reliability, and diverse ownership); | advertises on content that is not Nielsen rated. |
| Ex. L - OMD 30(b)(6) Tr. 17:4-18:9 (explaining use of same five nondiscriminatory factors); | *Evidence:* AOE Ex. FFF (Nunan Decl.) at ¶¶ 16-30 & Ex. 2 (Nunan Report). |
| Ex. M - Burrell 30(b)(6) Tr. 70:25-71:23; 103:21-104:14; 105:18-24 (same); | AOE Ex. B (Hamilton Depo.) at 104:13-16. |
| Ex. R(1) (Hanssens Expert Report ¶31) (explaining use of objective criteria in buying advertising); | |
| Ex. S(1) (Lynch Expert Report ¶35(ii)) (same) | |

D29. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D29 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertion that "McDonald's advertises on content that is not Nielsen rated" is unsupported by record evidence. Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like McDonald's regular media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in a sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."). *See also* Ex. A – Mason Tr. 180:8-11 (testifying that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies.)

| D30. The process whereby the IAT evaluates potential media partners is typically performed annually, and can either be done on a broadcast year basis (*e.g.*, Q4 Year 1 through Q3, Year 2) or on a calendar year basis. | Objection: vague, conclusory and compound. Disputed. The operation of this IAT is a disputed issue. McDonald's IAT did not evaluate Entertainment Studios' content. |
| *Evidence*: Ex. L - OMD 30(b)(6) Tr. 17:4-18:9 (explaining that advertising objectives were developed on annual basis, and then media would run throughout the "broadcast year," which was Q4-Q3 of the following year); 28:22-29:2 (national media is bought in a broadcast year); | Evidence: AOE Ex. M (Hodge Tr.) at 12:1-8, 53:4-54:24. |
| Ex. F - Galatt Tr. 78:16-79:6 (upfront allocations occur annually); | AOE Ex. F (Darren Galatt Depo.) at 179:5-21, 184:13-185:6; |
| Ex. O(19) - Burrell_0008646(8669) (2021/22 Upfront Recommendations for broadcast year 2021/22) | AOE Ex. L (Calabrese Tr.) at 66:13-17. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

D30. Moving Party's Response.

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D30 (or the evidence cited in support) is, in fact, disputed. Further, Plaintiffs' assertion that "McDonald's IAT did not evaluate Entertainment Studios' content" is not supported by the referenced testimony and contradicted by record evidence. *See, e.g.*, Ex. U - Innes Declaration; Ex. T - Geraci Declaration; Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); Ex. O(21) - ESN0022535 (December 2019 meeting); O(38) - ESN00016403 (March 2020) (presented Weather and ES properties to OMD); Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) -

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic than McDonald's younger A18-49 demographic); Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021]; Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) | |
| D31. As a result of the annual media partner evaluation process, it is not unusual that a brand advertiser like McDonald's will decide to advertise with a particular media company in some years, but not others.<br><br>*Evidence*:<br>Ex. I - Allen Tr. 169:16-170:10 ("that's the ebb and flow of negotiations…it's a negotiation tactic. So it wouldn't surprise me that some years they buy them and some years they don't, because that's just the ebb and flow of the negotiation of, hey, guys, you need to pump the brakes, you're too aggressive in your pricing, you're asking for too much, and we're walking away from this negotiation. That happens all the time.");<br><br>Ex. O(20) - ESN0003628(3631) (AMG Ad upfront strategy deck discussing yearly increases and flat annual budgets, and that "marketers…continually moving dollars to more accountable media");<br><br>Ex. F - Galatt Tr. 101:8-13 ("I don't think McDonald's is doing anything out of the ordinary of what's being done in terms of shifting and moving. It's part of the industry and what's happened over the last number of years."); 159:19-160:4 (decrease in syndication spending from 2013 to 2014 "could be any number of things. Advertisers shifting, moving. You know, that created that decrease. I would say that that's usually what drives it. It's just advertisers going up, down.");<br><br>Ex. S(2) (Lynch Rebuttal Report ¶21) (noting that there is "nothing unusual or unreasonable" about McDonald's making determinations that media properties should be included on its media plans in some years but not others) | Objection: vague, conclusory and compound. Disputed. There is no showing of what McDonald's means by "not unusual" or how this is "material" to any issue presented in McDonald's summary judgment motion. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D31. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence and does not support their claim that the fact asserted by McDonald's in D31 (or the evidence cited in support) is, in fact, disputed. | |
| D32. Annual television media purchases are typically made on a guaranteed basis, meaning that the media partner is "guaranteeing" that the contracted-for audience will be delivered as agreed by the parties, as measured by Nielsen, within a certain time period.<br><br>*Evidence*:<br>Ex. L - OMD 30(b)(6) Tr. 97:7-98:3;<br><br>Ex. F - Galatt Tr. 32:14-2;<br><br>Ex. I - Allen Tr. 130:22-131:33;<br><br>Ex. R(1) (Hanssens Expert Report ¶42);<br><br>Ex. S(1) (Lynch Expert Report ¶41) | Undisputed. |
| D33. In accordance with the standard industry practice, McDonald's requires audience delivery guarantees of all its media partners, as measured by Nielsen, regardless of the race of the owner of the media partner.<br><br>*Evidence*:<br>Ex. L - OMD 30(b)(6) Tr. 97:18-24 (explaining that McDonald's requirement of a Nielsen ratings guarantee is "the norm" in the advertising industry);<br><br>Ex. D - Carroll Tr. 129:24-130:12 (explaining McDonald's required guarantees for all audience segments); 132:20-22 ("it's industry standard practice to get a guarantee against your target audience, no matter what that target audience is.");<br><br>Ex. B - Hamilton Tr. 104:23-25 (explaining that for McDonald's digital buys, "we are able to guarantee our impressions and the delivery of those impressions by audience segment.");<br><br>Ex. C - Feldman Tr. 155:1-9 (explaining McDonald's would have a ratings guarantee with the syndicated Stellar Awards show); 155:20-156:7 (same);<br><br>Ex. O(19) - Burrell_0008646(8648, 8669-70) (2021-2022 Upfront Recommendation discussing strategic objectives, which included "ensuring 18-49 demo guarantee in linear" and | Disputed.  The issue of "standard industry practice" requires expert testimony but the evidence cited by McDonald's is self-serving testimony and hearsay documents.  Fed. R. Evid. 802.  McDonald's also does not require ratings guarantees as it advertises on networks that are not Nielsen rated.<br><br>Evidence:<br>AOE Ex. I (Allen Tr.) at 130:22 – 131:3 (McDonald's does not require guarantees for all buys).<br><br>AOE Ex. B (Hamilton Depo.) at 104:13-16. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| ensuring "[m]echanisms for meeting guarantees agrees in deal terms"));<br><br>*See also* Ex. I - Allen Tr. 130: 22-131:3 ("most of the business is to be – is to guarantee"); 179:14-22 (testifying that McDonald's required a guarantee on the AACM 18-49 demo "from all their media partners") | |

D33. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D33 (or the evidence cited in support) is, in fact, disputed. *See cited* Ex. I (Allen Tr.) at 130:22 – 131:3 (admitting McDonald's regularly requires guarantees, which is "what most of the business" does). *See also* Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like McDonald's regular media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in a sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."). *See also* Ex. A – Mason Tr. 180:8-11 (testifying that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies).

| D34. Large, national advertisers (like McDonald's) who buy advertising placements from broadcasters and networks like Plaintiffs only accept Nielsen ratings as proof of performance.<br><br>*Evidence*:<br>Ex. O(5) at ¶6 (Declaration of Mark DeVitre);<br><br>Ex. R(1) (Hanssens Expert Report ¶43 n.93) | Undisputed. |
| D35. Pricing paid for advertising as expressed by the cost-per-thousand method, or "CPM," cannot be calculated without Nielsen ratings.<br><br>*Evidence*:<br>Ex. H - Kelly Tr. 90:12-14 ("Q: Can you calculate the CPM without ratings or how would you do that? A: You can't.") | Disputed. CPM can be calculated with ratings from a service other than Nielsen. Nielsen ratings are not the only ratings that can be used to calculate CPM.<br><br>*Evidence:*<br>AOE Ex. H (Kelly Tr.) at 90:12-14;<br><br>AOE Ex. I (Allen Tr.) at 114:20 – 115:17. |

D35. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs'

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| response and cited testimony does not support their claim that the fact asserted by McDonald's in D35 (or the evidence cited in support) is, in fact, disputed. *See cited* Ex. I – Allen Tr. at 114:20 – 115:17 (testifying only that "the response to 1-800" commercials shows that there is some viewership, but not discussing CPM calculations) | |
| D36. National advertisers like McDonald's use Nielsen ratings to, among other things, evaluate how a particular media property or program indexes with certain audiences, as opposed to which audience a particular media property or program "targets." | Objection:  calls for speculation and lacks foundation as to what other national advertisers do. Undisputed in so far as McDonald's claims that it uses ratings data to determine what demographic audience watched television. |
| *Evidence*: Ex. K - Restivo Tr. 45:20-46:7; Ex. Q(1) (Blasius Expert Report ¶47); Ex. Q(2) (Blasius Expert Rebuttal Report ¶22) | |
| D37. As part of its media strategy to have its paid television advertisements reach a younger audience, during the relevant timeframe, McDonald's required its linear GCM media partners to guarantee the delivery of an A18-49 (adults ages 18-49) audience demographic. | Disputed.  There is no evidence that this was a requirement of each and every "linear GCM media partner" during the relevant timeframe. McDonald's is relying on self-serving hearsay documents. Fed. R. Evid. 802. |
| *Evidence*: Ex. L - OMD 30(b)(6) Tr. 77:11-18 (McDonald's target demographic "was always adults 18 to 49 and Gen Z, which would be a subset of 18 to 49 but on the younger side of that"); Ex. I - Allen Tr. 127:22-128:4 (McDonald's requiring delivery of adults 18-49 "sounds right to me"); Ex. O(19) - Burrell_0008646(8648) (2021-2022 Upfront Recommendation noting the "shift[ of] more dollars into digital video and ensuring 18-49 demo guarantee in linear"); Ex. P(52) - McD_ESN00008188(8208) (2019 Partner Recommendation slide deck noting selection criteria including "audiences that align with targets on Blueprints and A1849 guarantees"); Ex. R(1) (Hanssens Expert Report ¶42) (noting McDonald's buying requirements and guarantees on the adults 18 to 49 demo) | |
| D37. Moving Party's Response Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence and does not support their claim that the fact asserted by | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| McDonald's in D37 (or the evidence cited in support) is, in fact, disputed. | |
| D38. AMG advertising sales representatives positioned the ESN Lifestyle Networks with potential advertisers as networks that were able to reach audience demographics that were older than A18-49.<br><br>*Evidence*:<br>Ex. H - Kelly Tr. 76:22-80:23 (explaining the "positioning" of the ESN Lifestyle Networks for demographics that were older than A18-49; for example, for Justice Central.TV, ESN's target demo was adults/ 35+, indicating that ESN did not "want us to guarantee 18 to 49 or 25-54.");<br><br>Ex. O(21) - ESN0022535 (ESN Lifestyle Networks presentation deck noting targeted demo for each network for adults 35+) | Disputed.  ESN was "flexible" with how it marketed the networks.<br><br><br>*Evidence:*<br>AOE Ex. H (Kelly Tr.) at 76:22 – 77:15. |
| D38. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D38 (or the evidence cited in support) is, in fact, disputed. | |
| D39. As part of its strategy to have its paid television advertisements reach a younger audience, during the relevant timeframe, McDonald's also required its AACM media partners to guarantee the delivery of the AA18-49 (African-American adults ages 18-49).<br><br>*Evidence*:<br>Ex. D - Carroll Tr. 129:24-130:12;<br><br>Ex. I - Allen Tr. 179:14-22;<br><br>Ex. O(11) - ESN0014847(849) (2013 ES/Burrell contract);<br><br>Ex. P(1) - McD_ESN00000698(699) (2014 ES/Burrell contract);<br><br>Ex. O(12) - ESN0029772(773) (2015 ES/Burrell contract);<br><br>Ex. O(13) - ESN032794(798) (2016 ES/Burrell contract);<br><br>Ex. P(7) - McD_ESN00006422(451-52) (Q1 2018 Post Buy Analysis);<br><br>See also Ex. R(1) (Hanssens Expert Report ¶42) | Undisputed. |
| D40. McDonald's pays a premium to reach an AA18-49 | Disputed.  The deposition |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| audience. <br><br> *Evidence*: <br> Ex. I - Allen Tr. 230:3-231:19; <br><br> Ex. P(8) - McD_ESN00000079(80) ("delivery of a demographic this slim and volatile comes with a premium.") | testimony cited by McDonald's does not support the asserted fact. And the document cited is inadmissible hearsay. Fed. R. Evid. 802. |
| **D40. Moving Party's Response** <br><br> Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by McDonald's in D40 (or the evidence cited in support) is, in fact, disputed. *See, e.g.,* Ex. I - Allen Tr. 230:3-231:19 (discussing that AA1849 demo guarantee CPM was $39.75 for ESN's *Weekly Network*, but the same network guaranteeing on a A1849 demo was only $12.01, and admitting that for reaching an AACM A18-49 audience, "we project it to pay a premium, because it is tough to reach" and "we said, okay, then let's go ahead and put a premium on it."). | |
| D41. If a media property is not rated by Nielsen, and a prospective advertiser requires its advertising partners to guarantee delivery of a certain audience size and/or demographic as measured by Nielsen, then that advertiser will not advertise on that media property. <br><br> *Evidence*: <br> Ex. F - Galatt Tr. 88:11-23 (confirming that if an advertiser is buying a demographic guarantee, ratings would have to be associated with a purchased media property); 74:25-75:12 ("Q: Well if an advertiser wants to know how many people are watching a given show and it's not Nielsen rated, how are you going to let an advertiser know how many people have seen their ad? A: You wouldn't. Q: You have no way to tell them that; correct? A. No. That is the currency."); 217:9-17 ("Q: An advertiser might decline to invest in any particular property, particularly when they're seeking a guarantee when there's no ratings data because there's no way to verify how many people actually watched the programming, correct? A: Sure."); <br><br> Ex. G - Bekkedahl Tr. 51:10-22 (testifying that an advertiser may decide to not invest with a particular media partner who cannot deliver on a requested audience demographic); <br><br> Ex. I - Allen Tr. 128:14-23 (Nielsen ratings "is what the majority of the industry uses"); 131:4-20 ("in my 61 years on this planet, and…more than 30 years in..this business…I have not found an advertiser to accept another measurement service….for television, Nielsen is the Holy Grail."); 131:24-132:3 (Nielsen measurement is important because is the only measurement advertisers will accept to prove their performance); | Objection: vague, conclusory, lacks foundation, compound and calls for expert testimony. Disputed. This is not a fact. It's an incomplete hypothetical. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. H - Kelly Tr. 18:17-19 (being Nielsen rated "means an advertiser will support you because you have ratings."); 42:19-43:5 ("not unusual" for an advertiser to pass on a media partner that is not yet rated); | |
| Ex. O(5) at ¶¶6, 22 (Declaration of Mark DeVitre, explaining the importance of being Nielsen rated from the perspective of an advertiser); | |
| Ex. O(22) - Burrell_0001894 (Burrell email discussing partners considered but not purchased without ratings) | |
| D41. Moving Party's Response | |
| Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by McDonald's in D41 (or the evidence cited in support) is, in fact, disputed. | |
| D42. OPNAD's national advertising must adhere to buying guidelines and restrictions, which include a "no news" restriction.<br><br>*Evidence*:<br>Ex. L - OMD 30(b)(6) Tr. 47:6-11 ("McDonald's has a 'no news' restriction"); 98:4-20 (same);<br><br>Ex. A - Mason Tr. 141:15-16 (for national paid media, "we don't buy news");<br><br>Ex. P(9) - McD_ESN00016876 ("media environment restrictions" tab noting "McDonald's advertising cannot be in the same environment as - News Content");<br><br>Ex. O(23) - Burrell_0006591(6592) (Q1 2018 Post Buy Analysis discussing brand safety metrics);<br><br>Ex. R(1) (Hanssens Expert Report ¶¶47-48) ("no news" restriction applies to product advertising funded by OPNAD);<br><br>Ex. S(1) (Lynch Expert Report ¶27) ("family-oriented brands like Disney and McDonald's generally will not advertise on news channels…") | Disputed.  OPNAD does not advertise nationally. McDonald's advertises nationally.  McDonald's claims that it has a "no news" restriction, but McDonald's advertised on CNN, HLN, MSNBC and Fox News during the relevant period.<br><br>*Evidence:*<br>AOE Ex. KK (McD_ESN00005702 (reflecting that McDonald's spent on CNN, MSNBC, and HLN in 2018);<br><br>AOE Ex. NN (McD_ESN00005799 (same);<br><br>AOE Ex. OO (McD_ESN00005803) (same);<br><br>AOE Ex. PP (McD_ESN0005986 (same);<br><br>AOE Ex. QQ (McD_ESN00006002) (same);<br><br>AOE Ex. FFF (Nunan Decl.) at ¶¶20-23 Ex. 2 (Nunan |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Report). |
| D42. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Non-party McDonald's Corporation, through its Communications group, occasionally funds purchases of separate, non-product, corporate-reputation advertising campaigns out of its corporate budget, which is separate from the national advertising budget approved by OPNAD. *See* Ex. A - Mason Tr. 116:10-22; 141:3- 142:6; Ex. D - Carroll Tr. 89:6-90:6; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. C - Feldman Tr. 84:4-15; 84:23-86:4. These corporate-reputation campaigns occasionally placed non-product, non-OPNAD funded advertisements on CNN, HLN, and MSNBC as part of targeted, corporately-funded, brand image campaigns designed to reach specific audiences while avoiding controversial content. *See* Ex. P(31) - McD_ESN00011302 (considering brand safety concerns re: running across cable news even for corporate campaign); Ex. L - OMD 30(b)(6) Tr. 66:5-67:2; Ex. C - Feldman Tr. 83:9-84:14; 84:23-85:16; 85:21-86:4; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. P(27) - McD_ESN00012918 (explanation for 2020 "good employer" corporate campaign); Ex. P(28) - McD_ESN00010102 (2020 campaign to reach "news-engaged opinion elites"); Ex. P(29) - McD_ESN00012936 (explanation for corporate scatter campaign); Ex. P(30) - McD_ESN00010092(10094) (2020 campaign to reach "news-engaged opinion elites"); Ex. P(32) - McD_ESN00006421 (2018 corporate campaign targeting "Opinion Influencers"); Ex. P(33) - McD_ESN00005085 (cable news networks index high for "Opinion Leaders"); Ex. P(34) - McD_ESN00004516(4524) (2016 Brand Reputation strategy). | |
| D43. As part of their respective agency engagements, McDonald's advertising agencies, including Burrell and OMD, entered into contracts with various media companies to purchase television advertising on McDonald's behalf.<br><br>*Evidence*:<br>Ex. O(11) - ESN0014847 (2013 upfront syndication contract);<br><br>Ex. O(8) - ESN0023761 (ES 2014 Syndication RFP for McDonald's);<br><br>Ex. P(1) - McD_ESN00000698 (2014 ES syndication Contracts);<br><br>Ex. O(12) - ESN0029772 (2015 upfront contract for ES Daily Network);<br><br>Ex. O(9) - ESN0023761 (ES 2015 Syndication RFP for McDonald's);<br><br>Ex. O(10) - ESN0012605 (ES 2016 Syndication RFP for McDonald's);<br><br>Ex. O(13) - ESN0032794 (2016 ES/McDonald's contract);<br><br>Ex. O(14) - ESN0024645 (2017 upfront contract) | Undisputed. |
| D44. Notwithstanding McDonald's preference that it not have | Objection: vague, conclusory, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| multiple agencies negotiating advertising contracts with the same media partner, all agencies, as members of the IAT, can and in fact do consider and evaluate any potential media partner to determine whether or not that particular media partner's offerings can effectively reach the audience segment that agency has primary responsibility for.<br><br>*Evidence*:<br>Ex. A - Mason Tr. 127:10-12 ("that is not an accurate statement. We are not saying that Burrell is the only agency to deal with Byron Allen.");<br><br>Ex. C - Feldman Tr. 179:9-20 ("To that point all of our investment with Entertainment Studios had been through Burrell so they would have been point to do that. Again, as I said before, it would not preclude OMD from analyzing that as a property and making a recommendation. It is more of who would negotiate with that vendor.");<br><br>Ex. O(25) - ESN0018191 – 4.14.21 tab (indicating OMD placing a buy with AMG);<br><br>Ex. P(10) - McD_ESN00018473 (AACM - AA owned 2018-2020 tab, reflecting McDonald's order of AMG property via OMD);<br><br>Ex. P(11) - McD_ESN00012884 (OMD and Burrell collaborating on buying black owned media offerings);<br><br>Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (explaining that OMD and Burrell worked together to provide McDonald's with breakdowns of its spending levels with Black-owned media); 53:4-54:24 (testifying that OMD and later Starcom were "responsible for evaluating" the ESN Lifestyle Networks);<br><br>*See also* Ex. N - Bibbens Tr. 85:4-8 (testifying that Black-owned Reach TV did a $200,000 deal with McDonald's through Starcom) | compound and lacks foundation. Disputed. McDonald's evidence does not support the proposition and the operations of this IAT as to Plaintiffs' properties is disputed. McDonald's IAT did not evaluate Entertainment Studios' content.<br><br>*Evidence:*<br>AOE Ex. M (Hodge Tr.) at 12:1-8, 53:4-54:24.<br><br>AOE Ex. F (Darren Galatt Depo.) at 179:5-21, 184:13-185:6;<br><br>AOE Ex. L (Calabrese Tr.) at 66:13-17. |

