1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11 | ENTERTAINMENT STUDIOS

NETWORKS, INC., *et al.*,

12

13                    Plaintiffs,

14            v.

15 | McDONALD'S USA, LLC,

16

17                    Defendant.

18

19

20

21

Case No. 2: 21-CV-04972-FMO-MAAx

**ORDER GRANTING IN PART AND DENYING IN PART NON-PARTIES McDONALD'S CORPORATION'S AND CHRISTOPHER KEMPCZINSKI'S MOTION TO PREVENT ENFORCEMENT OF RULE 45 SUBPOENA AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' CROSS-MOTION TO COMPEL DISCOVERY (ECF NO. 172-1, 172-4)**

22 ## I.    INTRODUCTION

23        Before the Court are cross-motions regarding a Rule 45 Subpoena.  First is

24 the Motion of Non-Parties McDonald's Corporation and Christopher Kempczinski

25 to Prevent Enforcement of Rule 45 Subpoena ("Motion").[1]  (Mot., ECF No. 172-1.)

26 _____

27 [1] The Motion and related filings were presented first to the Northern District of

Illinois, the district where compliance with the subpoena is required; that court

28 transferred the Motion back to the Central District of California, the court where the

The Motion was filed jointly by Non-Parties McDonald's Corporation ("McDonald's Corp.") and Christopher Kempczinski ("Mr. Kempczinski") (together, "Non-Parties" or "N-Ps"). Through the Motion, Non-Parties seek a protective order preventing enforcement of the subpoena, specifically: (1) the deposition of McDonald's Corp.'s Chief Executive Officer Mr. Kempczinski and (2) the production of six months of text messages between Mr. Kempczinski and Chicago Mayor Lori Lightfoot. (*See generally* Motion.) In support of the Motion, Non-Parties filed the Declaration of Amy C. Andrews ("Andrews Declaration") (Andrews Decl., ECF No. 172-3), and its accompanying Exhibits 1 through 17 (N-Ps' Exs. 1–17, ECF No. 172-3 at 11–225).[2]

Plaintiffs Entertainment Studios Networks, Inc. ("ESN") and Weather Group, LLC ("WG") ("together, "Plaintiffs") oppose the Motion, as part of which is included a cross-motion to compel Non-Parties to comply with the subpoena ("Opposition," "Cross-Motion"). (Opp'n., ECF No. 172-4.) In support of their Opposition, Plaintiffs filed Exhibits 1 and 2 (Pls' Ex. 1–2, ECF No. 172-5 at 1–44) and, as Plaintiffs' Exhibit 3, the Declaration of David W. Schechter ("Schechter Declaration") (Schechter Decl., ECF No. 172-5 at 45–53) and its accompanying Exhibits A through M (Pls' Exs. A–M, ECF No. 172-5 at 55–203).

Non-Parties filed a reply on the Motion, as part of which is included an opposition to Plaintiffs' Cross-Motion ("Reply"). (Reply, ECF No. 172-6.) In

_____

underlying case is pending and that issued the subpoena pursuant to Federal Rule of Civil Procedure ("Rule") 45(f). (ECF No. 172-9 at 2–4.) Upon request of the parties, and in the interest of efficiency, the undersigned Magistrate Judge allowed the parties to re-file the briefing on the motion as presented to the Northern District of Illinois without restructuring it to satisfy the joint stipulation format requirement of Central District of California Local Civil Rule ("Local Rule") 37. (ECF No. 172 at 4.)

[2] Pinpoint citations in this Order refer to paragraphs and, where none, to the page numbers appearing in the ECF-generated headers of cited documents.

support of the Reply, Non-Parties filed the Supplemental Declaration of Amy C. Andrews ("Andrews Supplemental Declaration") (Andrews Supp. Decl., ECF No. 172-7 at 1–4) and its accompanying Exhibits A through F (N-Ps' Supp. Exs. A–F, ECF No. 172-7 at 5–99).

Having read and considered the papers submitted by the parties, the Court finds the Motion suitable for disposition without a hearing. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the hearing set for April 11, 2025 is hereby **VACATED** and taken off calendar. For the reasons set forth below, Non-Parties' Motion is **GRANTED in part** and **DENIED in part** and Plaintiffs' Cross-Motion is **GRANTED in part** and **DENIED** in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background[3]

#### 1.    The Lawsuit

This is a race discrimination action brought against McDonald's USA, LLC ("McDonald's USA")[4] pursuant to 42 U.S.C. § 1981 and California's comparable Civil Rights statute, the California Unruh Act, California Civil Code section 51 *et seq.*, proceeding on the basis of Plaintiffs' Third Amended Complaint ("TAC"). (TAC, ECF No. 45.) ESN—a producer of television programs distributed via broadcast syndication— and WG—parent company of The Weather Channel—are companies owned solely by Byron Allen, an African American media entrepreneur.

---

[3] The Court summarizes the allegations and claims in the TAC and the exhibits in support of the Joint Stipulation. In doing so, the Court neither opines on the veracity or merit of the parties' allegations and claims nor makes any findings of fact.

[4] Originally, the lawsuit was brought against McDonald's Corp., but McDonald's USA was substituted in for McDonald's Corp. per the parties' December 10, 2021 stipulation that McDonald's USA is the proper defendant. (ECF No. 41.)

(*Id.* at ¶¶ 10, 36–37, 45–47.)   These companies, their networks, and their programs do "not specifically target any particular demographic group as the core audience" and, as a result, enjoy "general audience appeal." (*Id.* at ¶ 40.)

According to Plaintiffs, McDonald's USA "employs a 'tiered' structure for advertising spending that explicitly differentiates on the basis of race." (*Id.* at ¶ 54.) Specifically, McDonald's USA "contracts with a general market advertising agency . . . to allocate McDonald's annual advertising budget" for "white-owned media companies." (*Id.*) In contrast, for "African American media," McDonald's USA contracts with another advertising agency to allocate an advertising budget that is "*de minimis*" when "compared to the general market budget." (*Id.* at ¶ 55.)

The gist of Plaintiffs' lawsuit is that the African American tier for McDonald's USA's advertising spend "is less favorable than the general market tier." (*Id.* at ¶ 56.) Plaintiffs allege that, out of the $1.6 billion in McDonald's USA's 2019 advertising spend, less than $5 million was allocated to African American-owned media companies. (*Id.* at ¶ 49.) Plaintiffs claim that, because McDonald's USA "stereotyped the entire company as an African American media company," Plaintiffs were "shut out of the general market tier and forced to bid for advertising in the less favorable African American tier." (*Id.* at ¶ 58.) Plaintiffs aver that this discriminatory treatment reflects McDonald's USA's "long and troubled history with racial discrimination directed towards African Americans," which corporate culture continues to exist today, as evidenced by: (1) a text exchange between McDonald's CEO, Mr. Kempczinski, and Chicago Mayor Lori Lightfoot, in which Mr. Kempczinski places blame for the shooting of an African American girl, and separately a Hispanic boy, both in McDonald's parking lots, on the children's parents ("Lightfoot Texts") (*id.* at ¶¶ 2–4); (2) the demand by a pension fund for an independent audit into McDonald's USA's treatment of African American employees, executives, suppliers, franchisees, and vendors ("Audit") (*id.* at ¶ 5); (3) the allegations in a lawsuit entitled *Victoria Guster-Hines, et al. v.*

*McDonald's USA LLC, et al.*, filed in the Northern District of Illinois under case number 1:20-cv-00117) ("*Guster-Hines* Lawsuit"), that, when asked by certain executives about the lack of African American representation in senior management, Mr. Kempczinski responded that the "numbers [of African Americans] do not matter," and referred to the executives as "Angry Black Women" ("*Guster-Hines* Statements") (*id.* at ¶ 6); (4) the allegations of discriminatory franchise practices in a lawsuit entitled *Christine Crawford, et al. v. McDonald's USA, LLC, et al.*, filed in the Northern District of Illinois under case number 1:20-cv-05132 ("*Crawford* Lawsuit") (*id.* at ¶ 7); (5) the allegations of discriminatory franchise practices in a lawsuit entitled *Washington v. McDonald's USA LLC*, filed in the Northern District of Ohio under case number 4:21-cv-00367 ("*Washington* Lawsuit") (*id.* at ¶ 8); and (6) the allegations contained in the instant TAC regarding discriminatory advertising spend (*id.* at ¶ 9; *see generally* TAC).

## 2.   The Discovery Dispute

Resolution of the instant discovery dispute necessitates a review of the "McFlurry" of filings and Court conferences in its long and twisted history. In March 2022, the parties were engaged in discussions regarding McDonald's USA's[5] responses to Plaintiffs' first and second document requests. (N-Ps' Ex. 4 at 74.) On March 14, 2022, McDonald's USA confirmed it would produce documents from its identified custodians. (*Id.*) On June 10, 2022, McDonald's USA stated that the rolling production of these documents was continuing and that it expected to complete its production by June 30, 2022. (*Id.*) After McDonald's USA identified the document custodians on which its search for documents would focus, Plaintiffs requested that McDonald's USA add certain custodians, including Mr.

---

[5] At the time of service of Plaintiffs' document requests, the named defendant was McDonald's Corp. (N-P²'s Ex. 4 at 70.)