D44. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D44 (or the evidence cited in support) is, in fact, disputed. Further, Plaintiffs' assertion that "McDonald's IAT did not evaluate Entertainment Studios' content" is not supported by the referenced testimony and contradicted by record evidence. *See, e.g.*, Ex. U - Innes Declaration; Ex. T - Geraci Declaration; Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); Ex. O(21) - ESN0022535 (December 2019 meeting); O(38) - ESN00016403 (March 2020) (presented Weather and ES properties to OMD); Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); Ex. F - Galati Tr. 144:13-21 (OMD bought theGrio and Local Now); Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021)

| D45. For example, in 2018-2019, OMD, on behalf of McDonald's, negotiated and paid to place advertisements on *The Steve Harvey Show*, which was owned by Related Media. | Objection: calls for speculation and lacks foundation; inadmissible hearsay. Fed. R. Evid. 602, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*:<br>Ex. P(12) - McD_ESN00000660 (OMD buying Related Media);<br><br>Ex. P(10) - McD_ESN00018473 (AACM - AA owned 2018-2020 tab showing OMD purchase of Black-owned media);<br><br>Ex. P(11) - McD_ESN00012884 (OMD and Burrell collaborating on buying black owned media offerings) | 802. Disputed. The documents submitted are hearsay and lack trustworthiness.<br><br>Evidence:<br><br>AOE Ex. A (Maston Tr.) at 204:25-206:12 (confirming she does not know the ownership of Revolt, which is listed on the same spreadsheet as Related Media as African American-owned);<br><br>AOE Ex. B (Hamilton Tr.) at 15:21-16:3, 22:16-25, 23:20-24:12, 24:24-25:7, 54:4-18 (confirming she does not know or was wrong about the purported African American owners of Revolt, Aspire, and Urban One, all listed on the same spreadsheet as Related media);<br><br>AOE Ex. C (Feldman Tr. at 118:23-119:12 (confirming she does not any details regarding the ownership of Revolt). |
| D45. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D45 (or the evidence cited in support) is, in fact, disputed. | |
| D46. In 2018-2019, Related Media was at least 51% owned, operated and controlled by one or more people who are African-American.<br><br>*Evidence*:<br>Ex. P(12) - McD_ESN00000660 (OMD buying Related Media);<br><br>Ex. P(10) - McD_ESN00018473 (AACM - AA owned 2018-2020 tab);<br><br>Ex. P(11) - McD_ESN00012884 (OMD and Burrell collaborating on buying black owned media offerings) | Objection: calls for speculation and lacks foundation; inadmissible hearsay. Fed. R. Evid. 602, 802. Disputed. The documents submitted are hearsay and lack trustworthiness.<br><br>Evidence:<br><br>AOE Ex. A (Maston Tr.) at 204:25-206:12 (confirming she does not know the |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | ownership of Revolt, which is listed on the same spreadsheet as Related Media as African American-owned); |
| | AOE Ex. B (Hamilton Tr.) at 15:21-16:3, 22:16-25, 23:20-24:12, 24:24-25:7, 54:4-18 (confirming she does not know or was wrong about the purported African American owners of Revolt, Aspire, and Urban One, all listed on the same spreadsheet as Related media); |
| | AOE Ex. C (Feldman Tr. at 118:23-119:12 (confirming she does not any details regarding the ownership of Revolt). |
| **D46. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D46 (or the evidence cited in support) is, in fact, disputed. | |
| D47. AMG represented to McDonald's and others that ES syndicated programming could effectively reach an African-American audience, as measured by Nielsen.<br><br>*Evidence*:<br>Ex. O(26) - ESN0019635 (2015 ES - McDonald's slide deck titled, "Reach More African-American Consumers With Entertainment Studios");<br><br>Ex. O(27) - ESN0022135(22151) (ES 2018 slide deck touting number of "es court african american viewers");<br><br>Ex. O(28) - ESN0002841 (self-describing ES as African-American targeted);<br><br>Ex. O(29) - ESN0012078(94-95) (ES/Weather Group National Sales Conference slide deck, stating "The ES Court Combo Reaches the Growing African-American Consumer!");<br><br>Ex. O(83) - ESN0002571(2578) (ES Upfront 2021 slide deck stating "The ES Court Combo Ranks 7th in African-American Household Rating among all M-F Syndicated Programs…") | Disputed.  McDonald's engaged in racial discrimination by relegating Entertainment Studios to Burrell.  Entertainment Studios still tried to access Burrell, which had access to McDonald's AACM budget. Entertainment Studios touted its ability to reach African American audiences because of this illegal relegation. Entertainment Studios' content is general market and not targeted to African American audiences. Entertainment Studios' networks and syndicated programming features courtroom drama, entertainment, comedy, travel, food, pets and automotive content that is targeted to general audiences. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | Evidence: AOE Ex. F (Galatt Tr.) at 11:4-24, 88:24-89:20, 91:8-92:13, 100:7-15, 179:5-180:20, 268:13-19; |
| | AOE Ex. H (Kelly Tr.) at 12:6-13:8, 23:16-20, 28:18-29:14, 32:6-22, 33:7-11, 34:21-35:12, 78:13-79:20, 80:9-23, 81:11-13; |
| | AOE Ex. D (Carroll Tr.) at 164:6-14, 171:4-8; |
| | AOE Ex. C (Feldman Tr.) at 172:2-22; |
| | AOE Ex. A (Mason Tr.) at 97:4-13; |
| | AOE Ex. ZZ(2) (Mason Depo. Tr. Ex. 9); |
| | AOE Ex. ZZ(3) (Mason Depo. Tr. Ex. 10); |
| | AOE Ex. M (Hodge Tr.) at 53:1-54:24, 12:1-12; |
| | AOE Ex. L (Calabrese Tr.) at 53:1-54:14; |
| | AOE Ex. N (Bibbens Tr.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15-69:14, 74:16-75:21, 77:7-14. |

**D47. Moving Party's Response**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D47 (or the evidence cited in support) is, in fact, disputed. Further, Plaintiffs' unsupported assertion that "McDonald's engaged in racial discrimination by relegating Entertainment Studios to Burrell" is contradicted by record evidence. *See* Ex. U - Innes Declaration; Ex. T - Geraci Declaration; Ex. M - Burrell 30(b)(6) Tr. 38:11-15 (Burrell tracks how much of the AACM