Kempczinski, and began a discussion regarding the scheduling of various percipient witness depositions, including that of Mr. Kempczinski, and a Rule 30(b)(6) deposition of McDonald's USA on thirty-six topics. (N-Ps' Ex. 4 at 55–57, 74.) On April 4 and 19, 2022, McDonald's USA responded that Mr. Kempczinski was neither employed by McDonald's USA nor was he its document custodian, and thus any such deposition and document requests would have to be made via a Rule 45 subpoena to McDonald's Corp., but that, in any event, Mr. Kempczinski was not a proper deponent because he had no responsibility for the advertising decisions at issue in the TAC and was a high-level employee protected by the apex doctrine. (*Id.* at 58–60, 74.) On May 3, 2022, Plaintiffs affirmed their entitlement to Mr. Kempczinski's deposition—on the ground that he was named in the TAC as a participant in the alleged racial discrimination and was directly involved in communications involving Plaintiffs, issues of race, and Byron Allen—and asked if counsel for McDonald's USA would accept service of a Rule 45 subpoena on McDonald's Corp. (*Id.* at 66.) To address McDonald's USA's apex doctrine objections, however, Plaintiffs offered to depose other individuals first. (*Id.*) Thereafter, counsel for McDonald's USA accepted service of Plaintiffs' Rule 45 subpoena on McDonald's Corp., which contained requests for fifteen categories of documents. (*Id.* at 74–75.) Though the parties have not filed a copy of that subpoena, it appears from the transcript of two informal discovery conferences held on June 16, 2022 that the subpoena dealt with the *Guster-Hines* Lawsuit and "corporate culture issues." (ECF No. 66 at 57.) On June 1, 2022, McDonald's USA advised that it had reviewed documents it had obtained from McDonald's Corp. and that none were responsive to Plaintiffs' document requests, though without explanation of whether the responsiveness review was as to Plaintiffs' document requests to McDonald's USA or the Rule 45 subpoena. (N-Ps' Ex. 4 at 69-70.) Also on June 1, 2022, McDonald's Corp. served its objections to the Rule 45 subpoena and advised that McDonald's Corp. had complied with the subpoena in

that it had conducted a reasonable search for documents responsive to the

subpoena's requests and no responsive, non-privileged documents were located.

(*Id.* at 75–76.)  On June 6, 2022, Plaintiffs advised McDonald's USA that

McDonald's Corp. was refusing to cooperate with the Rule 45 subpoena and

insisted that McDonald's USA make its position clear regarding its production of

documents and the production of Mr. Kempczinski for deposition, so that, if

necessary, Plaintiffs could seek an informal discovery conference with the

undersigned.  (*Id.* at 68–69.)  On June 10, 2025, McDonald's Corp. reminded

Plaintiffs that McDonald's Corp.'s objections to the Rule 45 subpoena had been

served on June 1, 2022 and that it had complied with its obligations under the

subpoena.  (*Id.* at 75.)

On June 10, 2022, Plaintiffs served the Rule 45 subpoena at issue here on

McDonald's Corp. ("Subpoena").  (Subpoena, N-Ps' Ex. 3; N-Ps' Ex. 5 at 79–80.)

The Subpoena seeks to (1) depose Mr. Kempczinski on unspecified topics, and

(2) obtain six categories of documents, one of which is the Lightfoot Texts.  (*Id.* at

47–53.)  On June 23, 2022, counsel for McDonald's USA and McDonald's Corp.

objected to the subpoena on the ground that the apex doctrine protected Mr.

Kempczinski from deposition, but noted Plaintiffs' agreement to postpone this

deposition until after the deposition of McDonald's USA's lower-level employees.

(N-Ps' Ex. 5 at 81.)  Counsel for McDonald's USA and Non-Parties proposed that

Plaintiffs withdraw the Subpoena without prejudice to re-issuing it after completion

of those lower-level depositions and with the agreement that neither McDonald's

USA nor Non-Parties would object to the subpoenas as untimely.  (*Id.*)  To avoid

the redundancy of re-issuing subpoenas, Plaintiffs proposed instead to simply put

the Subpoena on hold until after the conclusion of the lower-level depositions.  (*Id.*

at 84.)

On July 15, 2022, Plaintiffs served a Rule 30(b)(6) Notice of Deposition on

McDonald's USA, detailing thirty-six topics of inquiry, of which two went directly

to some of Plaintiffs' corporate culture allegations:  the Lightfoot Texts (Topic 32) and the *Washington* Lawsuit (Topic 33).  (N-Ps' Ex. 13 at 187.)  Upon McDonald's USA's relevancy objections to Topics 32 and 33 (*id.* at 190), Plaintiffs agreed that, at that time, McDonald's USA did not "need [to] produce a witness on the objected-to topics" (*id.* at 192–93).  Still, the evidence provided to the Court shows that at least six lower-level depositions of McDonald's USA went forward in August 2022 and October 2022, some as McDonald's USA's Rule 30(b)(6) deposition.  (*See* N-Ps' Exs. 14–17; Pls' Exs. F–H.)

In the interim, on September 16, 2022, District Judge Fernando M. Olguin issued an order denying McDonald's USA's motion to dismiss the TAC ("Olguin Order").  (Olguin Ord., N-Ps' Ex. 6.)  McDonald's USA argued that Plaintiffs had failed to plead facts sufficient to support a plausible inference of intentional discrimination and, relevant here, that "[P]laintiffs' allegations regarding [Defendant's] 'corporate culture[,]' including an allegedly racist text message sent by McDonald's CEO to Chicago's mayor, are 'irrelevant' to this action."  (*Id.* at 91, 97 (final alteration in original).)  Judge Olguin rejected McDonald's USA's position noting that, pursuant to Ninth Circuit law, "remarks by a corporation's 'senior management' that 'suggest[] the existence of racial bias' can support a § 1981 claim, even when not directed at the plaintiff specifically."  (*Id.* at 97 (alteration in original) (citations omitted).)  Judge Olguin concluded that Plaintiffs' allegations of "corporate culture," when taken together with other allegations in the TAC, were sufficient "to support an inference of intentional discrimination."  (*Id.*)

Relying on the Olguin Order, on September 27, 2022, Plaintiffs sent a letter to counsel for McDonald's USA and McDonald's Corp. reiterating their requests (1) for documents related to the Lightfoot Texts, the *Guster-Hines* Statement, and an investigative report regarding the *Washington* Lawsuit, and (2) Mr. Kempczinski's  deposition regarding the Lightfoot Text, the *Guster-Hines* Statements, and McDonald's USA's racist corporate culture.  (N-Ps' Ex. 7; Pls' Ex.

I at 124–25.)  Plaintiffs noted that, in light of three previously taken Rule 30(b)(6)

depositions, they had concluded that "Mr. Kempczinski's 'testimony regarding his

own statements and decisions [would] thus be non-duplicative.'"  (*Id.* at 125

(citations omitted).)

On October 28, 2022, the undersigned held the fourth informal discovery

conference in this matter to address Plaintiffs' demand for Mr. Kempczinski's

documents and deposition ("IDC 4").  (IDC 4 Tr., Pls' Ex. M.)  At IDC 4, Plaintiffs

argued that the Olguin Order established that facts regarding corporate culture

inform the allegations of racial discrimination and that, on that basis, they were

entitled to Mr. Kempczinski's corporate culture documents and related deposition.

(*Id.* at 181–83.)  McDonald's Corp. countered that, despite the Olguin Order, the

documents and testimony sought by the Subpoena were not relevant to the case.

(*Id.* at 183–88.)  The Court advised the parties that the Olguin Order suggested that

facts regarding corporate culture were relevant to the claims here but that, before

taking Mr. Kempczinski's deposition, Plaintiffs had to attempt to obtain the

information they sought through lower-level employees, including Rule 30(b)(6)

depositions.  (*Id.* at 192–201.)  The Court ordered the parties to continue meeting

and conferring to resolve the dispute but noted that either party could bring a

discovery motion on this issue if they reached an impasse.  (*Id.*; *see also* ECF No.

74.)  Through these conferences, the parties "resolved the dispute regarding many

of the documents sought from Mr. Kempczinski."  (Opp'n 6–7.)

On January 5, 2023, Plaintiffs filed a motion to compel McDonald's Corp. to

produce Mr. Kempczinski for deposition and his documents in response to the

Subpoena, and Non-Parties filed a cross-motion to quash the Subpoena.  (ECF Nos.

91, 92.)  In support of McDonald's Corp.'s cross-motion to quash the Subpoena,

Mr. Kempczinski filed a declaration asserting generally—but detailed more fully

below—that he played no role in the national advertising decisions in either his

prior role as McDonald's USA's President or his current role as McDonald's

Corp.'s CEO, that he had no knowledge regarding Plaintiffs' claims of discrimination, that he never communicated with Mr. Allen or any of Plaintiffs' representatives, and that sitting for deposition would pose a hardship on himself and McDonald's Corp. ("Kempczinski Declaration").  (Kempczinski Decl., N-Ps' Ex. 10 at ¶¶ 4–6.)

On January 17, 2023, the Court held an informal discovery conference regarding the proper venue for resolving a dispute related to enforcement of the Subpoena and noted that, pursuant to Rule 45(d)(2)(B)(i), the dispute had to be brought in the U.S. District Court for the Northern District of Illinois—the district where enforcement of the subpoena would lie.  (ECF No. 98.)  The Court ordered the parties to continue meeting and conferring regarding this matter.  (*Id.*)

Plaintiffs and Non-Parties continued to attempt to resolve the dispute:  Non-Parties offered to produce Mr. Kempczinski for a 30-minute deposition limited to the Lightfoot Text and one of the *Guster-Hines* Statements, while Plaintiffs offered to limit the deposition to 5.5 hours but with the ability to ask questions about the corporate culture at McDonald's USA and Mr. Kempczinski's position regarding race discrimination lawsuits filed against McDonald's USA, including a new one filed by McDonald's Corp.'s head of Corporate Security, Michael Peaster ("*Peaster Lawsuit*").  (Opp'n 7; Reply 4 n.2.)