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

budget is being spend with Black-owned media companies); Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (Burrell provides McDonald's with breakdowns of its spending with Black-owned media that work with OMD/Starcom); Ex. M - Burrell 30(b)(6) 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the GCM agency has); Ex. M - Burrell 30(b)(6) 53:4-21 (the GCM agency evaluating ESN was not a new development); Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); Ex. E - Flatley Tr. 56:16-57:3; 60:17-21 (McDonald's was not "intentionally placing media partners and relegating them to different groups"; that "was not at all the practices that we had in place at McDonald's at all"); Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); Ex. O(21) - ESN0022535 (December 2019 meeting); Ex. O(38) - ESN00016403 (March 2020) (presented Weather and ES properties to OMD); Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) | |
| D48. McDonald's, through Burrell, consistently purchased advertising on ES syndicated properties from the early 1990s until 2019 as part of its AACM plan buys. | Disputed. McDonald's did not spend on ES syndicated programming in 2019 and it did not spend "consistently." From 2015 to 2019, McDonald's dramatically reduced its advertising spending with Entertainment Studios and stopped advertising altogether in 2019. |
| *Evidence*: Ex. O(30) - Burrell_0004911(927) (May 2020 Burrell Minority Partner Review slide deck);<br><br>Ex. O(31) - ESN0019410 (Plaintiffs' BOM advertiser tracking spreadsheet);<br><br>Ex. M - Burrell 30(b)(6) Tr. 132:10-18;<br><br>Ex. I - Allen Tr. 119:8-10; 147:6-9 | *McDonald's Evidence*:<br><br>Ex.O(31) is a slide deck from Burrell overviewing McDonald's minority partners, which states that McDonald's partnership with ES ceased in 2019. It does not detail McDonald's spend with ES, in syndication or otherwise.<br><br>Ex. O(31) is a spreadsheet from Plaintiffs that confirms that McDonald's spent $0 in 2019 with Plaintiffs.<br><br>Ex. M at 132:10-18 (Burrell Depo.) is testimony from Donna Hodge confirming that Ex. O(30) indicates that ES was a McDonald's partner from the 1990s through 2019. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | She does not confirm any spend numbers. |
| | Ex. I (Allen Depo.) at 119:8-10 and 147:6-9 is testimony from Byron Allen confirming that ES pitched syndicated programming to McDonald's since the 1990s and that McDonald's spent some money on Plaintiffs' digital networks in 2021. |
| | *Evidence*: |
| | AOE Ex. ZZ(1) (Mason Depo. Ex. 2) (Burrell-prepared breakdown of McDonald's spend on minority-owned media for 2019 and 2020, which does not include Entertainment Studios or the syndicated programming). |
| | AOE Ex. P(13), AOE2581 (confirming McDonald's did not purchase Entertainment Studios in 2019 or 2020). |
| | AOE Ex. X (Hanssens Tr.) at 151:1-23, 241:22-242:11; |
| | AOE Ex. EE (Hanssens Tr. Ex. 16); |
| | AOE Ex._I (Allen Tr.) at 303:4-12. |
| D48. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Undisputed that McDonald's ceased purchasing advertising on Entertainment Studios' syndicated programming in 2019. Plaintiffs' assertion, however, that "[f]rom 2015 to 2019, McDonald's dramatically reduced its advertising spending with Entertainment Studios" is unsupported by Plaintiffs' cited testimony and evidence. *See* Ex. P(19) - McD_ESN00001046; Ex. O(47) - ESN0015477 (2017) and Ex. O(48) - ESN0008039 (2018) (showing increased CPMs). | |
| D49. AMG's advertising sales representatives presented all its media properties (syndicated properties, cable networks, and digital offerings) to OMD on multiple occasions throughout the relevant time period. | Disputed. McDonald's relegated Entertainment Studios to Burrell which deploys a very small portion |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | of McDonald's national advertising budget. |
| *Evidence*: | |
| Ex. O(32) - ESN0036007 (May 2012); | *Evidence:* |
| | AOE Ex. F (Galatt Tr.) at 11:4-24, 88:24-89:20, 91:8- |
| Ex. O(33) - ESN0030244 (April 2016); | 92:13, 100:7-15, 179:5- |
| | 180:20, 268:13-19; |
| Ex. O(34) - ESN0007869 & Ex. O(35) - ESN0024759 (March 2017); | AOE Ex. H (Kelly Tr.) at 12:6-13:8; |
| Ex. O(21) - ESN0022535 (December 2018); | |
| | AOE Ex. D (Carroll Tr.) at 164:6-14, 171:4-8; |
| Ex. O(36) - ESN0008399 (September 2019); | |
| Ex. O(37) - ESN0008425 (November 2019); | AOE Ex. C (Feldman Tr.) at 172:2-22, 174;4-175:1; |
| Ex. O(38) - ESN00016403 (March 2020); | |
| | AOE Ex. A (Mason Tr.) at 29:17-31:8, 97:4-13, 109:6-9; |
| Ex. O(39) - ESN0037576 (October 2020); | |
| Ex. O(40) - ESN0033959 (November 2020); | AOE Ex. ZZ(2) (Mason Depo. Tr. Ex. 9); |
| Ex. O(41) - ESN0001106 (April 2021); | |
| | AOE Ex. ZZ(3) (Mason Depo. Tr. Ex. 10); |
| Ex. G - Bekkedahl Tr. 244:12-17 ("Q: Okay. And McDonalds didn't do anything to prevent this [meeting with OMD in 2020] from happening, did it? A: No. This was the ad agency [i.e., OMD] and they, you know, were always good about taking our meetings and learning our updates."); | AOE Ex. M (Hodge Tr.) at 53:1-54:24, 12:1-12; |
| Ex. I - Allen Tr. 262:7-11 ("I do know we presented to OMD. Now, how they evaluated it, I don't know, but we did present."); | AOE Ex. L (Calabrese Tr.) at 53:1-14; |
| Ex. F - Galatt Tr. 112:7-113:11 (testifying that the Plaintiffs' portfolio team had an account executive who "called upon OMD" who "was selling all properties" after 2018); | AOE Ex. N (Bibbens Tr.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15- |
| Ex. L - OMD 30(b)(6) Tr. 112:14-114:21 (OMD evaluated "Entertainment Studios properties and the Weather Channel" but they "were not matches for McDonald's 18 to 49 and Gen Z"); | 69:14, 74:16-75:21, 77:7-14; |
| | AOE Ex. ZZ (Schecter Decl.) at Ex. 1 (Mason Depo. Ex. 2). |
| Ex. H - Kelly Tr. 85:12-86:7 (testifying that Entertainment Studios presented slide decks showing advertising opportunities to OMD in April 2016) | |

D49. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D49 (or the evidence cited in support) is, in fact, disputed. Further, Plaintiffs' unsupported

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

assertion that "McDonald's relegated Entertainment Studios to Burrell" is contradicted by record evidence. *See* Ex. U - Innes Declaration; Ex. T - Geraci Declaration; Ex. M - Burrell 30(b)(6) Tr. 38:11-15 (Burrell tracks how much of the AACM budget is being spend with Black-owned media companies); Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (Burrell provides McDonald's with breakdowns of its spending with Black-owned media that work with OMD/Starcom); Ex. M - Burrell 30(b)(6) 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the GCM agency has); Ex. M - Burrell 30(b)(6) 53:4-21 (the GCM agency evaluating ESN was not a new development); Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); Ex. E - Flatley Tr. 56:16-57:3; 60:17-21 (McDonald's was not "intentionally placing media partners and relegating them to different groups"; that "was not at all the practices that we had in place at McDonald's at all"); Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021 proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); Ex. O(21) - ESN0022535 (December 2019 meeting); Ex. O(38) - ESN0016403 (March 2020) (presented Weather and ES properties to OMD); Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now; Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) | |
| D50. OMD considered AMG's media properties for investment on behalf of McDonald's during the relevant time period.

*Evidence*:
Ex. L - OMD 30(b)(6) Tr. 112:14-114:21 (OMD evaluated "Entertainment Studios properties and the Weather Channel" but they "were not matches for McDonald's 18 to 49 and Gen Z");

Ex. O(32) - ESN0036007 (May 2012);

Ex. O(33) - ESN0030244  (April 2016);

Ex. O(34) - ESN0007869 & Ex. O(35) - ESN0024759 (March 2017);

Ex. O(21) - ESN0022535 (December 2018);

Ex. O(36) - ESN0008399 (September 2019);

Ex. O(37) - ESN0008425 (November 2019);

Ex. O(38) - ESN00016403  (March 2020);

Ex. O(39) - ESN0037576 (October 2020);

Ex. O(40) - ESN0033959 (November 2020);

Ex. O(41) - ESN0001106 (April 2021) | Disputed.  McDonald's relegated Entertainment Studios to Burrell which deploys a very small portion of McDonald's national advertising budget.

*Evidence:*
AOE Ex. F (Galatt Tr.) at 11:4-24, 88:24-89:20, 91:8-92:13, 100:7-15, 179:5-180:20, 268:13-19;

AOE Ex. H (Kelly Tr.) at 12:6-13:8;

AOE Ex. D (Carroll Tr.) at 164:6-14, 171:4-8;

AOE Ex. C (Feldman Tr.) at 172:2-22, 174:4-175:1;

AOE Ex. A (Mason Tr.) at 29:17-31:8, 97:4-13, 109:6-9;

AOE Ex. ZZ(2) (Mason Depo. Tr. Ex. 9);

AOE Ex. ZZ(3) (Mason Depo. Tr. Ex. 10); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. M (Hodge Tr.) at 53:1-54:24, 12:1-12; |
| | AOE Ex. L (Calabrese Tr.) at 53:1-14; |
| | AOE Ex. N  (Bibbens Tr.) at 12:11-13, 20:3-21, 22:12-24:7, 28:5-16, 35:8-21, 51:6-52:13, 53:4-10, 55:12-56:4, 67:15-69:14, 74:16-75:21, 77:7-14; |
| | AOE Ex. ZZ (Schecter Decl.) at Ex. 1 (Mason Depo. Ex. 2). |

D50. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. McDonald's did not "relegate[] Entertainment Studios to Burrell." *See* Ex. U - Innes Declaration; Ex. T - Geraci Declaration; Ex. M - Burrell 30(b)(6) Tr. 38:11-15 (Burrell tracks how much of the AACM budget is being spend with Black-owned media companies); Ex. M - Burrell 30(b)(6) Tr. 44:22-45:13 (Burrell provides McDonald's with breakdowns of its spending with Black-owned media that work with OMD/Starcom); Ex. M - Burrell 30(b)(6) 51:25-52:24; 54:12-24 (Burrell has not evaluated ESN Lifestyle Networks: the GCM agency has); Ex. M - Burrell 30(b)(6) 53:4-21 (the GCM agency evaluating ESN was not a new development); Ex. C - Feldman Tr. 173:4-13 (media companies are not "assigned" to agencies by McDonald's); 177:12-178:6 (Entertainment Studios "was not relegated" to Burrell; Entertainment Studios relationship with Burrell was "based off the audience composition, concentration, evaluation" and the fact that "there was an overdevelopment of African-American within these properties. Therefore, Burrell would have been the agency to negotiate with but that would not preclude consideration of the general market, either."); 179:9-20 (never told OMD or Burrell that Entertainment Studios "should go through Burrell"; rather, "[t]o that point all of our investment had been through Burrell so they would have been point to do that" but that "would not preclude OMD from analyzing that as a property and making a recommendation. It is more who would negotiate with that vendor."); Ex. A - Mason Tr. 98:1-10 (Entertainment Studios' "general market media" offerings were not required to go through Burrell, and "when Byron Allen's media group would submit proposals that are broad, broad in nature, that both OMD and Burrell were reviewing them"); 100:10-25 (the properties that Byron Allen had that were considered for the general market buy did not meet the general market buy criteria, except for Local Now, which OMD *did* buy); 127:10-15 (it is not accurate "that Burrell is the only agency to deal with Byron Allen….[b]ecause we've also placed a buy as we've said with OMD"); Ex. E - Flatley Tr. 56:16-57:3; 60:17-21 (McDonald's was not "intentionally placing media partners and relegating them to different groups"; that "was not at all the practices that we had in place at McDonald's at all"); Ex. L - OMD 30(b)(6) Tr. 112:14-115:3 (OMD considered Plaintiffs' offerings, and with the exception of Local Now and theGrio, Plaintiffs' properties "didn't match for them – or for McDonald's at that – at that point. There was better options for the spend, even with the extra weight for diverse-owned."); 117:20-23 and 118:14-119:1 (OMD "of course" considered and evaluated whether Plaintiffs' properties "would have been a fit" on McDonald's GCM buy); 116:19-117:11 (On whether Plaintiffs' 2021

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| proposal to McDonald's to advertise across their portfolios was reasonable, OMD said "[t]he answer was – was no. That's why we didn't make that recommendation."); Ex. O(33) - ESN0030244 (April 2016) (presented to Deborah Innes and others at OMD); Ex. O(34) - ESN0007869 and Ex. O(35) - ESN0024759 (March 2017) (Presented to Chris Geraci and others at OMD); Ex. O(36) - ESN0008399 (September 2019) (OMD affirmatively reached out to ES for information about their syndicated offerings on behalf of "OMD Wide" – i.e., on behalf of all their clients, including McDonald's); Ex. O(37) - ESN0008425 (November 2019) (OMD "asked that we come in to present our networks"); Ex. O(21) - ESN0022535 (December 2019 meeting); Ex. O(38) - ESN0016403 (March 2020) (presented Weather and ES properties to OMD); Ex. O(39) - ESN0037576 (October 2020) (presented AMG properties to multiple OMD personnel on October 5, 2020); Ex. O(40) - ESN0033959 (November 2020) (walked OMD through entire portfolio, OMD considered copy splitting opportunity and Local Now); Ex. O(41) - ESN0001106 (April 2021) (had "great conversation with McDonald's out of OMD"); Ex. M - Burrell 30(b)(6) Tr. 125:16-126:13 (TWC was evaluated but "did not align the audience, the target audience…the composition or the reach would be low, specifically for the GenZ target. The ratings – the ratings are low, so that means they are not watching."); Ex. P(46) - McD_ESN00002136 (AMG December 2020 presentation) and Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation, told them it was considered and asked "for your guys to push the envelope on what is possible"); Ex. O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment in ESN networks to another major client, even though the other client sought an older target demographic that ESN/ES performed *better* with than McDonald's younger A18-49 demographic); Ex. O(70) - ESN0010119(10121,10125) (ES confirming with OMD (not Burrell) the 2021 OMD/McDonald's spending on theGrio and Local Now); Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021); Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab); Ex. P(51) - McD_ESN00021595(21616) (OMD deck showing theGrio added as a "DEI partner"); Ex. F - Galatt Tr. 144:13-21 (OMD bought theGrio and Local Now); Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021 via OMD); Ex. O(25) - ESN0018191 (4.14.21 tab) (OMD ordered Local Now); Ex. P(50) - McD_ESN00002274 (OMD placed Local Now buys on April 1, 2021) | |
| D51. Prior to 2021, through their agency partner, Burrell, McDonald's purchased hundreds of thousands of dollars of advertising on ES's syndicated properties each year from 2010 until 2019. | Disputed. McDonald's did not spend on ES syndicated programming in 2019. |
| *Evidence*: Ex. O(42) - ESN0003515 (ES Top 10 advertisers); | *Evidence*: AOE Ex. ZZ(1) (Mason Depo. Ex. 2) (Burrell-prepared breakdown of McDonald's spend on minority-owned media for 2019 and 2020, which does not include Entertainment Studios or the syndicated programming). |
| Ex. P(13) - McD_ESN00001033 (Burrell historical review of ES); | |
| Ex. P(14) - McD_ESN00000500 (McDonald's 2011-2014 ES advertising spend); | |
| Ex. O(67) - November 22, 2022 ESN and Weather Response to | AOE Ex. P(13), AOE2581 |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Request for Admission Nos. 1-5 | (confirming McDonald's did not purchase Entertainment Studios in 2019 or 2020). |
| D51. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D51 (or the evidence cited in support) is, in fact, disputed. Undisputed that McDonald's did not spend on ES syndicated programming in 2019. | |
| D52. From at least 2013-2016, McDonald's was one of ES's top ten advertisers in terms of advertising revenue.

*Evidence*:
Ex. O(42) - ESN0003515 (ES Top 10 advertisers);

Ex. P(16) - McD_ESN00000494 (McDonald's 2015 slide deck review of ES);

Ex. F - Galatt Tr. 154:20-155:5 | Disputed. McDonald's presents this fact in support of its "favorable" treatment argument. The treatment of Entertainment Studios is disputed. From 2015 to 2019, after McDonald's African American CEO, Don Thompson left and was replaced by a white CEO, McDonald's dramatically reduced its advertising spending with Entertainment Studios and stopped advertising altogether in 2019.