Having reached an impasse, Non-Parties filed a motion to quash the Subpoena in the Northern District of Illinois on January 27, 2023.  (*See generally* ECF No. 172 at 3.)  Plaintiffs opposed the motion and filed a cross-motion to compel compliance with the Subpoena.[6]  (*See id.*)  Even after the filing of their motion to quash, but before Plaintiffs filed their Opposition, Non-Parties reiterated their offer to produce Mr. Kempczinski for a brief deposition as well as a

---

[6] In addition, though not relevant to the instant Motion, Plaintiffs included in their opposition a motion to transfer the motion to the Central District of California. (Opp'n at 9–12.)

McDonald's Corp. Rule 30(b)(6) deponent on the issue of corporate culture, and noted that they had complied with their document production obligations under the Subpoena. (Reply 1–2, 4; N-Ps' Supp. Ex. B.) Plaintiffs rejected the offer of a Rule 30(b)(6) deposition and maintained that they were entitled to a multi-hour deposition of Mr. Kempczinski regarding the corporate culture of McDonald's USA. (N-Ps' Supp. Ex. B.) On July 17, 2023, the Northern District of Illinois granted Plaintiffs' motion to transfer Non-Parties' motion back to the Central District of California for resolution pursuant to Rule 45(f). (*See* ECF No. 172 at 4.)

### B.    **The Motion**

On March 12, 2025, with the Court's permission, Non-Parties filed the instant Motion by re-filing the briefs previously submitted to the Northern District of Illinois. (ECF No. 172.) Because it was not clear to the Court what remained at issue since the filings in the Northern District of Illinois two years earlier, the Court held a Status Conference on March 28, 2025. There, the parties confirmed that, other than attorneys' fees and costs, the matters remaining at issue are as follows:

- Document Request No. 6: "All of [Mr. Kempczinski's] text messages with Chicago Mayor Lori Lightfoot from January 1, 2021 through June 30, 2021." (Subpoena, N-Ps' Ex. 3.) Plaintiffs asserted that, although they informally received from Non-Parties' counsel courtesy copies of the four Lightfoot Texts as publicly produced by Mayor Lightfoot's office in response to a FOIA request, they presently seek to obtain the native versions of those documents directly from Non-Parties; and

- Kempczinski Deposition: whether the deposition should go forward and, if so, its scope. As to scope, Plaintiffs clarified they seek to depose Mr. Kempczinski regarding the "racist corporate culture" of McDonald's USA as alleged in the TAC at paragraphs 2 through 9—(1) the Lightfoot Texts (*see* TAC ¶¶ 2–4); (2) the Audit (*see id.* ¶ 5); (3) the *Guster-Hines*

11

Statements (*see id. at* ¶ 6); (4) the *Crawford* Lawsuit (*see id.* at ¶ 7); and (5) the *Washington* Lawsuit (*see id.* at ¶ 8)[7]—and all, though unspecified, TAC allegations regarding the advertising decisions at the heart of the lawsuit (collectively, "Corporate Culture Discovery").

(ECF No. 165.)  The Court invited Plaintiffs and Non-Parties to submit any further clarification regarding the matters at issue in the Motion they thought might be helpful to the Court (*id.*), but they did not.  The issues in the Motion thus are limited as described above as well as the parties' respective requests for attorneys' fees and costs.  Plaintiffs contend that the Corporate Culture Discovery will reveal information that will support—at least circumstantially—their claims of intentional racial discrimination.  (Opp'n 13–14.)

Non-Parties are not "lovin' it."  They object to the Subpoena on multiple grounds.  *First*, they argue that Mr. Kempczinski is protected from deposition under the apex doctrine.  (Mot. 10–16; Reply 4–8.)  *Second*, they argue that the Subpoena violates Rule 45(d) because it imposes an undue burden on Mr. Kempczinski and McDonald's Corp.  (Mot. 16–17; Reply 8.)  *Third*, they argue that they have satisfied their obligation under the document portion of the Subpoena by having conducted a reasonable search and advising Plaintiffs that Non-Parties do not have documents responsive to Request No. 6.  (Reply 8–11.)

## III.    LEGAL STANDARD

Rule 26(b)(1) governs the scope of discovery in federal cases and provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b)(1).  Rule 401 of the

---

[7] Although Plaintiffs at one point requested a deposition of Mr. Kempczinski regarding the *Peaster* Lawsuit (*see* Section II.A.2, *supra*), that was not identified during the Status Conference as a pending issue.  As such, the Court does not consider the *Peaster* Lawsuit part of the Corporate Culture Discovery at issue here.

Federal Rules of Evidence provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But relevance alone does not justify discovery. As a general matter, Rule 26(b) is to be "liberally interpreted to permit wide-ranging discovery of information," even if that information is not ultimately admitted at trial. *Comcast of L.A., Inc. v. Top End Int'l, Inc.*, No. CV 03-2213-JFW(RCx), 2003 U.S. Dist. LEXIS 18640, at *6 (C.D. Cal. July 2, 2003).

In addition to relevance, Rule 26(b)(1) requires that the discovery be proportional to the needs of the case. Fed. R. Civ. 26(b)(1). Proportionality is determined by a consideration of the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Further, the court "must limit the frequency or extent of discovery" pursuant to Rule 26(b)(2) if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 governs requests for production of documents. It allows a party to serve on any other party "a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or

sample . . . items in the responding party's possession, custody, or control[,]" including, *inter alia*, documents and electronically stored information.  Fed. R. Civ. P. 34(a).  The responding party must serve its answers and any objections to requests for production of documents within thirty days after being served with the requests, unless otherwise stipulated or ordered by the court.  Fed. R. Civ. P. 34(b)(2).  The grounds for an objection must be stated with specificity.  Fed. R. Civ. P. 34(b)(2)(B).  The responding party must state whether any responsive materials are being withheld on the basis of that objection.  Fed. R. Civ. P. 34(b)(2)(C).

Upon a motion by a party, and for good cause shown, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A).  To obtain such a protective order, "the party resisting discovery or seeking limitations thereon must show 'good cause' for its issuance." *WebSide Story, Inc. v. NetRatings, Inc.*, No. 06cv408 WQH (AJB), 2007 U.S. Dist. LEXIS 20481, at *4 (S.D. Cal. Mar. 22, 2007).  "[A] strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (citing 4 J. Moore, *Federal Practice* ¶ 26.69 (2d ed. 1974)).  Such is a "heavy burden." *Id.*

A requesting party that is dissatisfied with discovery responses made under the federal rules may move to compel further responses pursuant to Rule 37(a).  Fed. R. Civ. P. 37(a).  "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *Nguyen v. Lotus by Johnny Dung Inc.*, 8:17-cv-01317-JVS-JDE, 2019 U.S. Dist. LEXIS 122787, at *5 (C.D. Cal. June 5, 2019).  "The party who resists discovery has the burden to show discovery should not be allowed," as well as "the burden of clarifying, explaining, and supporting its objections." *Comcast of L.A.*, 2003 U.S. Dist. LEXIS 18640, at *6 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

IV.    **ANALYSIS**

A.    **Mr. Kempczinski is Entitled to Some Protection Under the Apex Doctrine**.

1.    Legal Standard

Courts recognize that depositions of high-level executives "create[] a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 U.S. Dist. LEXIS 8295, at *8 (N.D. Cal. Jan. 25, 2007).  Thus, protective orders under Rule 26(c) have been used to protect an entity when it faces, such as Non-Parties face here, the deposition of an executive officer, also known as an apex deposition.  *See, e.g., Doble v. Mega Life & Health Ins. Co.*, No. C 09-1611 CRB (JL), 2010 U.S. Dist. LEXIS 56190, at *3– 4 (N.D. Cal. May 18, 2010) (collecting cases where courts have prohibited the deposition of high-ranking corporate executives).

As an initial matter, the party seeking the apex deposition must show that the executive has "direct personal factual information pertaining to material issues in an action[.]" *Littlefield v. Nutribullet*, No. CV 16-6894 MWF (SSx), 2017 U.S. Dist. LEXIS 229420, at *17 (C.D. Cal. Nov. 7, 2017) (quoting *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990)); *see also Hunt v. Cont'l Cas. Co.*, No. 13-cv-05966-HSG, 2015 U.S. Dist. LEXIS 44304, at *6–7 (N.D. Cal. Apr. 3, 2015) (finding that plaintiff "proffered a substantial basis for concluding that [deponent] may have unique first-hand knowledge regarding the facts at issue in this case" because plaintiff's "gender and age discrimination claims include direct allegations regarding actions taken by and statements made by [deponent]" based on plaintiff's "direct interactions with [deponent]").  Generally, a claimed lack of knowledge on behalf of the deponent does not alone provide sufficient ground for a protective order. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).  Nor is "the fact that the apex witness has a busy schedule" sufficient to

foreclose otherwise proper discovery.  *WebSide Story, Inc.*, 2007 U.S. Dist. LEXIS 20481, at *9 (citation omitted).

Even where an apex deponent has such direct personal knowledge, good cause has been found to prohibit an apex deposition where the "high-level corporate executive lack[ed] unique or superior knowledge of the facts in dispute."  *Id.* at *7 (citations omitted).  Good cause also has been found where "the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue."  *Affinity Labs of Tex. v. Apple, Inc.*, No. C 09-4436 CW (JL), 2011 U.S. Dist. LEXIS 53649, at * 42 (N.D. Cal. May 9, 2011) (quoting *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991)).