*Evidence*:

AOE Ex. X (Hanssens Tr.) at 151:1-23, 241:22-242:11;

AOE Ex. EE (Hanssens Tr. Ex. 16);

AOE Ex. I (Allen Tr.) at 303:4-12. |
| D52. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D52 (or the evidence cited in support) is, in fact, disputed. *See also* Ex. P(19) – McD_ESN00001046 (showing *increased* spending from 2015 to 2016, and increased again from 2017 to 2018). | |
| D53. From 1993 to 2020, McDonald's spent approximately $12,634,000 – the equivalent of approximately 2.02% of McDonald's total syndication spend – on ES's syndication properties. | Disputed. McDonald's presents this fact in support of its "favorable" treatment argument. The treatment of Entertainment Studios is disputed. From 2015 to 2019, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. O(31) - ESN0019410 (Plaintiffs' BOM advertiser tracking spreadsheet) | after McDonald's African American CEO, Don Thompson left and was replaced by a white CEO, McDonald's dramatically reduced its advertising spending with Entertainment Studios and stopped advertising altogether in 2019. *Evidence*: AOE Ex. X (Hanssens Tr.) at 151:1-23, 241:22-242:11; AOE Ex. EE (Hanssens Tr. Ex. 16); AOE Ex._I (Allen Tr.) at 303:4-12. |

**D53. Moving Party's Response**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D53 (or the evidence cited in support) is, in fact, disputed. *See also* Ex. P(19) – Mcd_ESN00001046 (showing *increased* spending from 2015 to 2016, and again from 2017 to 2018).

| | |
|---|---|
| D54. For calendar year 2015, Burrell recommended to McDonald's that it spend less on advertising on ES syndicated properties than it did in 2014, in light of McDonald's "evolving media mix," ES's "program ratings instability," ES's "[i]nconsistent stewardship" of McDonald's investment, and because ES's syndicated properties "[r]atings delivery does not warrant consideration on [the General Consumer Market] plan." *Evidence*: Ex. P(15) & P(16) - McD_ESN00000493, McD_ESN00000494 (McDonald's 2015 slide deck review of ES) | Disputed. The factual assertion is based on inadmissible hearsay. Fed. R. Evid. 802. |

**D54. Moving Party's Response**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by McDonald's in D54 (or the evidence cited in support) is, in fact, disputed.

| | |
|---|---|
| D55. Though ES's "property ratings [were] in-line with other AACM buys, [ES's] GCM delivery [was] far below average Syndication rating," as Burrell noted the average Nielsen rating | Disputed. The factual assertion is based on inadmissible hearsay. Fed. R. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| for GCM syndication properties was 1.6, which exceeded the comparable GCM ratings on ES's Daily Network (.6), Weekly Network (.8), *First Family* (.3), and *Mr. Box Office* (.3).<br><br>*Evidence*:<br>Ex. P(16) - McD_ESN00000494(496) (McDonald's 2015 slide deck review of ES) | Evid. 802. |
| D55. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by McDonald's in D55 (or the evidence cited in support) is, in fact, disputed. | |
| D56. Notwithstanding the decrease in overall advertising spending on ES syndicated properties from 2014, in 2015, McDonald's still purchased hundreds of thousands of dollars of advertising across the following ES syndicated properties: Daily Network, Weekly Network, and sitcoms *First Family* and *Mr. Box Office*.<br><br>*Evidence*:<br>Ex. P(19) - McD_ESN00001046 | Disputed. The factual assertion is based on inadmissible hearsay. Fed. R. Evid. 802. |
| D56. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by McDonald's in D56 (or the evidence cited in support) is, in fact, disputed. | |
| D57. Byron Allen believed McDonald's decision to decrease its advertising spending from 2014 to 2015 on ES's syndication properties was racially discriminatory.<br><br>*Evidence*:<br>Ex. P(8) - McD_ESN00000079 ("The discrimination and the numbers are indefensible");<br><br>Ex. O(43) - ESN0012580 (Allen "indicated that [he] would file a lawsuit against McDonald's alleging discrimination if [McDonald's] did not increase [its] media spend with [his] company");<br><br>Ex. I - Allen Tr. 202:5-20; 203:12-204:8; 237:23-238:23; 241:21-23; 244:2-7;<br><br>Ex. HHH – DeVitre Tr. 68:16-69:9; 73:3-74:13. | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D58. Byron Allen believes he "should have sued [McDonald's] in 2015" and "wished" he would have sued McDonald's in 2015.<br><br>*Evidence*:<br>Ex. I - Allen Tr. 244:2-7 | Undisputed. |
| D59. Byron Allen said he would file a §1981 civil rights lawsuit against McDonald's in 2015.<br><br>*Evidence*:<br>Ex. O(43) - ESN0012580 (Allen "indicated that [he] would file a lawsuit against McDonald's alleging discrimination if [McDonald's] did not increase [its] media spend with [his] company");<br><br>*See also* Ex. I - Allen Tr. 234:18-235:1 | Undisputed. |
| D60. From 2015 to 2016, ES's Weekly Network's ratings for the AA18-49 demographic declined by 12%.<br><br>*Evidence*:<br>Ex. P(19) - McD_ESN00001046 | Undisputed. |
| D61. The Nielsen ratings of ES's syndication properties declined from 2016 to 2021.<br><br>*Evidence*:<br>Ex. P(19) - McD_ESN00001046  (ES Ratings sheet 2015-2020 showing, among other things, a decline in AA18-49 ratings of ES's best-performing property, *Daily Network*, of 1.42 in 2015 to 0.68 in 2020);<br><br>Ex. P(7) - McD_ESN00006422(6428) (indicating ES had "ratings shortfalls");<br><br>Ex. P(13) - McD_ESN00001033(1040) (Burrell historical review of ES, indicating Entertainment Studios "continues to experience double digit ratings erosion");<br><br>Ex. R(1) (Hanssens Expert Report ¶¶74-75) ("among McDonald's primary target demographic of adults ages 18 to 34 years old, the rating of ES's *Daily Network* fell by 48 percent from a rating of 1.38 in 2017 to 0.72 in 2018.") | Objection.  Exs. P(7) and P913) are inadmissible hearsay.  Fed. R. Evid. 802. Disputed. The evidence cited by McDonald's shows that the *Daily Network* program saw an increase in ratings among AA18-49 each year from 2015 to 2017.  Entertainment Studios' syndicated programming has strong ratings.<br><br>*Evidence*:<br>AOE Ex. EEE (Restivo Decl.) Ex. 2. |
| D61. Moving Party's Response | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Undisputed that *Daily Network* experienced moderate ratings growth from 2015 to 2017, followed by significant ratings decreases through 2018, 2019, and 2020. *See* Ex. P(19) - McD_ESN00001046 (ES Ratings sheet 2015-2020 showing a decline in AA18-49 ratings of ES's best-performing property, *Daily Network*, of 1.42 in 2015 to 0.68 in 2020). The assertion that "Entertainment Studios' syndicated programming has strong ratings" is contradicted by record evidence. *See* Ex. P(16) - McD_ESN00000494(496) (noting the average Nielsen rating for GCM syndication properties was 1.6, which exceeded the comparable GCM ratings on ES's Daily Network (.6), Weekly Network (.8), *First Family* (.3), and *Mr. Box Office* (.3)). | |
| D62. Notwithstanding the decline in its ratings overall, in 2016, McDonald's, through Burrell, increased its spending on ES's syndication properties from the prior year, while "[a]ll other partners took a decrease on dollars."<br><br>*Evidence*:<br>Ex. O(46) - ESN0032789 | Disputed. McDonald's reduced spending with Entertainment Studios during this period. In 2015, McDonald's reduced spending with Entertainment Studios by approximately 50% as compared to 2014. In 2016, McDonald's increased spending by $19,998 from 2015 (a 3% increase). But the spending in 2016 was approximately half of the spending in 2014.<br><br>*Evidence:*<br>AOE Ex. R(1) at AOE3543 (Hanssens Report Ex. 1). |
| D62. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited evidence does not support their claim that the fact asserted by McDonald's in D62 (or the evidence cited in support) is, in fact, disputed, and Plaintiffs do not dispute that McDonald's in fact "increased spending by $19,998 from 2015 (a 3% increase)." | |
| D63. Nevertheless, Byron Allen believed McDonald's and its then-CMO, Ms. Wahl, had discriminated against him and his company by forcing AMG to deal with Burrell, because in his view, "that's where she sends Black people."<br><br>*Evidence*:<br>Ex. O(28) - ESN0002841(2843) ("Please treat our African American Owned Media the same as General Market white agencies and clients. The discrimination and the numbers are indefensible.");<br><br>Ex. I - Allen Tr. 305:17-306:17 ("When we went, and we communicated, you should provide economic inclusion for Black-Owned Media, you should not have this separate and | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| unequal system of Black people go to Burrell and white people go to OMD."); 302:11-303:19; 67:4-8; 69:20-70:16; 172:24-174:6; 174:23-175:12; 193:12-194:4; 248:8-22; 258:7-14; 259:5-260:13; 261:21-262:3;<br><br>Ex. HHH – DeVitre Tr. 68:16-69:9; 73:3-74:13<br><br>*See also* Ex. F - Galatt Tr. 179:2-180:20 | |
| D64. In 2017-2018, McDonald's decreased its overall investment in ES's syndicated properties, but simultaneously increased the price it paid (as expressed by CPM) for advertising on ES's syndication properties.<br><br>*Evidence*:<br>Ex. O(47) - ESN0015477 (2017);<br><br>Ex. O(48) - ESN0008039 (2018) | Undisputed. |
| D65. Byron Allen continued to believe his companies were being discriminated against by McDonald's on account of his race in 2016 and 2017, but did not file a lawsuit against McDonald's until May 20, 2021.<br><br>*Evidence*:<br>Ex. O(49) - ESN0030314 (Byron Allen again "brought up the possibility of bringing a lawsuit against McDonald's");<br><br>Ex. I - Allen Tr. 193:12-23; 249:17-24; 254:18-22;<br><br>Ex. H - Kelly Tr. 159:4-8 | Disputed.  This fact is submitted in support of McDonald's argument that Plaintiffs' claims are barred by statutes of limitation. Plaintiffs continued to pitch for ad revenue from McDonald's up to the filing of the complaint, including in 2019, 2020, 2021, and 2022<br><br>*Evidence*:<br>AOE Ex. BBB (Galatt Decl.) at ¶¶ 3-8 & Exs. 1-7;<br><br>AOE Ex. CCC (Hardison Decl.) at Ex. 1 (Bekkedahl Depo. Ex. 21);<br><br>AOE Ex. CCC(2) (Bekkdahl Depo. Ex. 80);<br><br>AOE Ex. CCC(3) (Bekkdahl Depo. Ex. 84);<br><br>AOE Ex. CCC(4) (Galatt Depo. Ex. 22);<br><br>AOE Ex. CCC( 5) (Galatt Depo. Ex. 26); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. CCC(6) (Galatt Depo. Ex. 28); |
| | AOE Ex. CCC(7) (Kelly Depo. Ex. 93); |
| | AOE Ex. CCC(8) (Kelly Depo. Ex. 104); |
| | AOE Ex. CCC(9) (Kelly Depo. Ex. 105); |
| | AOE Ex. CCC(10) (Kelly Depo. Ex. 106); |
| | AOE Ex. CCC(11) (Kelly Depo. Ex. 107) ; |
| | AOE Ex. H (Kelly Tr.) at 181:11-17, 194:3-198:13; |
| | AOE Ex. F (Galatt Tr.) at 116:25-118:12, 272:5-12; |
| | AOE Ex. G (Bekkedahl Tr.) at 36:15-37:2, 148:17-149:2. |
| D65. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D65 (or the evidence cited in support) is, in fact, disputed. | |
| D66. In 2017, McDonald's told AMG's sales representatives that "[t]he [media] partners we are seeking provide both scale as well as unique targeting. In the TV + video space, this means that partners that provide lower reach or don't fill a specific audience gap have been de-prioritized."

*Evidence*:
Ex. O(50) - ESN0004644 | Undisputed. |
| D67. For 2018, McDonald's reduced its AACM advertising across all its media partners except for ES, which was the only media partner that Burrell was "able to increase (+46% vs. 2017)".

*Evidence*: | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. O(47) - ESN0015477 (2017);<br><br>Ex. O(48) - ESN0008039 (2018) | |
| D68. In 2018, McDonald's purchased advertising on ES's syndicated program, *Funny You Should Ask,* which was created the prior year.<br><br>*Evidence*:<br>Ex. O(51) - ESN0004319  (Funny You Should Ask ("FYSA") was a new AMG offering);<br><br>Ex. F - Galatt Tr. 68:18-69:15;<br><br>Ex. P(13) - McD_ESN00001033 (Burrell historical review of ES);<br><br>Ex. P(7) - McD_ESN00006422(6428)  (McDonald's purchased FYSA) | Undisputed. |
| D69. Due to *Funny You Should Ask* "ratings shortfalls" in 2018, however, Burrell did not recommend reinvesting in the program in 2019.<br><br>*Evidence*:<br>Ex. P(7) - McD_ESN00006422(6428) (FYSA not recommended to buy again because of "ratings shortfalls") | Undisputed. |
| D70. Burrell informed McDonald's that "[p]artnership with Entertainment Studios proves to be challenging to negotiate. Their programming skews older and provides no value-added elements to overall investment. Plus, cost vs. ratings ratio is very inefficient. The partner continues to experience double digit ratings erosion; exception Teen audience."<br><br>*Evidence:*<br>Ex. P(13) - McD_ESN00001033 (Burrell historical review of ES) | Disputed.  The factual assertion is based on inadmissible hearsay.  Fed. R. Evid. 802. |
| D70. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by McDonald's in D70 (or the evidence cited in support) is, in fact, disputed. | |
| D71. For broadcast year 2018/2019, McDonald's mostly eliminated syndication across-the-board from its media buying mix. | Disputed.  McDonald's continued to advertise on syndication throughout this |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:*<br>Ex. P(22) - McD_ESN00001037(1040) ("For CY 2019, there was a strategic shift and Syndication was eliminated from the media mix. Cable gained those GRPs, in order to, drive plan efficiencies.");<br><br>Ex. O(52) - Burrell_0005515 ("we don't have any pricing data since we basically eliminated syndication. And that's the reason we don't buy [ES], the move to efficiency which syndication is not");<br><br>Ex. P(23) - McD_ESN00009009 (showing no spending on syndication programming in 2018/19 broadcast year);<br><br>Ex. P(24) - McD_ESN00008876(8916) (same) | period.  McDonald's spent millions of dollars in syndication in 2019, 2020, and 2021.<br><br><br>Evidence:<br>AOE Ex. SS (McD_ESN00009009);<br><br>AOE Ex. WW (McD_ESN00011535);<br><br>AOE Ex. FFF (Nunan Decl.) at Ex. 2 (Nunan Report). |

D71. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D71—*i.e.,* that McDonald's eliminated syndication during the 2018/2019 broadcast year—or the evidence cited in support is, in fact, disputed. The assertion that McDonald's "continued" to advertise on syndication in 2019, 2020, and 2021 is contradicted by the record evidence. Syndication was a "new daypart for 19/20" during which McDonald's "concentrate[d] investment in two best syndicators" (which did not include Entertainment Studios) and "focus[ed] on youngest skewing sitcoms and programs," (which Entertainment Studios' syndicated programming could not deliver). Ex. P(24) - McD_ESN00008876(8902, 8924). *See also* Ex. O(63) - ESN0010350 (November 2019 meeting between McDonald's OMD buying team and TWC ad sales representatives during which OMD stated that "McDonald's had stopped purchasing Syndication but **just began again**, and Burell in Chicago will continue to keep that relationship.") (emphasis in original).

| D72. Burrell recommended McDonald's not purchase advertising on ES's syndicated properties starting in calendar year 2019.<br><br>*Evidence:*<br>Ex. P(13) - McD_ESN00001033(1040) (Burrell historical review of ES);<br><br>Ex. P(25) - McD_ESN00007755(7759) (detailing rationale for eliminating investment with Entertainment Studios) | Disputed.  The factual assertion is based on inadmissible hearsay.  Fed. R. Evid. 802. |

D72. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response cites no testimony or evidence, and does not support their claim that the fact asserted by