## 2.   Analysis

Plaintiffs do not dispute that Mr. Kempczinski is a high-ranking corporate executive.  (*See generally* Opp'n.)  However, Plaintiffs contend that the apex doctrine does not apply to him because he is a percipient witness with personal knowledge of relevant facts.  But this is not enough.  Apex depositions are inappropriate when (1) the official does not have "unique first-hand, non-repetitive knowledge of the facts at issue in the case," and (2) when "the party seeking the deposition has not exhausted other less intrusive discovery methods."  *See Apple Inc.*, 282 F.R.D. at 263.

Non-Parties seek protection from the Subpoena under the apex doctrine on four grounds:  (1) the Corporate Culture Discovery is not relevant to the facts at issue in the case; (2) even if relevant, Mr. Kempczinski does not have unique, personal knowledge of corporate culture facts; (3) Plaintiffs have not attempted to obtain the Corporate Culture Discovery through less burdensome means; and (4) an apex deposition would pose a hardship on Non-Parties.  (Mot. 10–16; Reply 4–8.) The Court addresses each argument in turn.

16

a.    *The Corporate Culture Discovery is relevant to the facts at issue in this case.*

Non-Parties contend that the Corporate Culture Discovery is not relevant to the "***facts at issue in the case***," and thus should be prohibited under the apex doctrine. (Mot. 13–15.) They note that Plaintiffs' reliance on Judge Olguin's holding—that "remarks by a corporation's senior management that suggest the existence of racial bias ***can*** support a § 1981 claim, even when not directed at the plaintiff specifically"—is misplaced on the grounds that (1) a ruling in a motion to dismiss is not applicable to a relevancy question in a discovery motion because the two motions are procedurally different, and (2) the cases on which Judge Olguin relied are distinguishable from the instant matter. (*Id.* at 13–14 (emphasis in original).) They explain that in both *Metoyer v. Chassman*, 504 F.3d 919, 938–39 (9th Cir. 2007), *abrogated in part by Nat'l Ass'n of Afr. Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 620–21 (9th Cir. 2019) (hereinafter, "*Charter*"), *cert. granted, judgment vacated,* 140 S. Ct. 2561 (2020), and *vacated and remanded,* 804 F. App'x 710 (9th Cir. 2020), and *abrogated by Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020), and in *Charter*, the person claimed to have exhibited the discriminatory animus was connected to the challenged decisions, whereas here Mr. Kempczinski "had no role or influence in the decision-making process underlying Plaintiffs' discrimination claims." (Mot. 13–14.) They point to the depositions of Alycia Mason and Jennifer Feldman, both of whom purportedly testified under oath that Mr. Kempczinski had no role in the national advertising contracting process, the Kempczinski Declaration affirming same, and the depositions of two members of Plaintiffs' advertising sales team who purportedly testified under oath that they had never spoken to Mr. Kempczinski or negotiated an advertising contract with him. (Mot. 12, 14; N-Ps' Exs. 14–17.) They argue that, without this necessary link between Mr. Kempczinski, on the one

hand, and Plaintiffs and Mr. Allen, on the other, none of the Corporate Culture Discovery is relevant here.  (Mot. 14; *see also* Reply 7.)

The arguments advanced by Non-Parties make the Court "Grimace."  Non-Parties' first argument—that a ruling on a motion to dismiss is, *per se*, inapplicable to a discovery motion—is conclusory and unsupported by legal authority (*see generally* Mot.; *see generally* Reply) and, as such, does not persuade the Court.

Non-Parties' second argument—that Judge Olguin's "single sentence" is inapplicable here because of Mr. Kempczinski's lack of involvement in the advertising decisions—is without merit.  Indeed, no message in this litigation could be clearer than that in the Olguin Order—an executive's actions, regardless of their target, can support a claim of racial discrimination against the corporate entity. (*See* Olguin Ord. at 97.)  With this, it is axiomatic that facts surrounding a discriminatory corporate culture purportedly created by an executive satisfy the Rule 26(b)(1) relevancy standard in a discrimination claim—"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).

Non-Parties' effort to distinguish *Metoyer* and *Charter*—as requiring a link between Mr. Kempczinski's actions and the challenged advertising decisions they contend is absent here—evidences a mis-reading of the two cases.  In *Metoyer*, the court held that "bigoted remarks" made by a member of the company's senior staff constituted "direct evidence of discrimination" even though "there [was] no evidence *linking* [her] to the termination decision . . . ."  *Metoyer*, 504 F.3d at 937–38 (emphasis added).  Similarly, in *Charter*, the court held that "racially charged comments" made by high-ranking decision-makers that *did not occur in the context of the challenged decisions* nevertheless "serve . . . as circumstantial evidence of

///

///

///

discriminatory animus." *Charter* 915 F.3d at 627 n.9 (citations omitted) (emphasis added).[8]

Finally, the authorities Non-Parties offer in challenge to the Olguin Order are unhelpful here. While the court in *Reif v. CNA*, 248 F.R.D. 448, 453–54 (E.D. Pa. 2008), did deny an apex deposition in part because there was no evidence linking the CEO's ageist statements to the adverse employment action, that holding is not binding on this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted).) In fact, it is contrary to Ninth Circuit precedent, as stated in *Metoyer* and *Charter*. In *Harapeti v. CBS TV Stations Inc.*, No. 21 Misc. 680 (PAE), 2021 U.S. Dist. LEXIS 167117 (S.D.N.Y. Sept. 2, 2021), a case not involving corporate culture allegations, the court denied an apex deposition because the personal knowledge of the corporate executive had not been established—a legal premise not inconsistent with the Olguin Order. *Harapeti*, 2021 U.S. Dist. LEXIS 167117, at *6–8. In *Blanton v. Torrey Pines Prop. Mgmt.*, No. 15-cv-0892 W (NLS), 2017 U.S. Dist. LEXIS 72381 (S.D. Cal. May 10, 2017), a case not involving an apex deposition, the court held that evidence tending to prove the claim of another and not of the plaintiff is not relevant—an unarguable, albeit immaterial, proposition. *Blanton*, 2017 U.S. Dist. LEXIS 72381, at *9. Similarly, in *Starz Entertainment, LLC v. MGM Domestic Television Distribution LLC,* No. 2:20-cv-04085-DMG (KSx), 2022 U.S. Dist. LEXIS 113145, *22–27 (C.D. Cal. May 31, 2022), also a case not involving an apex deposition, the court held that evidence that does not inform claims, defenses, or damages, is not relevant

---

[8] In any event, to the extent Non-Parties disagree with Judge Olguin's conclusion in the Olguin Order, the undersigned already advised them that the proper remedy is to seek reconsideration of the order, not seek to undermine that ruling through a discovery motion. (*See* Pls' Ex. M at 191–193.)

19

and discoverable under Rule 26—again, a legal tenet the Olguin Order does not offend.

Thus, regardless of what Non-Parties' proffered witnesses and Mr. Kempczinski himself declare regarding the absence of a connection between Mr. Kempczinski's comments and actions on the one hand, and the challenged decisions on the other, Ninth Circuit precedent compels this Court's conclusion that, because an executive's remarks suggesting racial bias can support a § 1981 claim even if not directed at a plaintiff, discovery regarding same is relevant to Plaintiffs' claims. On this basis, the Court finds that the Corporate Culture Discovery sought here easily passes through the "Golden Arches" of Rule 26 relevance and, thus, **OVERRULES** Non-Parties' relevancy objection.

> b.  *Mr. Kempczinski has unique, personal knowledge of some, but not all, of the corporate culture facts and Plaintiffs' efforts to obtain that information from less intrusive means have been unsuccessful.*

Non-Parties contend that Mr. Kempczinski does not have *unique* personal knowledge of the Corporate Culture Discovery and, in any event, Plaintiffs have waived their right to take his deposition because they forewent the opportunity to obtain the Corporate Culture Discovery through other means. (Mot. 11–12; Reply 4–8.) The Court evaluates these arguments as to each component of the Corporate Culture Discovery in turn.

> i.  <u>*The Lightfoot Texts*</u>

The Lightfoot Texts, exchanged after the second time in the Spring of 2021 that a child had been shot and killed in the parking lot of a McDonald's restaurant in the Chicago area, consists of the following:

Kempczinski:  BTW… I have a new mobile number.  My last one for [sic] compromised and the animal rights and union activists bombarded it with calls.  Nice seeing you today.  Thanks for coming to McDonald's HQ.  Let me know if I can be helpful.

Kempczinski:  p.s.  tragic shootings in last week, both at our restaurant yesterday and with Adam Toldeo [sic].  With both, the parents failed those kids which I know is something you can't say.  Even harder to fix.

Kempczinski:  Chris K

Mayor Lightfoot:  Thanks, Chris.  Great to see you in person.  Such a great work space, and your folks were terrific.  I said to Joe I would be happy reach out to the operator to offer support.  He and his team members have got to be traumatized.  Terrible tragedy.  Thanks again, Chris.  MLL

(N-Ps' Supp. Ex. A at 48.)

Non-Parties do not dispute Plaintiffs' assertion that Mr. Kempczinski has personal knowledge about the Lightfoot Texts and the context in which they were exchanged.  (Opp'n 14; *see generally* Mot.; *see generally* Reply.)  Rather, Non-Parties argue that Plaintiffs failed to pursue this information through less burdensome means.  (Mot. 11–12; Reply 4–5.)  They explain that, although Plaintiffs served a Rule 30(b)(6) deposition notice on McDonald's USA listing the Lightfoot Texts as Examination Topic No. 32, Plaintiffs eventually confirmed in writing, in response to Non-Parties' objection, that they would not seek testimony on that topic.  (Mot. 11; Reply 4–5.)  Indeed, Plaintiffs sent a letter to McDonald's USA stating exactly that:  "we agree that, at this time, McDonald's need not produce a witness on the objected-to topics . . . ."  (N-Ps' Ex. 13 at 192–93.)  In addition, Non-Parties contend that, even after the filing of the motion in the

Northern District of Illinois, they offered a Rule 30(b)(6) deponent on this subject and Plaintiffs rejected the offer.  (Reply 4.)