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| McDonald's in D72 (or the evidence cited in support) is, in fact, disputed. | |
| D73. McDonald's informed ES of its intention to cease advertising on its syndicated properties in January 2019. | Disputed. McDonald's did not inform Plaintiffs that it planned to "cease" advertising, which is why Plaintiffs continued to pitch after January 2019. |
| *Evidence:* O(53) - Burrell_0008194 (2/6/2019 call between Burrell and Darren Galatt informing him that McDonald's would not continue its investment in 2019); | *Evidence:* AOE Ex. BBB (Galatt Decl.) at ¶¶ 3-8 & Exs. 1-7 (emails through December 2020, reflecting Plaintiffs continued to pitch McDonald's for ad dollars); |
| Ex. F - Galatt Tr. at 106:7-11 ("Q: Do you recall discussing with Mr. Olson and Ms. Lassere McDonald's reduction or elimination of syndication in 2019? A: I know that they told us they were no longer spending, yes."); | AOE Ex. CCC(1) (Bekkedahl Depo. Ex. 21) (March 9, 2020 email between TWG and McDonald's agency); |
| Ex. I - Allen Tr. 308:21-309:2 ("it looks like those conversations were happening in December and January – December of '18 and January of '19.") | AOE Ex. CCC(2) (Bekkdahl Depo. Ex. 80) (January 18, 2021 email chain in which Burrell informed Plaintiffs that McDonald's was rejecting the proposal in the accompanying December 9, 2020 email from Darren Galatt to Burrell); |
| | AOE Ex. CCC(3) (Bekkdahl Depo. Ex. 84) (January 15, 2021 email from Cindy Kelly to McDonald's agency attempting to schedule a call to discuss possible partnership); |
| | AOE Ex. CCC(4) (Galatt Depo. Ex. 22) (November 15, 2019 email chain between Plaintiffs' representatives noting that they had a meeting with McDonald's agency); |
| | AOE Ex. CCC(5) (Galatt Depo. Ex. 26) (December 9, 2020 email from Darren Galatt to Burrell with ad partnership proposal); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. CCC(6) (Galatt Depo. Ex. 28) (April 6, 2021 email chain between Plaintiffs' representatives regarding a small potential ad investment from McDonald's); |
| | AOE Ex. CCC(7) (Kelly Depo. Ex. 93) (December 4, 2019 email chain between Entertainment Studios and McDonald's agency regarding a potential partnership); |
| | AOE Ex. CCC(8) (Kelly Depo. Ex. 104) (September 25, 2020 email chain between Plaintiffs and McDonald's agency); |
| | AOE Ex. CCC(9) (Kelly Depo. Ex. 105) (January 11, 2021 email between Plaintiffs' representatives regarding trying to schedule a call with McDonald's agency); |
| | AOE Ex. CCC(10) (Kelly Depo. Ex. 106) (January 13, 2021 email from Cindy Kelly to McDonald's agency, trying to set up a meeting); |
| | AOE Ex. CCC(11) (Kelly Depo. Ex. 107) (January 29, 2021 email from Cindy Kelly to McDonald's ad agency seeking to meet about a number of advertisers, including McDonald's); |
| | AOE Ex. H (Kelly Tr.) at 181:11-17 (confirming she continued to seek business from McDonald's after this lawsuit was filed in May 2021) & 194:3-198:13 (confirming that, in 2021, AMG pitched McDonald's for millions in ad spend for 2022, |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | across its properties, including TWG, ESN, and the Syndicated Programming); |
| | AOE Ex. F (Galatt Tr.) at 116:25-118:12 (confirming ESN was in discussions in December 2019 with Burrell about McDonald's potentially advertising on its syndicated programming in 2020), 272:5-12 (confirming AMG made a $32 million ad proposal to McDonald's in June 2021). |

**D73. Moving Party's Response**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D73 (or the evidence cited in support)—that McDonald's, through its agency, Burrell, notified Darren Galatt that McDonald's would no longer advertise on Entertainment Studios' syndicated programming—is, in fact, disputed. Plaintiffs' unsupported assertion as to "why Plaintiffs continued to pitch after January 2019" is contradicted by record evidence. McDonald's began buying some syndication again in late 2019 and notified AMG sales reps that McDonald's would again consider their syndicated programming, as it had in prior years. *See* Ex. O(63) - ESN0010350 (November 2019 meeting between McDonald's OMD buying team and TWC ad sales representatives during which OMD stated that "McDonald's had stopped purchasing Syndication but **just began again**, and Burell in Chicago will continue to keep that relationship.") (emphasis in original)

| D74. Byron Allen believed McDonald's late 2018/early 2019 decision to cease advertising on AMG's media properties was racially discriminatory.<br><br>*Evidence:*<br>Ex. I - Allen Tr. 308:8-309:2;<br><br>Ex. O(53) - Burrell_0008194 (2/6/2019 call between Burrell and Darren Galatt) | Undisputed. |
| D75. Prior to AMG's acquisition of Weather Group in 2018, Weather Group sales representatives asked McDonald's to purchase advertising on TWC.<br><br>*Evidence:*<br>Ex. G - Bekkedahl Tr. 37:25-39:8; 40:16-19; 43:11-17; 228:3-22; 48:14-15;<br><br>Ex. O(82) - ESN0018661 (2016 pitch to OMD); | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *See also* Ex. F - Galatt Tr. 23:24-24:1 | |
| D76. Prior to AMG's acquisition of Weather Group in 2018, McDonald's did not purchase advertising on TWC.<br><br>*Evidence:*<br>Ex. O(54) - ESN0029493 (no McDonald's spending for at least a decade prior to May 2021);<br><br>Ex. G - Bekkedahl Tr. 34:12-35:15; 37:25-38:10; 38:16-39:8; 43:11-17; 228:3-22; 48:14-15;<br><br>Ex. F - Galatt Tr. 23:24-24:1 | Undisputed. |
| D77. TWC does not index well with McDonald's customers.<br><br>*Evidence:*<br>Ex. G - Bekkedahl Tr. 97:3-25 (according to data tool TV Essentials, "TWC has a low index with McDonald's in the restaurant category");<br><br>Ex. O(55) - ESN0019112 ("we [i.e., TWC] are last among our lifestyle net competitors and we would be last among top networks with McDonald's advertising.") | Disputed. McDonald's customers include the demographic audience of The Weather Channel. The median age of the audiences for CNN, MSNBC, and HLN are comparable to The Weather Channel.<br><br>*Evidence:*<br>AOE Ex. EEE (Restivo Decl.) at Ex. 3 |
| D77. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited evidence does not support their claim that the fact asserted by McDonald's in D77 (or the evidence cited in support) is, in fact, disputed. | |
| D78. TWC audience skews much older than McDonald's desired buying demographic of A18-49.<br><br>*Evidence:*<br>Ex. P(26) - McD_ESN00002176 (2177, 2180) (chart showing only 17% of the TWC's viewers in Q4 2020 were under the age of 34, with OMD noting "[t]he biggest reason for [TWC] not making plans now is the age of their audience. 62% of their viewership is made up of AD55+. Our buying audience of 18-49 is only 17% of their audience.");<br><br>Ex. R(1) (Hanssens Expert Report ¶37) ("Plaintiffs state [in their opposition to McDonald's motion to dismiss, February 3, 2022, at 11] that 'over 75% of [TWC's] audience is age 50 or older.'") | Disputed. TWC's audience does not skew "much" older than the demographic of A18-49. The median age of the audiences for CNN, MSNBC, and HLN are comparable to The Weather Channel.<br><br>*Evidence:*<br>AOE Ex. EEE (Restivo Decl.) at Ex. 3. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| **D78. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited evidence does not support their claim that the fact asserted by McDonald's in D78 (or the evidence cited in support) is, in fact, disputed. | |
| D79. TWC's Nielsen ratings have declined every year since 2018, including in the A18-49 audience demographic.<br><br>*Evidence:*<br>Ex. O(61) - ESN0044554 (Plaintiffs' produced ratings data);<br><br>Ex. O(7) at ¶93 (Nielsen Complaint alleging "with the rise of streaming, viewership for The Weather Channel, like other TV networks, has eroded.");<br><br>Ex. O(60) - ESN0003806 (Plaintiffs' July 2020 internal email re: "Byron, Ratings continue to decline at TWC. We should brainstorm ways to improve ratings.");<br><br>Ex. G - Bekkedahl Tr. 70:1-15 (testifying that TWC ratings were declining in 2020 and continued to decline throughout 2021);<br><br>*See also* Ex. O(56) ( "**Byron Allen:** The comedian-turned-mogul bought the Weather Channel earlier this year for $300 million, just as the network—which had seen its ratings grow by 14 percent in 2017—dropped back down by 20 percent. (This, despite a seemingly non-stop barrage of weather news.)");<br><br>Ex. O(57) (5% ratings decline in 2019);<br><br>Ex. O(58) (5% ratings decline in 2020) | Disputed. The ratings differ year to year and vary during the year.<br><br>*Evidence:*<br>AOE Ex. I (Allen Tr.) at 155:24 – 156:5. |
| **D79. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D79 (or the evidence cited in support) is, in fact, disputed. *See cited* Ex. I (Allen Tr.) at 155:24 – 156:5 (discussing only that Weather Channel ratings spiked during Hurricane Ian). | |
| D80. TWC's ratings are unpredictable and volatile, spiking during extreme weather events.<br><br>*Evidence:*<br>Ex. R(1) (Hanssens Expert Report ¶¶55-57);<br><br>Ex. I - Allen Tr. 155:24-156:5 | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D81. Volatility in a network's or program's ratings is undesirable from an advertiser's perspective.<br><br>*Evidence:*<br>Ex. R(1) (Hanssens Expert Report ¶58) | Disputed. The Weather Channel is a desirable media property for an advertiser.<br><br>*Evidence:*<br>AOE Ex. FFF (Nunan Decl.) at Ex. 2 (Nunan Report).<br><br>AOE Ex. BBB(8) (spreadsheet reflecting hundreds of millions spent on Plaintiffs' properties by top advertisers in the world, including on The Weather Channel). |
| D81. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D81 (or the evidence cited in support) is, in fact, disputed. | |
| D82. McDonald's brand safety guidelines do not align with purchasing advertising on TWC during tragic news, such as extreme weather events.<br><br>*Evidence:*<br>Ex. P(9) - McD_ESN00016876 ("McDonald's advertising cannot be in the same environment as: News Content");<br><br>Ex. C - Feldman Tr. 86:21-24 ("we would also have positioning guidelines that the agency would issue to the networks that would state for us not to be around, kind of, tragedy, if you will, news.")<br><br>Ex. R(1) (Hanssens Expert Report ¶57) (extreme weather events "can be tragic an cause loss of human lives and significant destruction to property. Hurricane Ian—the example used by Mr. Allen during his deposition—caused over $100 billion in property damage and nearly 150 deaths in Florida. Advertising alongside such tragic or negative news content is inconsistent with McDonald's advertising policy.") | Disputed. McDonald's advertised on CNN, MSNBC, HLN and Fox News during the relevant period.<br><br>*Evidence:*<br>AOE Ex. KK (McD_ESN00005702) (reflecting that McDonald's spent on CNN, MSNBC, and HLN in 2018);<br><br>AOE Ex. NN (McD_ESN00005799) (same);<br><br>AOE Ex. OO (McD_ESN00005803) (same);<br><br>AOE Ex. PP (McD_ESN0005986) (same);<br><br>AOE Ex. QQ (McD_ESN00006002) (same);<br><br>AOE Ex. FFF (Nunan Decl.) at ¶¶20-23 Ex. 2. |
| D82. Moving Party's Response | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted in D82 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertion that "McDonald's advertised on CNN, MSNBC, HLN and Fox News during the relevant period" is unsupported by record evidence. Non-party McDonald's Corporation, through its Communications group, occasionally funds purchases of separate, non-product, corporate-reputation advertising campaigns out of its corporate budget, which is separate from the national advertising budget approved by OPNAD. *See* Ex. A - Mason Tr. 116:10-22; 141:3- 142:6; Ex. D - Carroll Tr. 89:6-90:6; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. C - Feldman Tr. 84:4-15; 84:23-86:4. These corporate-reputation campaigns occasionally placed non-product, non-OPNAD funded advertisements on CNN, HLN, and MSNBC as part of targeted, corporately-funded, brand image campaigns designed to reach specific audiences and which were careful to avoid controversial content. *See* Ex. P(31) - McD_ESN00011302 (considering brand safety concerns re: running across cable news even for corporate campaign); Ex. L - OMD 30(b)(6) Tr. 66:5-67:2; Ex. C - Feldman Tr. 83:9-84:14; 84:23-85:16; 85:21-86:4; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. P(27) - McD_ESN00012918 (explanation for 2020 "good employer" corporate campaign); Ex. P(28) - McD_ESN00010102 (2020 campaign to reach "news-engaged opinion elites"); Ex. P(29) - McD_ESN00012936 (explanation for corporate scatter campaign); Ex. P(30) - McD_ESN00010092(10094) (2020 campaign to reach "news-engaged opinion elites"); Ex. P(32) - McD_ESN00006421 (2018 corporate campaign targeting "Opinion Influencers"); Ex. P(33) - McD_ESN00005085 (cable news networks index high for "Opinion Leaders"); Ex. P(34) - McD_ESN00004516(4524) (2016 Brand Reputation strategy). | |
| D83. TWC has lower Nielsen ratings than CNN.<br><br>*Evidence:*<br>Ex. I - Allen Tr. 171:20-172:13;<br><br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3);<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article);<br><br>Ex. G - Bekkedahl Tr. 238:14-21 | Disputed. This fact is submitted by McDonald's to argue that CNN is not similarly situated with TWC, and that ratings were a legitimate reason why McDonald's did not advertise. TWC is similarly situated with CNN. The content and media environment are similar, and the median ages of the audiences are similar. McDonald's passed over TWC for CNN.<br><br>*Evidence*:<br>AOE Ex. X (Hanssens Depo.) at 145:17-146:1, 220:4-6;<br><br>AOE Ex. W (Blasius Depo.) at 103:10-14;<br><br>AOE Ex._FFF (Nunan Decl.) at ¶¶ 2-3, 12-22, 26 & Ex. 2;<br><br>AOE Ex. EEE (Restivo Decl.) at Ex. 3. |
| D83. Moving Party's Response | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D83 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "McDonald's passed over TWC for CNN," that "[t]he content and media environment are the same," or that CNN and TWC are "similarly situated" are contradicted by record evidence. *See* Ex. Q(1) – Blasius Report and Ex. Q(2) – Blasius Rebuttal (discussing in detail why they are *not* similarly situated). Non-party McDonald's Corporation, through its Communications group, occasionally funds purchases of separate, non-product, corporate-reputation advertising campaigns out of its corporate budget, which is separate from the national advertising budget approved by OPNAD. *See* Ex. A - Mason Tr. 116:10-22; 141:3- 142:6; Ex. D - Carroll Tr. 89:6-90:6; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. C - Feldman Tr. 84:4-15; 84:23-86:4. These corporate-reputation campaigns occasionally placed non-product, non-OPNAD funded advertisements on CNN, HLN, and MSNBC as part of targeted, corporately-funded, brand image campaigns designed to reach specific audiences (i.e., politically minded adults) that TWC does not reach. *See* Ex. Q(1) – Blasius Report at ¶¶38-43; Ex. Q(2) – Blasius Rebuttal at ¶¶7-10 ("While CNN or MSNBC may from time to time include weather segments as part of their coverage, viewers do not turn to TWC for 'news' other than weather. The Weather Channel's own website describes its programming as follows: 'With a rich 40 year history, The Weather Channel television network is the top-rated and most trusted weather network in America. From the network's award winning IMR technology that brings viewers closer to weather than ever before to its daily focus on climate news and best-in-class severe weather coverage, nobody covers every angle of weather better than The Weather Channel.' Mr. Nunan admits as much in his report: 'TWC is an award-winning news channel, focused on weather-related news.' TWC is all weather all the time, while CNN and MSNBC are all national *news* all the time, an important and disqualifying distinction."); Ex. P(31) - McD_ESN00011302 (considering brand safety concerns re: running across cable news even for corporate campaign); Ex. L - OMD 30(b)(6) Tr. 66:5-67:2; Ex. C - Feldman Tr. 83:9-84:14; 84:23-85:16; 85:21-86:4; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. P(27) - McD_ESN00012918 (explanation for 2020 "good employer" corporate campaign); Ex. P(28) - McD_ESN00010102 (2020 campaign to reach "news-engaged opinion elites"); Ex. P(29) - McD_ESN00012936 (explanation for corporate scatter campaign); Ex. P(30) - McD_ESN00010092(10094) (2020 campaign to reach "news-engaged opinion elites"); Ex. P(32) - McD_ESN00006421 (2018 corporate campaign targeting "Opinion Influencers"); Ex. P(33) - McD_ESN00005085 (cable news networks index high for "Opinion Leaders"); Ex. P(34) - McD_ESN00004516(4524) (2016 Brand Reputation strategy).