But ultimately, and regardless of the timing, Plaintiffs did depose three McDonald's USA Rule 30(b)(6) witnesses (N-Ps' Ex. 13 at 191) on the topic of the Lightfoot Texts and they were not able to answer some of Plaintiffs' questions. Specifically:

- McDonald's USA's Rule 30(b)(6) deponent Alycia Mason testified that Mr. Kempczinski circulated the Lightfoot Texts internally within McDonald's and that, together with the texts, he expressed his apology; that she did not know Mr. Kempczinski's intent in circulating the Lightfoot Texts; that McDonald's held a company-wide meeting where Mr. Kempczinski spoke but which she was unable to attend; that she did not know whether Mr. Kempczinski had any personal knowledge regarding what happened in either of the incidents that were the subject of the Lightfoot Texts or whether he conducted his own investigation into those incidents.  (Pls' Ex. F at 85–87.)

- McDonald's USA's Rule 30(b)(6) deponent Sheila Hamilton testified that she had read the Lightfoot Texts and that Mr. Kempczinski apologized for them in a one-hour town hall; that she did not know if any McDonald's employee had demanded an apology; and that she disagreed with Mr. Kempczinski's comments and believed them to be racist.  (Pls' Ex. G at 100–01.)

- McDonald's USA's Rule 30(b)(6) deponent Jennifer Feldman testified that she read the Lightfoot Texts through the press; that she could neither agree nor disagree with the Lightfoot Texts because she did not know the context in which they were sent; that she did not discuss the Lightfoot Texts with her colleagues; that some people expressed opinions regarding the Lightfoot Texts but there was no consensus of opinion; that the press

22

seemed negative towards Mr. Kempczinski; that Mr. Kempczinski apologized during a town hall but she did not know if any employee had demanded an apology; and that she viewed the Lightfoot Texts as insensitive.  (Pls' Ex. H at 111–15.)

The foregoing testimony is sufficient to show that Plaintiffs attempted to obtain information about the Lightfoot Texts through means less burdensome than a deposition of Mr. Kempczinski, but the deponents were unable to answer Plaintiffs' questions about the context of the exchange.  Thus, the Court concludes: Mr. Kempczinski, "You, You're the One" who has unique, personal knowledge about the Lightfoot Texts and must sit for deposition regarding same.

However, the Court notes that this limited subject does not require more than one hour of deposition to include questioning, objecting, and answering.  Accordingly, the Court **GRANTS in part** and **DENIES in part** both (1) Non-Parties' Motion and (2) Plaintiffs' Cross-Motion to compel Mr. Kempczinski to sit for deposition on this subject, by compelling the deposition but limiting the deposition on this subject to one hour.

ii.    *The Guster-Hines Statements*

Non-Parties also do not dispute Plaintiffs' assertion that Mr. Kempczinski has personal knowledge about the *Guster-Hines* Statements and the context in which they were made.  (Opp'n 14–15; *see generally* Mot.; *see generally* Reply.)  Rather, as with the Lightfoot Texts, Non-Parties argue that Plaintiffs failed to pursue this information through less burdensome means.  (Mot. 11–12; Reply 4–5.)

But they did.  Plaintiffs deposed three McDonald's USA witnesses on the topic of the *Guster-Hines* Statements and those deponents were not able to answer Plaintiffs' questions.  Specifically:

- McDonald's USA's Rule 30(b)(6) deponent Alycia Mason testified that she did not agree with the statement that the number of minorities do not

23

matter; that she never was involved in a meeting at McDonald's about the *Guster-Hines* Statements; that she never heard anyone at McDonald's use the term "angry black women; and that this did not sound like something that any white male executive she knew at McDonald's would say.  (Pls' Ex. F at 89-90.)

- McDonald's USA's Rule 30(b)(6) deponent Sheila Hamilton testified that she was not familiar with the *Guster-Hines* Lawsuit but had heard that African American senior female executives sued McDonald's for race and gender discrimination; that she never heard Mr. Kempczinski or anyone at McDonald's say that the "numbers of African Americans don't matter" or anything to that effect, and that she never heard anyone, including the white male executives at McDonald's, use the term "angry black women." (Pls' Ex. G at 98–100.)

- McDonald's USA's Rule 30(b)(6) deponent Jennifer Feldman testified that she knew nothing about the *Guster Hines* Lawsuit; that she did not know who were the female executives who filed the complaint; and that she never heard Mr. Kempczinski say anything to the effect of "the numbers of African-Americans don't matter."  (Pls' Ex. I at 116.)

The foregoing testimony is sufficient to show that Plaintiffs attempted to obtain information about the *Guster-Hines* Statements through means less burdensome than a deposition of Mr. Kempczinski, but the deponents were unable to provide context for Mr. Kempczinki's remarks.  Thus, as with the Lightfoot Texts, the Court concludes that Mr. Kempczinski's personal knowledge about the *Guster-Hines* Statements is unique and, on that basis, he must sit for deposition regarding same.

However, the Court notes that this limited subject does not require more than one hour of deposition, to include questioning, objecting, and answering. Accordingly, the Court **GRANTS in part** and **DENIES in part** both (1) Non-

Parties' Motion and (2) Plaintiffs' Cross-Motion to compel Mr. Kempczinski to sit for deposition on this subject, by compelling the deposition but limiting the deposition on this subject to one hour.

### iii.  *The Audit*

Non-Parties contend that Plaintiffs have offered nothing to suggest that Mr. Kempczinski has personal knowledge regarding the Audit, let alone the unique level of knowledge that is necessary for an apex deposition.  (Mot. 15.)  The Court agrees.

Plaintiffs offer the testimony of Alycia Mason and Jennifer Feldman, but neither speaks to Mr. Kempczinski's personal knowledge.

- <u>McDonald's USA's Rule 30(b)(6) deponent Alycia Mason</u> testified that she was vaguely aware of a shareholder proposal that McDonald's conduct a civil rights audit; that she understood McDonald's had agreed to conduct a civil rights assessment; that she did not know whether the board and management voted for or against it; that she was not part of any internal discussion as to whether McDonald's would support or oppose the audit and that this was not discussed with her; that she had no opinion regarding whether a civil rights audit from a third-party firm was required; that she did not know the status of the audit, who the third-party firm was, or whether it was looking at McDonald's media buying; that she had not been contacted or interviewed by the audit firm, or seen its reports; and that she did not know when the firm would release its findings.  (Pls' Ex. F at 87–89.)
- <u>McDonald's USA's Rule 30(b)(6) deponent Jennifer Feldman</u> testified that she did not know anything about a civil rights audit and had not been contacted by any audit firm as part of the audit.  (Pls' Ex. H at 115–16.)

*///*

1       While this testimony clearly establishes that neither Alycia Mason nor

2   Jennifer Feldman had any information about the Audit, it does nothing to establish

3   that Mr. Kempczinski has the requisite personal knowledge about the Audit to

4   justify an apex deposition.

5       On this basis, the Court concludes that Plaintiffs have failed to meet their

6   burden to show that Mr. Kempczinski has any personal knowledge—let alone

7   *unique* personal knowledge—regarding the Audit.  Accordingly, the Court

8   **GRANTS** Non-Parties' request for protection from this topic of deposition and

9   **DENIES** Plaintiffs' Cross-Motion to compel this testimony.

10

11                     iv.        *The Crawford Lawsuit*

12       Non-Parties do not address Plaintiffs' assertion that Mr. Kempczinski has

13   personal knowledge about the *Crawford* Lawsuit.  (Opp'n 15; *see generally* Mot.;

14   *see generally* Reply.)  But neither do Plaintiffs affirmatively establish that he, in

15   fact, does.  (*See generally* Opp'n.)  In sum, there is no evidence about Mr.

16   Kempczinski's knowledge about the *Crawford* Lawsuit one way or the other.  (*See*

17   *generally* Opp'n.)  On this basis, the Court concludes that Plaintiffs have failed to

18   meet their burden to show that Mr. Kempczinski has unique personal knowledge

19   regarding the *Crawford* Lawsuit.  Accordingly, the Court **GRANTS** Non-Parties'

20   request for protection from this topic of deposition and **DENIES** Plaintiffs' Cross-

21   Motion to compel this testimony.

22

23                     v.        *The Washington Lawsuit*

24       Non-Parties contend that Plaintiffs have offered nothing to suggest that Mr.

25   Kempczinski has personal knowledge regarding the *Washington* Lawsuit, let alone

26   the unique level of knowledge that is necessary to allow an apex deposition.  (Mot.

27   14–15.)  In addition, they argue that Plaintiffs failed to pursue this information

28   through less burdensome means.  (Mot. 11–12; Reply 4.)  They explain that, as with

the Lightfoot Texts, although Plaintiffs served a Rule 30(b)(6) deposition notice on McDonald's USA listing the *Washington* Lawsuit as Examination Topic No. 33, they eventually confirmed in writing, in response to Non-Parties' objection, that they would not seek testimony on that topic.  (Mot. 11; Reply 4; NPs' Ex. 13 at 192–93 ("we agree that, at this time, McDonald's need not produce a witness on the objected-to topics . . . .").)  They note also that, even after the filing of the motion in the Northern District of Illinois, they offered a Rule 30(b)(6) deponent on this subject and Plaintiffs rejected the offer.  (Reply 4.)