| D84. TWC has lower Nielsen ratings than MSNBC.<br><br>*Evidence:*<br>Ex. I - Allen Tr. 171:20-172:13;<br><br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3);<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article); | Disputed. This fact is submitted by McDonald's to argue that MSNBC is not similarly situated with TWC, and that ratings were a legitimate reason why McDonald's did not advertise. TWC is similarly situated with MSNBC. The content and media environment are similar, and the median ages of the audiences are similar. McDonald's passed over TWC for MSNBC.<br><br>*Evidence*: |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. G - Bekkedahl Tr. 238:14-21 | AOE Ex. X (Hanssens Depo.) at 145:17-146:1, 220:4-6;<br><br>AOE Ex. W (Blasius Depo.) at 103:10-14;<br><br>AOE Ex._FFF (Nunan Decl.) at ¶¶ 2-3, 12-22, 26 & Ex. 2;<br><br>AOE Ex. EEE (Restivo Decl.) at Ex. 3. |

D84. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D84 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "McDonald's passed over TWC for MSNBC," that "[t]he content and media environment are the same," or that MSNBC and TWC are "similarly situated" are contradicted by record evidence. *See* Ex. Q(1) – Blasius Report and Ex. Q(2) – Blasius Rebuttal (discussing in detail why they are *not* similarly situated). Non-party McDonald's Corporation, through its Communications group, occasionally funds purchases of separate, non-product, corporate-reputation advertising campaigns out of its corporate budget, which is separate from the national advertising budget approved by OPNAD. *See* Ex. A - Mason Tr. 116:10-22; 141:3- 142:6; Ex. D - Carroll Tr. 89:6-90:6; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. C - Feldman Tr. 84:4-15; 84:23-86:4. These corporate-reputation campaigns occasionally placed non-product, non-OPNAD funded advertisements on CNN, HLN, and MSNBC as part of targeted, corporately-funded, brand image campaigns designed to reach specific audiences (i.e., politically minded adults) that TWC does not reach. *See* Ex. Q(1) – Blasius Report at ¶¶38-43; Ex. Q(2) – Blasius Rebuttal at ¶¶7-10 ("While CNN or MSNBC may from time to time include weather segments as part of their coverage, viewers do not turn to TWC for 'news' other than weather. The Weather Channel's own website describes its programming as follows: 'With a rich 40 year history, The Weather Channel television network is the top-rated and most trusted weather network in America. From the network's award winning IMR technology that brings viewers closer to weather than ever before to its daily focus on climate news and best-in-class severe weather coverage, nobody covers every angle of weather better than The Weather Channel.' Mr. Nunan admits as much in his report: 'TWC is an award-winning news channel, focused on weather-related news.' TWC is all weather all the time, while CNN and MSNBC are all national *news* all the time, an important and disqualifying distinction."); Ex. P(31) - McD_ESN00011302 (considering brand safety concerns re: running across cable news even for corporate campaign); Ex. L - OMD 30(b)(6) Tr. 66:5-67:2; Ex. C - Feldman Tr. 83:9-84:14; 84:23-85:16; 85:21-86:4; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. P(27) - McD_ESN00012918 (explanation for 2020 "good employer" corporate campaign); Ex. P(28) - McD_ESN00010102 (2020 campaign to reach "news-engaged opinion elites"); Ex. P(29) - McD_ESN00012936 (explanation for corporate scatter campaign); Ex. P(30) - McD_ESN00010092(10094) (2020 campaign to reach "news-engaged opinion elites"); Ex. P(32) - McD_ESN00006421 (2018 corporate campaign targeting "Opinion Influencers"); Ex. P(33) - McD_ESN00005085 (cable news networks index high for "Opinion Leaders"); Ex. P(34) - McD_ESN00004516(4524) (2016 Brand Reputation strategy).

| D85. TWC has lower Nielsen ratings than HLN. | Disputed. This fact is submitted by McDonald's to |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:*<br>Ex. I - Allen Tr. 171:20-172:13 (confirming that all of Plaintiffs' cable networks, including TWC, were lower rated than each of their respective comparator networks identified by Plaintiffs in the Third Amended Complaint);<br><br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) (showing TWC has lower Nielsen ratings than HLN);<br><br>Ex. O(56) (TWC rated lower than HLN in total viewers in 2018);<br><br>Ex. O(57) (TWC rated lower than HLN in total viewers in 2019);<br><br>Ex. O(58) (TWC rated lower than HLN in total viewers in 2020);<br><br>Ex. O(59) (TWC rated lower than HLN in total viewers in 2021);<br><br>Ex. G - Bekkedahl Tr. 238:14-21 (testifying that TWC has lower ratings than all three identified cable news networks, including HLN) | argue that HLN is not similarly situated with TWC, and that ratings were a legitimate reason why McDonald's did not advertise. TWC is similarly situated with HLN. The content and media environment are similar, and the median ages of the audiences are similar. McDonald's passed over TWC for HLN. HLN's ratings are at times lower than ratings for The Weather Channel.<br><br>*Evidence*:<br>AOE Ex. X (Hanssens Depo.) at 145:17-146:1, 220:4-6;<br><br>AOE Ex. W (Blasius Depo.) at 103:10-14;<br><br>AOE Ex._FFF (Nunan Decl.) at ¶¶ 2-3, 12-22, 26 & Ex. 2;<br><br>AOE Ex. EEE (Restivo Decl.) at Ex. 3. |

D85. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D85 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "McDonald's passed over TWC for HLN," that "[t]he content and media environment are the same," or that HLN and TWC are "similarly situated" are unsupported by record evidence. *See* Ex. Q(1) – Blasius Report and Ex. Q(2) – Blasius Rebuttal at ¶¶7-10 ("The look and feel of TWC and its so-called comparators is simply dissimilar from a programming standpoint."). Non-party McDonald's Corporation, through its Communications group, occasionally funds purchases of separate, non-product, corporate-reputation advertising campaigns out of its corporate budget, which is separate from the national advertising budget approved by OPNAD. *See* Ex. A - Mason Tr. 116:10-22; 141:3- 142:6; Ex. D - Carroll Tr. 89:6-90:6; Ex. B - Hamilton Tr. 38:3-6; 106:16-24; Ex. C - Feldman Tr. 84:4-15; 84:23-86:4. These corporate-reputation campaigns occasionally placed non-product, non-OPNAD funded advertisements on CNN, HLN, and MSNBC as part of targeted, corporately-funded, brand image campaigns designed to reach specific audiences (i.e., politically minded adults) that TWC does not reach. *See also* Ex. Q(1) – Blasius Report at ¶¶38-43; Ex. Q(2) – Blasius Rebuttal; Ex. P(31) - McD_ESN00011302 (considering brand safety concerns re: running across cable news even for corporate campaign); Ex. L - OMD 30(b)(6) Tr. 66:5-67:2; Ex. C - Feldman Tr. 83:9-84:14; 84:23-85:16; 85:21-86:4; Ex. B - Hamilton Tr. 38:3-

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 6; 106:16-24; Ex. P(27) - McD_ESN00012918 (explanation for 2020 "good employer" corporate campaign); Ex. P(28) - McD_ESN00010102 (2020 campaign to reach "news-engaged opinion elites"); Ex. P(29) - McD_ESN00012936 (explanation for corporate scatter campaign); Ex. P(30) - McD_ESN00010092(10094) (2020 campaign to reach "news-engaged opinion elites"); Ex. P(32) - McD_ESN00006421 (2018 corporate campaign targeting "Opinion Influencers"); Ex. P(33) - McD_ESN00005085 (cable news networks index high for "Opinion Leaders"); Ex. P(34) - McD_ESN00004516(4524) (2016 Brand Reputation strategy). | |
| D86. In April 2021, in asking that McDonald's advertise on its various media properties, AMG requested that McDonald's change its desired buying demographic of A18-49 to an older audience demographic of A25-54.<br><br>*Evidence:*<br>Ex. O(62) - ESN0002596(2598) (reflecting request to OMG, OMD's holding company);<br><br>Ex. G - Bekkedahl Tr. 220:4-16 | Undisputed. |
| D87. In November 2019, OMD informed AMG ad sales representatives that for the McDonald's GCM advertising plan, it was looking for media partners that had distribution to at least 60 million households.<br><br>*Evidence:*<br>Ex. O(63) - ESN0010350 | Disputed. This fact is asserted to support McDonald's argument that it had legitimate reasons for not contracting. One such reason is a 60 million household reach requirement. McDonald's does not have such a requirement as it advertised on networks with lower reach. And Plaintiffs' properties have a household reach over 60 million.<br><br>*Evidence*:<br>AOE Ex. B (Hamilton Depo. ) at 29:16 – 31:2 (listing the reasons McDonald's did not advertise on the Entertainment Studios lifestyle networks, none of which include a 60 million household requirement);<br><br>AOE Ex. C_(Feldman Depo.) at 41:6-24 (stating she does not even know what networks Plaintiffs own and operate during the time period for which she is a designated |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | 30(b)(6) witness regarding McDonald's decisions not to advertise with Plaintiffs); |
| 4 | | |
| 5 | | AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not tell Entertainment Studios that it had a 60 million household requirement); |
| 6 | | |
| 7 | | |
| 8 | | AOE Ex. X (Hanssens Tr.) at 197:5-11 (confirming that The Weather Channel reaches more than 60 million households and that is not McDonald's reason for refusal to advertise on it); |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | AOE Ex. BBB (Mason Depo. Ex. 17) (January 25, 2019 email from Burrell confirming that they are "constantly asking for feedback from McD's, radio silence."); |
| 13 | | |
| 14 | | |
| 15 | | AOE Ex. FFF (Nunan Decl.) at ¶ 29 (opining that the 60 million household reach requirement is pre-textual given that McDonald's advertised on FUSE and TV ONE from 2018 onwards, neither of which reached 60 million households, and that not having a household reach requirement is consistent with his experience in the industry); |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | AOE Ex. EEE (Restivo Decl.) at Ex. 1) (reflecting the household reach data for FUSE and TV ONE, showing it has been under 60 million during the relevant time period) & Ex. 3 (reflecting McDonald's spend on FUSE and TV ONE during the relevant time period). |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | D87. Moving Party's Response | |
| 28 | Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' | |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|

response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D87 (or the evidence cited in support) is, in fact, disputed. *See* Ex. O(63) - ESN0010350 ("Tina, Amy, and I [TWC ad sales representatives] had a great meeting with the McDonald's buying team at OMD NY" during which OMD told them they were "[l]ooking to buy with networks with a 60MM+ HH minimum."). Plaintiffs' reliance on Ex. FFF – Nunan Declaration for the legal opinion "that the 60 million household reach requirement is pre-textual given that McDonald's advertised on FUSE and TV ONE" is unsupported by record evidence. Fuse and TV One are purchased by McDonald's on its AACM plan, which has a different household viewer requirement than the GCM requirement of 60+ million household reach discussed by OMD above. *See* Ex. M - Burrell 30(B)(6) Tr. 72:5-11 (testifying that for AACM media partners, "they need to reach at least – have at least 35 percent coverage of the African American consumer market, or reach at least 35% of the African American consumer market, and that's at a minimum."). Further, Plaintiffs' own documents show that none of the ESN Lifestyle Networks reach 60M households. *See* Ex. O(2) (AMG Bond Offering at 4):



| Q1 2021 Subscriber Reach[1,2] | | |
|---|---|---|
| JUSTICE CENTRAL.tv | 39M | +64% YoY |
| Comedy.tv | 27M | +64% YoY |
| RECIPE.TV | 30M | +121% YoY |
| Pets.tv | 11M | +66% YoY |
| ES.TV | 7M | +6% YoY |
| (soccer) | 11M | +67% YoY |
| MYDESTINATION.TV | 5M | |

| D88. As of the time of the filing of the complaint, none of the ESN Lifestyle Networks had distribution exceeding 60 million households.<br><br>*Evidence:*<br>Ex. G - Bekkedahl Tr. 226:5-16;<br><br>Ex. O(2) (AMG Bond Offering at 4);<br><br>*See also* Ex. H - Kelly Tr. 72:15-25 | Disputed. This fact is asserted to support McDonald's argument that it had legitimate reasons for not contracting. One such reason is a 60 million household reach requirement. McDonald's does not have such a requirement as it advertised on networks with lower reach. And Plaintiffs' properties have a household reach over 60 million. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | *Evidence*: AOE Ex. B (Hamilton Depo. ) at 29:16 – 31:2; |
| | AOE Ex. C_(Feldman Depo.) at 41:6-24; |
| | AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not tell Entertainment Studios that it had a 60 million household requirement); |
| | AOE Ex._X (Hanssens Tr.) at 197:5-11; |
| | AOE Ex. BBB (Mason Depo. Ex. 17); |
| | AOE Ex._FFF (Nunan Decl.) at ¶ 29; |
| | AOE Ex. EEE (Restivo Decl.) at Ex. 1.). |

D88. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' own documents show that none of the ESN Lifestyle Networks reach 60M households. *See* Ex. O(2) (AMG Bond Offering at 4):



| Q1 2021 Subscriber Reach[1,2] | | |
|---|---|---|
| JUSTICE CENTRAL.tv | 39M | +64% YoY |
| Comedy.tv | 27M | +64% YoY |
| RECIPE.TV | 30M | +121% YoY |
| Pets.tv | 11M | +66% YoY |
| ES.TV | 7M | +6% YoY |
| CARS.TV | 11M | +67% YoY |
| MYDESTINATION.TV | 5M | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *See also* Ex. O(63) - ESN0010350 ("Tina, Amy, and I [TWC ad sales representatives] had a great meeting with the McDonald's buying team at OMD NY" during which OMD told them they were "[l]ooking to buy with networks with a 60MM+ HH minimum."). Plaintiffs' reliance on Ex. FFF – Nunan Declaration for the assertion that "McDonald's does not have such a requirement as it advertised on networks with lower reach," citing AOE Ex. FFF (Nunan Decl.) at ¶ 29, providing legal opinion "that the 60 million household reach requirement is pre-textual given that McDonald's advertised on FUSE and TV ONE" is unsupported by record evidence. Fuse and TV One are purchased by McDonald's on its AACM plan, which has a different household viewer requirement than the GCM requirement of 60+ million household reach discussed by OMD above. *See* Ex. M - Burrell 30(B)(6) Tr. 72:5-11 (testifying that for AACM media partners, "they need to reach at least – have at least 35 percent coverage of the African American consumer market, or reach at least 35% of the African American consumer market, and that's at a minimum."). | |
| D89. None of the ESN Lifestyle Networks were Nielson rated before October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:13-93:23; 109:8-11;<br><br>Ex. O(7) at ¶¶ 45, 53 (Nielsen Complaint) | Undisputed. |
| D90. After becoming Nielson rated on October 1, 2017, the ESN Lifestyle Networks still experienced Nielsen measurement and audience delivery problems.<br><br>*Evidence:*<br>Ex. O(64) - ESN0037325 | Disputed.  These are not "problems."  Audience delivery is an issue that all media companies deal with, including the media companies that McDonald's advertises with.<br><br>*Evidence:*<br>AOE Ex. JJ (Burrell_0010196) (reflecting that the majority of McDonald's media partners have high ADUs but receive millions in ad spend year over year);<br><br>AOE Ex. RR (McD_ESN00007903) (McDonald's 2Q 2018 post-buy analysis reflecting ADUs from the majority of its partners);<br><br>AOE Ex. UU |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | (McD_ESN00010515) (McDonald's 4Q 2019 post-buy analysis reflecting significant ADU percentages, some as high as 51% from partners such as ABC, CBS, NBC, FOX, ESPN, E!, and others); |
| | AOE Ex. XX (McD_ESN00012287) (McDonald's 1Q 2020 post-buy analysis reflecting ADUs from most major media partners, with some as high as 58%); |
| | AOE Ex. LL (McD_ESN00005703) (spreadsheet reflecting ADUs across most media partners from 2016 to 2018); |
| | AOE Ex. MM (McD_ESN00005704) (same); |
| | AOE Ex. SS (McD_ESN00009009) (spreadsheet reflecting ADUs across most media partners from 2018-2020). |
| D90. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D90—i.e., that the *ESN Lifestyle Networks* experienced Nielsen measurement and audience delivery problems—or the evidence cited in support is, in fact, disputed. *See* Ex. O(64) - ESN0037325 ("there have been challenges on the cable side due to measurement and delivery.") | |
| D91. As of the time of the lawsuit, 5 of the 7 ESN Lifestyle Networks – Cars.TV, Recipe.TV, ES.TV, MyDestination.TV, Pets.TV – still did not have enough viewership to generate an individual numerical Nielsen rating.