Nonetheless, Plaintiffs eventually did depose three McDonald's USA witnesses on the topic of the *Washington* Lawsuit and those deponents were not able to answer Plaintiffs' questions.  Specifically:

- McDonald's USA's Rule 30(b)(6) deponent Alycia Mason testified that, although she believed Mr. Washington was an ex-franchisee, she was not familiar with, and knew nothing about, the *Washington* Lawsuit; that she was not aware of the existence of a review board within McDonald's that listened to complaints made by operators against McDonald's; that she did not know if a review board issued a report regarding Mr. Washington's claims; and that she did not know who at McDonald's would know more about that.  (Pls' Ex. F at 90–91.)

- McDonald's USA's Rule 30(b)(6) deponent Sheila Hamilton testified that she did not know who Herb Washington was; that she was not aware of an "operator review board . . . that would hear complaints by operators against McDonald's"; and that she did not know if there was a report regarding Mr. Washington's complaints.  (Pls' Ex. G at 98.)

- McDonald's USA's Rule 30(b)(6) deponent Jennifer Feldman testified that she had never heard of Herb Washington or the *Washington* Lawsuit; that she had no knowledge of the existence of a board that reviews complaints made by McDonald's operators against McDonald's; and that

1       she had no knowledge of a report regarding Mr. Washington's allegations.

2       (Pls' Ex. H at 117.)

3           The foregoing testimony is sufficient to show that Plaintiffs attempted to

4 obtain information about the *Washington* Lawsuit through means less burdensome

5 than a deposition of Mr. Kempczinski, but the deponents were unable to answer

6 Plaintiffs' questions. Still, this does not, without more, suggest—let alone

7 establish, as Plaintiffs must—that Mr. Kempczinski has any knowledge regarding

8 the *Washington* Lawsuit.

9           On this basis, the Court concludes that Plaintiffs have failed to meet their

10 burden to show that Mr. Kempczinski has any personal knowledge—let alone

11 *unique* personal knowledge—regarding the *Washington* Lawsuit. Accordingly, the

12 Court **GRANTS** Non-Parties' request for protection from this topic of deposition

13 and **DENIES** Plaintiffs' Cross-Motion to compel this testimony.

14

15              *vi.*     <u>The Advertising Decisions Alleged</u>

16                    <u>Throughout the TAC</u>

17           Plaintiffs advised the Court at the March 28, 2025 Status Conference that

18 they believe the allegations about the advertising decisions at issue constitute part

19 of the Corporate Culture Discovery on which an apex deposition is warranted. (*See*

20 ECF No. 165.) The unsound circularity of Plaintiffs' argument—that the

21 challenged advertising decisions were "caused" by McDonald's racist corporate

22 culture (TAC ¶ 9), the existence of which culture, in turn, is proven by the very

23 same challenged advertising decisions (ECF No. 165)—is not lost on the Court. In

24 fact, it is evident to the Court that Plaintiffs are attempting to make an end-run

25 around their Rule 45 obligation to obtain information about the challenged conduct

26 from the party itself—McDonald's USA—before burdening Non-Parties. *Affinity*

27 *Labs of Tex.,* 2011 U.S. Dist. LEXIS 53649, at * 42 (citation omitted). But whether

28 Mr. Kempczinski's deposition is characterized as one seeking Corporate Culture

Discovery or discovery regarding the direct subject matter of the TAC ultimately is of no consequence here because, as explained below, no matter how you slice the "sesame seed bun," Plaintiffs have not established that Mr. Kempczinski has unique, personal knowledge regarding the advertising decisions.

Non-Parties explain that Mr. Kempczinski has no personal knowledge on this issue because he was not a decision-maker with regard to advertising sales. (Mot. 12, 14; Reply 6.) In support of this assertion, they offer as evidence the deposition testimony of Alycia Mason, Jennifer Feldman, Barbara Bekkedahl, and Darren Galatt, and the Kempczinski Delaration. (Mot. 12, 14; Reply 6.)

But the deposition testimony provides less than a "McNugget" of information regarding Mr. Kempczinski's involvement—or lack thereof—in the advertising decisions at issue.

- McDonald's USA's Rule 30(b)(6) deponent Alycia Mason: Ms. Mason testified that she was an executive with oversight of how McDonald's national media budget was spent. She testified that she had spoken with Mr. Kempczinski while he was President of McDonald's USA but that she had never worked, met, or telephoned with him while he was CEO of McDonald's Corp., though she had been on email exchanges with him. (N-Ps' Ex. 14; Pls' Ex. F.) But without knowing the content of the conversations and emails she had with Mr. Kempczinski, it is impossible to include or exclude him from the circle of persons making advertising decisions. Indeed, in the excerpts presented to the Court, Ms. Mason did not testify one way or the other about Mr. Kempczinski's role in the advertising decisions. (N-Ps' Ex. 14; Pls' Ex. F.)

- McDonald's USA's Rule 30(b)(6) deponent Jennifer Feldman: The excerpts from the Feldman deposition transcript provided to the Court do not explain who Ms. Feldman is or what role she played in McDonald's USA's advertising decisions. (N-Ps' Ex. 15.) However, her designation as

McDonald's USA's witness on Rule 30(b)(6) topics involving the reasons for McDonald's USA's advertising decisions (*see* N-Ps' Ex. 13 at 185-187, 191) suggests that she was involved in the advertising decisions at issue here.  Accepting her role as such, her testimony also falls short of informing the question of whether Mr. Kempczinski was involved in the advertising decisions at issue.  Ms. Feldman testified that her conversations with Mr. Kempczinski while he was President of McDonald's USA were limited to "hallway conversation" regarding "office chichat" unrelated to "media investments," and that she was unaware whether, as CEO, he could request or had requested changes to the proposed budget (presumably advertising) spend.  She further testified that the Corporate Communications Group was responsible for approving the advertising spend; that she did not know to whom this group reported but that Robert Gibbs, whose title she could not recall, oversaw that; that the Chief Marketing Officer may have had visibility into the advertising spend but was not a decision-maker.  She also testified that, during 2019, she was not involved in any discussions regarding whether to advertise on The Grio.  But she did not testify one way or the other about Mr. Kempczinski's role in the advertising decisions.  (N-Ps' Ex. 15 at 207–13, Schechter Decl. ¶ 11; Pls' Exs. H, I.)

- Percipient Witness Darren Galatt:  as with the prior deponent, the excerpts from the Galatt deposition transcript provided to the Court do not explain who Mr. Galatt is or what role he played in McDonald's USA's advertising decisions.  (N-Ps' Ex. 16.)  However, according to Non-Parties, he was a member of Plaintiffs' advertising sales team during the relevant period.  (Mot. 14.)  Accepting his position as such despite the lack of evidentiary support, his testimony provides little insight into Mr. Kempczinski's involvement in McDonald's USA's advertising decisions.

Mr. Galatt testified that, although he knew who Mr. Kempczinski was, he never met him and has never spoken with him, that he could not recall if Mr. Kempczinski ever responded directly to one of Mr. Galatt's emails, and that he could not say whether Mr. Kempczinski listened in on conversations regarding McDonald's investment in the Allen Media Group media properties but that Mr. Kempczinski was never identified as a participant in such conversations.  (N-Ps' Ex. 16 at 217–18.)  Without knowing the content of the emails Mr. Galatt sent to Mr. Kempczinski, it is impossible to include or exclude Mr. Kempczinski from the circle of persons making advertising decisions.  Indeed, Mr. Galatt never testified one way or the other about Mr. Kempczinski's role in the advertising decisions.  (*Id.*)

- Percipient Witness Barbara Bekkedahl:  here again, the excerpts from the Bekkedahl deposition transcript provided to the Court do not explain who Ms. Bekkedahl is or what role she played in McDonald's USA's advertising decisions.  (N-Ps' Ex. 17.)  However, according to Non-Parties, she also was a member of Plaintiffs' advertising sales team during the relevant period.  (Mot. 14.)  Accepting her position as such despite the lack of evidentiary support, her testimony also provides little insight into Mr. Kempczinski's involvement in McDonald's USA's advertising decisions.  Ms. Bekkedahl testified that she knew Mr. Kempczinski was the CEO, that she had never met him, that she had never discussed any aspect of the Weather Channel's programming or any Allen Media Group programming with Mr. Kempczinski, and that she had no direct emails with Mr. Kempczinski.  But she did not testify one way or the other about Mr. Kempczinski's role in the advertising decisions.  (N-Ps' Ex. 17 at 224.)

///

31

Perhaps Non-Parties' intent in proffering these deposition excerpts is to invite the conclusion that, because these persons, who supposedly were involved in McDonald's USA's advertising sales, did not have conversations with Mr. Kempczinski on that subject, he therefore must not have been involved in advertising sales decisions. But this conclusion is not as manifest as Non-Parties might suggest. To the contrary, nothing in these excerpts compels anything close to this conclusion. Indeed, these deponents never answered the obvious, direct question that could have informed that conclusion: "To your knowledge, was Mr. Kempczinski involved in the advertising sales decisions?" That is because this question, or any question to that effect, was not asked of any of the five deponents by either Plaintiffs' or McDonald's USA's counsel—at least as evidenced here. (*See generally* N-Ps' Exs. 14–17; Pls' Exs. F, H.) Thus, the Court is not convinced that their testimony supports a finding that Mr. Kempczinski was not involved in the advertising decisions.