*Evidence:*
Ex. O(65) - OMD_014109 ("Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).");

Ex. O(66) - OMD_001398 (some AMG properties not measured | Disputed. The networks are rated by Nielsen.

Evidence:
AOE Ex. F (Galatt Tr.) at 85:6-25;

AOE Ex. H (Kelly Tr.) at 18:8-14. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| by Nielsen as of March 2021);<br><br>*See also* Ex. I - Allen Tr. 109:15-17 ("I would agree" that the ESN Lifestyle Networks "are not very highly rated"); 111:23-112:3 (testifying that 5 of the 7 ESN Lifestyle Networks have a combined/cumulative rating) | |
| D91. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony does not support their claim that the fact asserted by McDonald's in D91—that Cars.TV, Recipe.TV, ES.TV, MyDestination.TV, Pets.TV do not generate *individual* ratings—or the evidence cited in support is, in fact, disputed. | |
| D92. Comedy.TV was ranked as either the lowest or second-lowest ad-supported cable network every year from 2018-2021.<br><br>*Evidence:*<br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article);<br><br>Ex. I - Allen Tr. 171:20-172:13. *See also* Ex. I - Allen Tr. 109:15-17;<br><br>Ex. H - Kelly Tr. 68:9-14 | Undisputed. |
| D93. Justice Central.TV has ranked among the lowest 10 ad-supported cable networks every year from 2018-2021.<br><br>*Evidence:*<br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article);<br><br>*See also* Ex. I - Allen Tr. 171:20-172:13; 109:15-17 | Disputed. This fact is submitted in support of McDonald's argument that JusticeCentral.TV is not similarly situated with Oxygen and HLN and that McDonald's had legitimate business reasons for not advertising on the network. This fact concerns ratings on the network. McDonald's did not tell Plaintiffs that low ratings were a reason it refused to advertise on JusticeCentral.TV, and ratings were not the real reason. McD advertised on networks that did not have any ratings at all. Ratings are not a material |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | factor that advertisers consider in determining whether two networks are similar.<br><br>*Evidence*:<br>AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not communicate ratings as an issue);<br><br>AOE Ex. BBB(7) (Mason Depo. Ex. 17) (same);<br><br>AOE Ex. FFF_(Nunan Decl.) at ¶ 26 (ratings were not the real reason McDonald's refused to advertise);<br><br>AOE Ex. B (Hamilton Depo.) at 104:13-16 (McDonald's advertised on unrated networks);<br><br>AOE Ex. FFF (Nunan Decl.) at ¶¶ 20-22 (ratings go to allocation, not similarly situated);<br><br>AOE Ex. _EEE (Restivo Decl. Ex. 3);<br><br>AOE Ex. W (Blasius Depo.) at 70:6-74:20, 75:21 – 76:7 (there is no scientific or generally-accepted formula to determine at what point ratings differences become large enough to render two networks dissimilar). |
| **D93. Moving Party's Response**<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D93 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "ratings were not the real reason," that "McD advertised on networks that did not have any ratings at all, and that "[r]atings are not a material factor that advertisers consider in determining whether two networks are similar" are contradicted by record evidence. *See* Ex. Q(2) at ¶5 | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| (noting that even Plaintiffs' own supposed media expert admitted "it's all about the ratings"; that "ratings are key"; and that "brands care about ratings performance when choosing how and where to spend their advertising budgets."); Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like McDonald's regular media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in a sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."); Ex. A – Mason Tr. 180:8-11 (testifying that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies.) | |
| D94. Pets.TV has lower Nielsen ratings than Animal Planet.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 23);<br><br>Ex. O(65) - OMD_014119 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).");<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article) | Undisputed. |
| D95. Pets.TV was not Nielsen rated prior to October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Undisputed. |
| D96. Comedy.TV has lower Nielsen ratings than Comedy Central.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 19);<br><br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3);<br><br>Ex. O(65) - OMD_014119 (Justice TV is the only AMG cable | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure)."); | |
| Ex. O(56) (2018 Indiewire cable ratings article); | |
| Ex. O(57) (2019 Variety cable ratings article); | |
| Ex. O(58) (2020 Variety cable ratings article); | |
| Ex. O(59) (2021 Variety cable ratings article) | |
| D97. Comedy.TV has lower Nielsen ratings than TruTv.<br><br>*Evidence:*<br>Ex. Q(2) (Blasius Expert Rebuttal Report, Appendix 3);<br><br>Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure)."); <br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article) | Undisputed. |
| D98. Comedy.TV was not Nielsen rated prior to October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Undisputed. |
| D99. Recipe.TV has lower Nielsen ratings than Cooking Channel.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 20);<br><br>Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).");<br><br>Ex. O(56) (2018 Indiewire cable ratings article); | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. O(57) (2019 Variety cable ratings article); | |
| Ex. O(58) (2020 Variety cable ratings article); | |
| Ex. O(59) (2021 Variety cable ratings article) | |
| D100. Recipe.TV has lower Nielsen ratings than Food Network. *Evidence:* Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 20); Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).”); Ex. O(56) (2018 Indiewire cable ratings article); Ex. O(57) (2019 Variety cable ratings article); Ex. O(58) (2020 Variety cable ratings article); Ex. O(59) (2021 Variety cable ratings article) | Undisputed. |
| D101. Recipe.TV was not Nielsen rated prior to October 1, 2017. *Evidence:* Ex. O(5) at Exhibit 2 (ESN contract with Nielsen); Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Undisputed. |
| D102. Cars.TV has lower Nielsen ratings than Motor Trend. *Evidence:* Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 24); Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).”); Ex. O(56) (2018 Indiewire cable ratings article); Ex. O(57) (2019 Variety cable ratings article); Ex. O(58) (2020 Variety cable ratings article); | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. O(59) (2021 Variety cable ratings article) | |
| D103. Cars.TV was not Nielsen rated prior to October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Undisputed. |
| D104. MyDestination.TV has lower Nielsen ratings than Destination America.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 21);<br><br>Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).");<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article) | Undisputed. |
| D105. MyDestination.TV has lower Nielsen ratings than Travel Channel.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 21);<br><br>Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).");<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article) | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| D106. MyDestination.TV was not Nielsen rated prior to October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Undisputed. |
| D107. ES.TV has lower Nielsen ratings than E!.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 22);<br><br>Ex. O(65) - OMD_014109 (Justice TV is the only AMG cable network that pulls a rating. (Ratings of <.01 on the above chart signify delivery too small to measure).");<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article) | Undisputed. |
| D108. ES.TV was not Nielsen rated prior to October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Undisputed. |
| D109. Justice Central.TV has lower Nielsen ratings than Oxygen.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 25);<br><br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | Disputed. This fact is submitted in support of McDonald's argument that JusticeCentral.TV is not similarly situated with Oxygen and HLN and that McDonald's had legitimate business reasons for not advertising on the network. This fact concerns ratings on the network. McDonald's did not tell Plaintiffs that low ratings were a reason it refused to advertise on JusticeCentral.TV, and ratings |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | were not the real reason. McD advertised on networks that did not have any ratings at all. Ratings are not a material factor that advertisers consider in determining whether two networks are similar. |
| | *Evidence*: AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not communicate ratings as an issue); |
| | AOE Ex. BBB(7) (Mason Depo. Ex. 17) (same); |
| | AOE Ex. FFF_(Nunan Decl.) at ¶ 26 (ratings were not the real reason McDonald's refused to advertise); |
| | AOE Ex. B (Hamilton Depo.) at 104:13-16 (McDonald's advertised on unrated networks); |
| | AOE Ex. FFF (Nunan Decl.) at ¶¶ 20-22 (ratings go to allocation, not similarly situated); |
| | AOE Ex. _EEE (Restivo Decl. Ex. 3). |

D109. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D109 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "ratings were not the real reason," that "McD advertised on networks that did not have any ratings at all, and that "[r]atings are not a material factor that advertisers consider in determining whether two networks are similar" are contradicted by record evidence. *See* Ex. Q(2) at ¶5 (noting that even Plaintiffs' own supposed media expert admitted "it's all about the ratings"; that "ratings are key"; and that "brands care about ratings performance when choosing how and where to spend their advertising budgets."); Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| McDonald's regular media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."); Ex. A – Mason Tr. 180:8-11 (testifying that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies.) | |
| D110. Justice Central.TV has lower Nielsen ratings than HLN.<br><br>*Evidence:*<br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 25);<br><br>Ex. O(56) (2018 Indiewire cable ratings article);<br><br>Ex. O(57) (2019 Variety cable ratings article);<br><br>Ex. O(58) (2020 Variety cable ratings article);<br><br>Ex. O(59) (2021 Variety cable ratings article);<br><br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | Disputed.  This fact is submitted in support of McDonald's argument that JusticeCentral.TV is not similarly situated with Oxygen and HLN and that McDonald's had legitimate business reasons for not advertising on the network. This fact concerns ratings on the network.  McDonald's did not tell Plaintiffs that low ratings were a reason it refused to advertise on JusticeCentral.TV, and ratings were not the real reason.  McD advertised on networks that did not have any ratings at all. Ratings are not a material factor that advertisers consider in determining whether two networks are similar.<br><br>*Evidence*:<br>AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not communicate ratings as an issue);<br><br>AOE Ex. BBB(7) (Mason Depo. Ex. 17) (same);<br><br>AOE Ex. FFF_(Nunan Decl.) at ¶ 26 (ratings were not the real reason McDonald's refused to advertise);<br><br>AOE Ex. B (Hamilton Depo.) at 104:13-16 (McDonald's advertised on unrated networks); |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | AOE Ex. FFF (Nunan Decl.) at ¶¶ 20-22 (ratings go to allocation, not similarly situated); |
| | AOE Ex. _EEE (Restivo Decl. Ex. 3). |

**D110. Moving Party's Response**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D110 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "ratings were not the real reason," that "McD advertised on networks that did not have any ratings at all, and that "[r]atings are not a material factor that advertisers consider in determining whether two networks are similar" are contradicted by record evidence. *See* Ex. Q(2) at ¶5 (noting that even Plaintiffs' own supposed media expert admitted "it's all about the ratings"; that "ratings are key"; and that "brands care about ratings performance when choosing how and where to spend their advertising budgets."); Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like McDonald's media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in a sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."); Ex. A – Mason Tr. 180:8-11 (testifying that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies.)

| D111. Justice Central.TV was not Nielsen rated prior to October 1, 2017.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. I - Allen Tr. 92:23-94:10; 109:8-11 | Disputed. This fact is submitted in support of McDonald's argument that JusticeCentral.TV is not similarly situated with Oxygen and HLN and that McDonald's had legitimate business reasons for not advertising on the network. This fact concerns ratings on the network. McDonald's did not tell Plaintiffs that low ratings were a reason it refused to advertise on JusticeCentral.TV, and ratings were not the real reason. McD advertised on networks that did not have any ratings at all. Ratings are not a material factor that advertisers consider in determining whether two |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| | networks are similar. |
| | *Evidence*: AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not communicate ratings as an issue); |
| | AOE Ex. BBB(7) (Mason Depo. Ex. 17) (same); |
| | AOE Ex. FFF_(Nunan Decl.) at ¶ 26 (ratings were not the real reason McDonald's refused to advertise); |
| | AOE Ex. B (Hamilton Depo.) at 104:13-16 (McDonald's advertised on unrated networks); |
| | AOE Ex. FFF (Nunan Decl.) at ¶¶ 20-22 (ratings go to allocation, not similarly situated); |
| | AOE Ex. _EEE (Restivo Decl. Ex. 3). |

D111. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D111 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions that "ratings were not the real reason," that "McD advertised on networks that did not have any ratings at all, and that "[r]atings are not a material factor that advertisers consider in determining whether two networks are similar" are contradicted by record evidence. *See* Ex. Q(2) at ¶5 (noting that even Plaintiffs' own supposed media expert admitted "it's all about the ratings"; that "ratings are key"; and that "brands care about ratings performance when choosing how and where to spend their advertising budgets."); Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like McDonald's regular media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in a sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."); Ex. A – Mason Tr. 180:8-11 (testifying