In contrast, the Kempczinski Declaration is quite informative on this issue. Mr. Kempczinski declares under oath that, as McDonald's Corp.'s present CEO, he "play[s] no part in the national advertising decisions made by McDonald's USA or its advertising agency partners"; that those decision-makers do not report to him; that he is "not consulted during [the] advertising decision-making process"; and that he has no role "in approving or determining which media partners McDonald's USA invests in or partners with for its U.S.-based national advertising." (Kempczinski Decl. ¶¶ 1, 3–4.) He also declares under oath that, as McDonald's USA's president from 2017 to 2019, he "was not involved in approving or determining which media partners McDonald's USA invested in or partnered with for its U.S.-based national advertising." (*Id.* at ¶ 4.) He further declares that he has no personal knowledge regarding Plaintiffs' or Mr. Allen's claims of intentional discrimination and has never communicated with either Mr. Allen or Plaintiffs' representatives. (*Id.* at ¶ 5.)

1    While the law is clear that the apex deponent's statement that he lacks
2    knowledge of the facts at issue usually is insufficient to avoid an apex deposition,
3    *Apple Inc.*, 282 F.R.D. at 263, Plaintiffs do nothing to dispute any of Mr.
4    Kempczinski's factual assertions.  (*See generally* Opp'n.)  Instead, they contend
5    they are entitled to Mr. Kempczinski's deposition "because he is a percipient
6    witness with personal knowledge of relevant facts."  (Opp'n 14.)  But the only facts
7    they reference in connection with this assertion are the Lightfoot Texts and the
8    *Guster-Hines* Statements.  (*Id.* at 14–15.)  They do not, as they are required to do,
9    provide the factual underpinnings of Mr. Kempczinski's purported personal
10   knowledge regarding the advertising decisions that are at the heart of this lawsuit.
11   *See Littlefield*, 2017 U.S. Dist. LEXIS 229420, at *17.

12   On this basis, the Court concludes that Plaintiffs have failed to meet their
13   burden to show that Mr. Kempczinski has any personal knowledge—let alone
14   *unique* personal knowledge—regarding the "Secret Sauce" behind the advertising
15   decisions.  Accordingly, the Court **GRANTS** Non-Parties' request for protection
16   from this topic of deposition and **DENIES** Plaintiffs' Cross-Motion to compel this
17   testimony.

18

19                    *c.    An apex deposition would pose a hardship on Non-*
20                          *Parties.*

21   Non-Parties contend that allowing Mr. Kempczinski's deposition would
22   impose a hardship on them.  (Mot. 15–16; Reply 5–6.)  They argue that, "[a]s
23   President and CEO of McDonald's Corp., Mr. Kempczinski is responsible for
24   running a worldwide corporation with more than $23 billion in annual revenue and
25   approximately 200,000 employees," and that "[r]equiring [him] to step away from
26   those duties to prepare and sit for an unrestricted deposition would undeniably be
27   burdensome and disruptive to the business."  (Mot. 15 (citing Kempczinski Decl. at
28   ¶ 6).)

As a starting point, Non-Parties fail to point to any Ninth Circuit authority, and the Court is aware of none, that allows a court to prohibit or otherwise limit a deposition based on the hardship it could impose on the deponent and/or his employer. (*See generally* Mot.) Regardless, with the Court's decision to limit the deposition to two hours and two specific topics, Non-Parties' concern regarding the hardship of an "unrestricted deposition" is moot. And while it is true that preparing and sitting for a deposition always imposes some level of hardship, the Court believes its limitations on subject matter and time strike the proper balance between Plaintiffs' need for the testimony and providing Non-Parties with "the break they deserve today."

\* \* \*

In sum, as detailed above, the Court concludes that Plaintiffs have demonstrated Mr. Kempczinski has unique personal knowledge only about the Lightfoot Texts and the *Guster-Hines* Statements and that their efforts to obtain that information through other, less intrusive means have proven unsuccessful. Non-Parties therefore must produce Mr. Kempczinski for deposition—but not for the "Supersized" 5.5 open-ended hours requested by Plaintiffs; rather for only a "Happy Meal"-sized deposition of two hours limited to those two subjects.

B.    **Non-Parties Are Not Entitled to Protection Under Rule 45(d)(3)(A)(iv).**

Non-Parties contend that the Subpoena must be quashed under Rule 45(d)(3)(A)(iv) for the independent reason that it imposes an undue burden on both Mr. Kempczinski and McDonald's Corp., the latter having "an interest in protecting the valuable time of its President and CEO." (Mot. 16; Reply 8.)

Under Rule 45, a court "must quash or modify a subpoena" that, inter alia, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). To determine whether a subpoena imposes undue burden on the recipient, the Court

must balance the relevance of information sought, the requesting party's need for
the information, and the extent of the burden imposed. *In re Allergan, Inc. Sec.
Litig.*, No. 14-cv-02004-DOC (KES), , 2016 U.S. Dist. LEXIS 186537, at *3 (C.D.
Cal. Sept. 14, 2016; *see also Gonzales v. Google, Inc.,* 234 F.R.D. 674, 680 (N.D.
Cal. 2006) ("Thus, a court determining the propriety of a subpoena balances the
relevance of the discovery sought, the requesting party's need, and the potential
hardship to the party subject to the subpoena.") (citation omitted).

Non-Parties' argument in support of their undue burden objection is the same
as that raised above in connection with its hardship concerns. They argue that,
simply put, Mr. Kempczinski is "McDonald's Corp.'s highest-ranking executive"
and, as such, should not be forced to sit for what Non-Parties consider to be "an
unnecessary deposition" given that the advertising decisions at issue were made by
employees who are several layers below him and who do not report to him. (Mot.
17.) Plaintiffs do not respond to this argument. (*See generally* Opp'n.)

Non-Parties are correct that, in general, they are entitled to protection against
undue burden under Rule 45(d). Fed. R. Civ. P. 45(d) ("A party . . . issuing and
serving a subpoena must take reasonable steps to avoid imposing undue burden or
expense on a person subject to the subpoena."). However, under the circumstances
here, the Court is unable to find that the balance of interests weighs in favor of
greater protections under Rule 45(d) than what the Court already has provided
under the apex doctrine. As a starting point, information regarding the Lightfoot
Texts and the *Guster-Hines* Statements, including the context in which they were
made, is relevant to inform Plaintiffs' claim that McDonald's USA's corporate
culture, as informed at least in part by the Lightfoot Text and the *Guster-Hines*
Statements, caused the discriminatory advertising decisions alleged in this case.
(TAC ¶ 9.) Moreover, the deposition testimony shows that Plaintiffs need this
information directly from Mr. Kempczinski because lower-level employees cannot
testify to the context in which he sent the Lightfoot Text and made the *Guster-*

*Hines* Statements.  Finally, as detailed above, the Court is allowing only a two-hour deposition on two specific topics, which the Court considers to be a minimal burden.  On this basis, the Court finds that Non-Parties are not entitled to further protection from the Kempczinski deposition under Rule 45(d).  Accordingly, the Court **DENIES** Non-Parties' request to prevent the deposition of Mr. Kempczinski under Rule 45(d)(3)(A)(iv).

C.     **Non-Parties Have Satisfied Their Obligation in Response to the Subpoena's Request for the Lightfoot Texts.**

Non-Parties contend that they satisfied their document production obligation under the Subpoena to produce the Lightfoot Texts when they advised Plaintiffs, before Plaintiffs filed their Opposition, that, upon a diligent search, they had been unable to find them.  (Reply 2–3.)  Specifically, through a February 20, 2023 telephonic meet-and-confer conference, and a follow-up email of February 21, 2023, Non-Parties advised:

> [W]e conducted a search for items responsive to RFP No. 6 by searching the mobile phone that Mr. Kempczinski was using on April 19, 2021 (the date of the text message to Mayor Lightfoot) and did not locate any responsive documents.  Mr. Kempczinski's mobile phone number was changed during this period; however, the prior number was also included in our search.

(N-Ps' Supp. Ex. B at 68.)  Moreover, as a courtesy, Non-Parties provided to Plaintiffs on February 20, 2023 a complete copy of the Lightfoot Texts made publicly available by Mayor's office in response to a FOIA request and identified the portion that contained the Lightfoot Texts at issue here.  (*See* Reply 9, n.7.)  At the March 28, 2025 Status Conference, Plaintiffs acknowledged they had received the FOIA copies of the Lightfoot Texts, but that what they sought under the Subpoena were the native versions of the texts.  (*See* ECF No. 165.)

But Non-Parties have made clear through their verbal and written communications with Plaintiffs that they do not have the Lightfoot Texts in native form—or in any form other than that made publicly by the Mayor's office.  With this, the Court concludes that Plaintiffs have satisfied their document production obligation under the Subpoena.

To the extent Plaintiffs's insistence that this dispute still must be resolved by the Court is fueled by disbelief of Non-Parties' statement that they do not have possession, custody, or control of the Lightfoot Texts, they provide no actionable evidence of such an untruth.  (*See generally* Opp'n.)  To the contrary, this issue is not addressed in Plaintiffs' Opposition at all.  (*See generally* Opp'n.)  In any event, Plaintiffs must provide much more than sheer speculation in order to meet their burden on their Cross-Motion to compel further responses.  "The fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." *Jimena v. UBS AG Bank*, No. 1:07-cv-00367-OWW-SKO, 2010 U.S. Dist. LEXIS 119308, at *8 (E.D. Cal. Oct. 22, 2010) (quoting *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)).

For this reason, the Court **GRANTS** Non-Parties' request for protection from enforcement of the Subpoena's Request No. 6 and **DENIES** Plaintiffs' Cross-Motion to compel the production of the Lightfoot Texts.