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies.) | |
| D112. A majority of viewers of the ESN Lifestyle Networks skew older than McDonald's primary target audience of A18-49 (and its subset, adults 18 to 34 years old).<br><br>*Evidence:*<br>Ex. R(1) (Hanssens Expert Report ¶37);<br><br>Ex. Q(1) (Blasius Expert Report ¶¶31-37) | Disputed.  McDonald's spending to advertise on cable television is not based on a target audience of A18-49. McDonald's spends over $100 million annually advertising in cable television.  Younger audiences are nearly impossible to reach through cable television, which is why the overwhelming majority of networks that McDonald's advertises on has a median age over 35.<br><br>*Evidence*:<br><br>Ex. FFF(1) (Nunan Report) (younger audiences are nearly impossible to reach for all cable networks, even those that specifically target young audiences);<br><br>Ex. EEE (Restive Decl.) at Exs. 2-3 (showing the median ages of networks that McDonald's advertises on). |
| D112. Moving Party's Response<br><br>Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D112 (or the evidence cited in support) is, in fact, disputed. Plaintiffs conflate age demographics with median age, which are two distinct concepts. *See* Ex. Q(2) at ¶6 (noting that median age "is not a substitute for analysis of audience size, composition and skew as detailed by Nielsen…[i]n fact, the value of median age as a data point has diminished over time as linear TV has increasingly skewed older."). Plaintiffs' unsupported assertion that "McDonald's spending to advertise on cable television is not based on a target audience of A18-49" is contradicted by the record evidence. *See* Ex. O(19) - Burrell_0008646(8648, 8669-70) (2021-2022 Upfront Recommendation discussing strategic objectives, which included "ensuring 18-49 demo guarantee in linear" and ensuring "[m]echanisms for meeting guarantees agrees in deal terms"); Ex. L - OMD 30(b)(6) Tr. 77:11-18 (McDonald's target demographic "was always adults 18 to 49 and Gen Z, which would be a subset of 18 to 49 but on the younger side of that"); Ex. I - Allen Tr. 127:22-128:4 (McDonald's requiring delivery of adults 18-49 "sounds right to me"); Ex. P(52) - McD_ESN00008188(8208) (2019 Partner Recommendation slide deck noting selection criteria including "audiences that align with targets on Blueprints and A1849 guarantees"); Ex. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| R(1) (Hanssens Expert Report ¶42) (noting McDonald's buying requirements and guarantees on the adults 18 to 49 demo) | |
| D113. For the 2020/2021 broadcast year, Comedy.TV delivered less than one percent of the A18-49 audience of Comedy Central, a 0.0002 vs. a 0.0973.<br><br>*Evidence:*<br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | Undisputed. |
| D114. In terms of actual viewers within the A18-49 audience, for the 2020/2021 broadcast year, Comedy.TV had only 266 viewers compared to Comedy Central's 125,976 viewers, a difference of 47,359%.<br><br>*Evidence:*<br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | Undisputed. |
| D115. For the 2020/2021 broadcast year, Comedy.TV delivered less than one percent of the A18-49 audience of TruTV, a 0.0002 vs. 0.0445.<br><br>*Evidence:*<br>Ex. Q(2) (Blasius Expert Rebuttal Report, Appendix 3) | Undisputed. |
| D116. In terms of actual viewers within the A18-49 audience, for the 2020/2021 broadcast year, Comedy.TV had only 266 viewers compared to Comedy Central's 57,554 viewers, a difference of 21,637%.<br><br>*Evidence:*<br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | Undisputed. |
| D117. For the 2020/2021 broadcast year, Justice Central.TV delivered an A18-49 rating of 0.0008, compared to HLN's delivery of 0.0387 and Oxygen's delivery of 0.0358.<br><br>*Evidence:*<br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | Undisputed. |
| D118. In terms of actual viewers within the A18-49 audience, for the 2020/2021 broadcast year, Justice Central.TV had 1,073 viewers compared to HLN's 50,093 viewers and Oxygen's 46,375, a difference of 4,668% and 4,322%, respectively. | Disputed. This fact is submitted in support of McDonald's argument that JusticeCentral.TV is not similarly situated with Oxygen and HLN and that |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:*<br>Ex. Q(1) (Blasius Expert Report, Amended Appendix 3) | McDonald's had legitimate business reasons for not advertising on the network. This fact concerns ratings on the network. McDonald's did not tell Plaintiffs that low ratings were a reason it refused to advertise on JusticeCentral.TV, and ratings were not the real reason. McD advertised on networks that did not have any ratings at all. Ratings are not a material factor that advertisers consider in determining whether two networks are similar.<br><br>*Evidence*:<br>AOE Ex. H (Kelly Depo.) at 137:21-25 (McDonald's did not communicate ratings as an issue);<br><br>AOE Ex. BBB(7) (Mason Depo. Ex. 17) (same);<br><br>AOE Ex. FFF_(Nunan Decl.) at ¶ 26 (ratings were not the real reason McDonald's refused to advertise);<br><br>AOE Ex. B (Hamilton Depo.) at 104:13-16 (McDonald's advertised on unrated networks);<br><br>AOE Ex. FFF (Nunan Decl.) at ¶¶ 20-22 (ratings go to allocation, not similarly situated);<br><br>AOE Ex. _EEE (Restivo Decl. Ex. 3). |

D118. Moving Party's Response

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs' response and cited testimony and evidence does not support their claim that the fact asserted by McDonald's in D118 (or the evidence cited in support) is, in fact, disputed. Plaintiffs' assertions

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| that "ratings were not the real reason," that "McD advertised on networks that did not have any ratings at all, and that "[r]atings are not a material factor that advertisers consider in determining whether two networks are similar" are contradicted by record evidence. *See* Ex. Q(2) at ¶5 (noting that even Plaintiffs' own supposed media expert admitted "it's all about the ratings"; that "ratings are key"; and that "brands care about ratings performance when choosing how and where to spend their advertising budgets."); Ex. B - Hamilton 120:21-121:11 (testifying that in addition to media buys that require audience delivery guarantees based on ratings, McDonald's also enters into sponsorships with certain partners that do not always have ratings guarantees like McDonald's regular media buys); 122:20-123:3 (testifying that the work being done with Black-owned Revolt "is more in a sponsorship category"); *id.* at 104:23-25 (noting that "the majority of our buy [with Black-owned Revolt] is on digital and we are able to guarantee our impressions and the delivery of those impressions by audience segment."); Ex. A – Mason Tr. 180:8-11 (testifying that McDonald's "also started relaxing some of our requirements around measurement knowing that that was an industry barrier" to some minority-owned companies.) | |
| D119. Pursuant to ESN's contract with Nielsen, 5 of the 7 ESN Lifestyle Networks – Cars.TV, ES.TV, MyDestination.TV, Recipe.TV, and Pets.TV – are Nielsen rated only on a cumulative basis.<br><br>*Evidence:*<br>Ex. O(5) at Exhibit 2 (ESN contract with Nielsen);<br><br>Ex. K - Restivo Tr. 93:21-94:3;<br><br>Ex. I - Allen Tr. 95:23-96:3 | Undisputed. |
| D120. After becoming Nielson rated on October 1, 2017, in 2018, only approximately 10% of the advertising spending on the ESN Lifestyle Networks was made through advertising agencies on account of national advertisers like McDonald's.<br><br>*Evidence:*<br>Ex. H - Kelly Tr. 16:7-16 | Undisputed. |
| D121. Only one other OMD client purchased advertising from the ESN Lifestyle Networks in 2021.<br><br>*Evidence:*<br>Ex. O(68) - OMD_014053(14058) | Undisputed. |
| D122. McDonald's did not purchase advertising on Animal Planet in 2018, 2019, 2020, or 2021. | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence:*<br>Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);<br><br>Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);<br><br>Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending);<br><br>Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | |
| D123. McDonald's did not purchase advertising on Cooking Channel from 2015-2022.<br><br>*Evidence:*<br>Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);<br><br>Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);<br><br>Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending);<br><br>Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| by "GCM Cable") (2020/21 and 2021/22 vendor spending) | |
| D124. McDonald's did not purchase advertising on Destination America from 2015-2022.

*Evidence:*
Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);

Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);

Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending);

Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);

Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);

Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending);

Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);

Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | Undisputed. |
| D125. McDonald's did not purchase advertising on E! in 2022.

*Evidence:*
Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);

Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);

Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending);

Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);

Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);

Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| (2018/19 and 2019/2020 vendor spending);<br><br>Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | |
| D126. McDonald's did not purchase advertising on Food Network in 2017, 2018, 2019, or 2022.<br><br>*Evidence:*<br>Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);<br><br>Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);<br><br>Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending);<br><br>Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | Undisputed. |
| D127. McDonald's did not purchase advertising on Motor Trend from 2015-2022.<br><br>*Evidence:*<br>Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);<br><br>Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);<br><br>Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending); | Undisputed. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | |
| D128. McDonald's did not purchase advertising on Travel Channel from 2015-2020 or in 2022.<br><br>*Evidence:*<br>Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending);<br><br>Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending);<br><br>Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending);<br><br>Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending);<br><br>Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending);<br><br>Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | Undisputed. |
| D129. McDonald's did not purchase advertising on Oxygen from 2015-2017 or in 2022.<br><br>*Evidence:*<br>Ex. P(35) - McD_ESN00002448(2463) (2014/15 vendor spending); | Undisputed. |

| | Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1 2 | | |
| 3 4 | Ex. P(36) - McD_ESN00002661 (cable tab) (2014/15 vendor spending); | |
| 5 | Ex. P(37) - McD_ESN00004108(4124) (2015/16 vendor spending); | |
| 6 7 | Ex. P(38) - McD_ESN00005798 (Cable tab) (2016/17 and 2017/18 vendor spending); | |
| 8 | Ex. P(39) - McD_ESN00005246 (Cable Summary tab) (2016/17 and 2017/18 vendor spending); | |
| 9 10 | Ex. P(40) - McD_ESN00009590 (Vendor Spend Chart tab) (2018/19 and 2019/2020 vendor spending); | |
| 11 | Ex. P(41) - McD_ESN00008053(8059, 8091) (2018/19 and 2019/2020 vendor spending); | |
| 12 13 | Ex. O(69) - Burrell_0008431 (filter Segment/Daypart column by "GCM Cable") (2020/21 and 2021/22 vendor spending) | |
| 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | D130. After evaluation in late 2020/early 2021, OMD and Burrell determined none of AMG's linear offerings (syndicated properties, TWC, or ESN Lifestyle Networks) "matche[d] for McDonald's" and did not recommend that McDonald's advertise on those properties.<br><br>*Evidence:*<br>Ex. L - OMD 30(b)(6) Tr. 114:8-115:3 ("the Entertainment Studios properties and the Weather Channel were not matches for McDonald's…"); 116:19-117:11 ("Q: …do you have a – an opinion on whether or not [AMG's $32 million ask that was made of McDonald's] would have been a reasonable level of investment for McDonald's? A: Yes. The answer was – was no. That's why we didn't make that recommendation.");<br><br>Ex. M - Burrell 30(b)(6) Tr. 126:5-13 ("no, based on the current ratings and audience composition for The Weather Channel, it would not align with [McDonald's] audience, target audience.");<br><br>Ex. P(46) - McD_ESN00002136 (AMG submitted presentation in December 2020);<br><br>Ex. P(47) - McD_ESN00002118 (Burrell follow up after December 2020 AMG presentation);<br><br>*See also* O(65) - OMD_014109 (OMD evaluated AMG properties in 2021 and recommended against investment to another client because their ratings were low to nonexistent, even in a demographic *older* than McDonald's target | Disputed. McDonald's relies on inadmissible hearsay. Fed. R. Evid. 802. Entertainment Studios' programming was not evaluated for *McDonald's* general market budget. McDonald's relies on OMD documents where it evaluates programming for *other advertisers* who have different criteria. McDonald's was not OMD's only client.<br><br>*Evidence:*<br>AOE Ex. M (Hodge Tr.) at 12:1-8, 53:4-54:24.<br><br>AOE Ex. F (Darren Galatt Depo.) at 179:5-21, 184:13-185:6;<br><br>AOE Ex. L (Calabrese Tr.) at 66:13-17. |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| demographic) | |

**D130. Moving Party's Response.**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Plaintiffs isolate one cited piece of evidence, O(65) - OMD_014109 (in which OMD evaluated AMG properties in 2021 and recommended against investment to another client because their ratings were low to nonexistent, even in a demographic *older* than McDonald's target demographic) and fails to address the remainder of McDonald's cited evidence supporting the fact asserted in D130. *See, e.g.,* Ex. L - OMD 30(b)(6) Tr. 114:8-115:3 ("the Entertainment Studios properties and the Weather Channel *were not matches for McDonald's*…") (emphasis added); 116:19-117:11 ("Q: …do you have a – an opinion on whether or not [AMG's $32 million ask that was made of McDonald's] would have been a reasonable level of investment for McDonald's? A: Yes. The answer was – was no. ***That's why we didn't make that recommendation***.") (emphasis added)

| D131. However, in 2021, OMD purchased advertising on ESN-owned digital property, theGrio, and Weather Group-owned digital property, Local Now, on behalf of McDonald's.<br><br>*Evidence:*<br>Ex. O(70) - ESN0010119(10121,10125) (reflecting 2021 OMD/McDonald's spending on theGrio and Local Now);<br><br>Ex. P(48) - McD_ESN00002282 (theGrio buy was live by May 7, 2021);<br><br>Ex. P(49) - McD_ESN00021870 (McDonald's partner allocations to theGrio and Local Now - DEI tab);<br><br>Ex. P(6) - McD_ESN00021595(21616) (added theGrio as a "DEI partner");<br><br>Ex. F - Galatt Tr. 144:13-21;<br><br>Ex. O(71) - ESN0029459(460) (McDonald's ordering advertising from AMG in 2021);<br><br>Ex. O(25) - ESN0018191 (4.14.21 tab);<br><br>Ex. P(50) - McD_ESN00002274;<br><br>Ex. P(6) - McD_ESN00021595(21602);<br><br>Ex. O(67) (November 22, 2022 ESN and Weather Response to Request for Admission No. 6) | Disputed. McDonald's cites this as "favorable" treatment but McDonald's only agreed to spend nominal amounts to advertise on some of Plaintiffs' properties after receiving notice of Plaintiffs' claims and to improve McDonald's litigation position. One of McDonald's agency representatives, Patrick Olson, admitted in internal e-mail correspondence that the spending was to "calm Byron Allen down."<br><br>*Evidence*:<br>AOE Ex. Ex. CC (Mason Depo. Ex. 16) (P. Olson e-mail);<br><br>AOE Ex. AAA_(Schecter Decl.) at ¶ 2 & Ex. 1. (notice of claim letter). |

**D131. Moving Party's Response.**

Plaintiffs' response is insufficient to create a genuine disputed issue of material fact. Ex. A - Mason Tr. 180:17-23; 182:1-7 (testifying that Burrell employee Patrick Olson was offering his

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| own opinion, not McDonald's opinion, and that McDonald's did not spend $100,000 to advertise on TheGrio in 2021 to "calm Byron Allen down," but instead that McDonald's historically advertised on TheGrio and started advertising again in 2021 because "it aligned when we made the commitments to increase our spend [with minority owned media]. I also believe it is the time when [TheGrio's] viewership, their ratings started to reverse the declines."). | |

Dated: September 11, 2023

By: _____ /s/ *Amy Andrews* _____

John C. Hueston (SBN 164921)
Moez M. Kaba (SBN 257456)
Michael Todisco (SBN 315814)
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
jhueston@hueston.com
mkaba@hueston.com
mtodisco@hueston.com

Patricia Brown Holmes (*pro hac vice*)
Amy Andrews (*pro hac vice*)
Shalem Massey (SBN 143281)
Jennifer Steeve (SBN 308082)
RILEY SAFER HOLMES & CANCILA LLP
100 Spectrum Center Drive, Suite 440
Irvine, CA 92618
smassey@rshc-law.com
jsteeve@rshc-law.com
Telephone: (949) 359-5515
Facsimile: (949) 359-5501

Loretta E. Lynch (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
lelynch@paulweiss.com

*Attorneys for Defendant McDonald's USA, LLC*

1

2

Dated: September 11, 2023                    By:    /s/ David W. Schecter

3                                                        LOUIS R. MILLER (State Bar No. 54141)
                                                        DAVID W. SCHECTER (State Bar No. 296251)
4                                                        MILLER BARONDESS, LLP
                                                        1999 Avenue of the Stars, Suite 1000
5                                                        Los Angeles, California 90067
                                                        smiller@millerbarondess.com
6                                                        dschecter@millerbarondess.com
                                                        Telephone: (310) 552-4400
7                                                        Facsimile: (310) 552-8400

8                                                        *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28