### D.  Neither Plaintiffs nor Non-Parties is Entitled to Attorneys' Fees and Costs in Connection with this Dispute.

Non-Parties ask the Court to award them, pursuant to Rule 45(d), the attorneys' fees and costs they incurred in bringing the Motion and in responding to Plaintiffs' Cross-Motion to compel Non-Parties to comply with the Subpoena. (Reply 12.)   Plaintiffs also ask the Court to award them, pursuant to Rule 37(a)(5), the attorneys' fees and costs they incurred in bringing the Cross-Motion.  (Opp'n

16–17.)  For the reasons stated below, neither party is entitled to their fees and costs.

### 1.    Legal Standards

#### a.    *Rule 45*

Rule 45 allows a party in a lawsuit to serve on any person, including a non-party, a subpoena requiring a deposition and the production of "documents, electronically stored information, or tangible things in that person's possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  Recognizing the potential for abuse of such broad and liberal discovery, Rule 45 offers protections for nonparties who "are powerless to control the scope of litigation and discovery."  *United States v. Columbia Broad. Sys, Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

Rule 45(d)(1) provides:

> *Avoiding Undue Burden or Expense; Sanctions.*  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(d)(1).  According to the 1991 Advisory Committee Notes, the sanctions provision of Rule 45 was intended primarily to protect "a non-party witness as a result of a misuse of the subpoena."  Fed. R. Civ. P. 45(c) advisory committee's note to 1991 amendment.[9]

---

[9] Before Rule 45 was amended in 2013, the subdivision (d) provisions governing protections for subpoenaed parties appeared in subdivision (c).  *See* Fed. R. Civ. P. 45(d) Advisory Committee Notes to the 2013 amendment.

1    The Ninth Circuit established the test for when Rule 45(d)(1) sanctions are
2    permitted in *Mount Hope Church v. Bash Back!*, 705 F.3d 418 (9th Cir. 2012).
3    First, the Ninth Circuit acknowledged its existing rule that "undue burden" is "the
4    burden associated with compliance." *Id.* at 427 (citing *Mattel Inc. v. Walking
5    Mountain Prods.*, 353 F.3d 792, 913–14 (9th Cir. 2003)). "[T]he burdens of
6    complying with the subpoena are the ones that count." *Id.* at 428. While *Mount
7    Hope* requires that greater emphasis be placed on the recipient's burden than on the
8    issuer's motive, *see In re Morreale Hotels LLC*, 517 B.R. 184, 193 (Bankr. C.D.
9    Cal. 2014), the Ninth Circuit has rejected the broad view that "literally everything
10   done in response to [an illegitimate subpoena] constitutes 'undue burden or
11   expense' within the meaning of [Rule 45(d)(1)]." *Mount Hope*, 705 F.3d at 427
12   (first alteration in original) (citation and quotation marks omitted). Instead, the
13   Ninth Circuit held that "absent undue burden imposed by an oppressive subpoena, a
14   facially defective subpoena, or bad faith on the part of the requesting party, [Rule
15   45(d)(1)] sanctions are inappropriate." *Id.* at 429. The Ninth Circuit subsequently
16   clarified that undue burden exists "when a party issues a subpoena in bad faith, for
17   an improper purpose, or in a manner inconsistent with existing law." *Legal Voice
18   v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

19       Thus, in determining whether to impose Rule 45 sanctions, a court must
20   employ "a two-step process by which it first determines whether the subpoena at
21   issue imposed an undue burden and, if so, what, if any 'reasonable steps' the party
22   who served the subpoena took to avoid imposing such a burden." *Black v. Wrigley*,
23   No. 18-CV-2367 GPC-BGS, 2019 U.S. Dist. LEXIS 108856, at *15–16, 2019 WL
24   2717212, at *5 (S.D. Cal. June 28, 2019) (quoting *Molefi v. Oppenheimer Trust*,
25   No. 03 CV 5631 (FB) (VVP), 2007 U.S. Dist. LEXIS 10554, at *7, 2007 WL
26   538547, at *2 (E.D.N.Y. Feb. 15, 2007)).
27   ///
28   ///

b.   *Rule 37*

Pursuant to Rule 37(a)(5)(C), if a discovery motion is granted in part and denied part, as here, a "the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Courts may apply Rule 37(a)(5)(C) "to roughly approximate the movant's level of success" when a motion to compel is decided with mixed results. *Morgan Hill Concerned Parents Ass'n v.Cal. Dep't of Educ.*, No. 2:11-CV-03471-KJM-AC, 2017 U.S. Dist. LEXIS 114293, at *14 (E.D. Cal. July 21, 2017) (citations omitted); *see also SVI, Inc. v. Supreme Corp.*, No. 2:16-cv-01098-JAD-NJK, 2018 U.S. Dist. LEXIS 234686, at *6–7 (D. Nev. Mar. 7, 2018) (awarding one-half of the expenses requested given that the moving party prevailed on one of two overarching issues before the Court).  Rule 37(a)(5)(C) refers to "reasonable expenses for the motion," whereas Rule 37(a)(5)(A) refers to "reasonable expenses incurred in making the motion."  Fed. R. Civ. P. 37(a)(5)(A), (C). Notwithstanding the difference in syntax, "[t]he primary difference between Rule 37(a)(5)(A) and Rule 37(a)(5)(C) is that an award is discretionary under Rule 37(a)(5)(C)" — whereas, under Rule 37(a)(5)(A), the award is mandatory. *Barlow v. Herman*, No. 2:13-cv-00033-JADCWH, 2015 U.S. Dist. LEXIS 25707, at *9 (D. Nev. Feb. 26, 2015). "Ultimately, the analysis underlying a decision under either subsection is the same and the arguments pertaining to exceptions under Rule 37(a)(5)(A) are equally applicable to the determination of whether fees and costs should be apportioned under Rule 37(a)(5)(C)." *Id.* at *9–10; *see also Blair v. CBE Grp., Inc.*, No. 13cv134-MMA (WVG), 2014 U.S. Dist. LEXIS 131228, at *7 (S.D. Cal. Sept. 16, 2014) ("[T]he analysis underlying an award of reasonable expenses pursuant to either Rule 37(a)(5)(A) or Rule 37(a)(5)(C) is the same."); *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, No. 8:13-cv-01880-JLS-KESx, 2018 U.S. Dist. LEXIS 239699, at *12 n.3 (C.D. Cal. Feb. 12, 2018) (apportioning moving party's

requested expenses where it "indisputably obtained the 'large part' of the relief that it sought" (citing *Blair,* 2014 U.S. Dist. LEXIS 131228, at *7)).

Rule 37(a)(5)(A) provides that, before granting an award of reasonable expenses, a court must determine whether any of the three exceptions to the rule apply.  Fed. R. Civ. P. 37(a)(5)(A). Pursuant to these exceptions, the Court may not order this payment if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)– (iii). The party contesting the discovery sanction on a properly brought motion under Rule 37(a) bears the burden of establishing substantial justification or that other circumstances make an award of expenses unjust. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).

2.   Analysis

The undersigned has presided over what has, since 2022, grown into a discovery dispute of "McDouble" proportions.  Both sides have taken intransigent positions along the way.  Both sides have offered conciliatory gestures at times. They have traveled to a far "Fun Hub" to resolve the dispute.  Yet, despite almost three years of litigation over a single deposition and 34 words in a public text message, they still could not come to an agreement that would have avoided lengthy briefs, hundreds of pages of exhibits, and multiple court conferences.  And now they each ask the Court to order the other side to pay their often-self-inflicted fees and costs.

The Court is exhausted.  But in its last breath on this dispute, and for all the reasons stated above, the Court finds that neither party has satisfied its burden for such an award.  As a starting point, there is no evidence that the Subpoena is oppressive, facially defective, or issued in bad faith such that Rule 45(d) sanctions

41

are warranted.  Moreover, the Court finds that both sides advanced substantially justified positions, thus precluding an award of sanctions under Rule 37(a)(5).  Both sides imply that the other acted in bad faith during this dispute, but the Court disagrees.  More to the point, the Court concludes that a lot of time and resources would have been saved had the parties been willing to compromise sooner.  Non-Parties could have complied with the document production portion of the Subpoena and offered Mr. Kempczinski for a reasonably-limited deposition on the obvious, unique-knowledge subjects long before they did.  Plaintiffs could have taken Rule 30(b)(6) depositions much earlier, could have conceded much sooner that the depositions they did take do not provide the evidence needed to justify an apex deposition on most of the Corporate Culture Discovery, and could have accepted Non-Parties' representations that they did not have the Lightfoot Texts the first time around.   In sum, both sides could have played more nicely in the "PlayPlace" and saved themselves the money they now are demanding from each other.

    For these reasons, the Court **DENIES** both Non-Parties' and Plaintiffs' requests for orders awarding them the attorney fees and costs they incurred with respect to Non-Parties' Motion and Plaintiffs' Cross-Motion.

## V.   CONCLUSION

    For the reasons stated above, the Court **ORDERS** as follows:

    1.    Non-Parties shall produce Mr. Kempczinski for a deposition not to exceed two hours, no more than one hour regarding the Lightfoot Texts and no more than one hour regarding the *Guster-Hines* Statements.

    2.    Non-Parties need not produce Mr. Kempczinski for deposition on the subjects of the Audit, the *Crawford* Lawsuit, the *Washington* Lawsuit, and the advertising decisions at issue in this case.

///

///

42

3.    Non-Parties have satisfied their production obligation in response to the Subpoena's Document Request No. 6 related to the Lightfoot Texts and need not make any further production.

4.    The April 11, 2025 hearing is hereby **VACATED**.


Ba-da-ba-ba-ba . . .

DATED:  April 9, 2025

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE